IN THE
# United States Court of Appeals for the Eighth Circuit

---

IOWA MIGRANT MOVEMENT FOR JUSTICE, *ET AL.*,

*Plaintiffs-Appellees*,

v.

BRENNA BIRD, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF IOWA,

*Defendant-Appellant*,

KIMBERLY GRAHAM AND ZACH HERRMANN,

*Defendants.*

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

THE STATE OF IOWA, *ET AL.*,

*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the Southern District of Iowa
Case Nos. 4:24-cv-00161-SHL, 4:24-cv-00162-SHL
(The Honorable Stephen H. Locher)

---

## CONSOLIDATED OPENING BRIEF OF DEFENDANTS-APPELLANTS

---

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
*Solicitor General*

PATRICK C. VALENCIA
*Deputy Solicitor General*

July 24, 2024

BREANNE A. STOLTZE
*Assistant Solicitor General*
Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-8770
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov

*Counsel for Defendants-Appellants*

# SUMMARY OF CASE AND STATEMENT REGARDING ORAL ARGUMENT

Every State is now a border State. Realizing the depth of the ongoing illegal immigration crisis, Iowa enacted Senate File 2340 to complement and support federal law. President Biden acknowledged that "doing nothing is not an option." Iowa agreed. And so SF2340 creates a State law crime like the federal illegal reentry crime.

But both the United States and Plaintiffs led by Iowa Migrant Movement for Justice disagreed with Iowa's attempt to help ensure criminal laws are properly enforced. Without a valid cause of action, both sets of Plaintiffs sued seeking facial enforcement against all aspects of the law. Extending the Supreme Court's decision in *Arizona v. United States* to an entirely new context, the district court gave Plaintiffs the relief they sought.

Field preemption imposes the ultimate indignity to a State's sovereignty. And field preemption this broad is impossible to reconcile with *Arizona*—even more so when field preemption is used to facially enjoin enforcement of an important criminal law. The district court should be reversed.

The State respectfully requests 15 minutes for oral argument.

i

# TABLE OF CONTENTS

**Page**

SUMMARY OF CASE AND STATEMENT REGARDING ORAL ARGUMENT ..................................................................i

TABLE OF CONTENTS ...........................................................ii

TABLE OF AUTHORITIES .......................................................iv

STATEMENT OF JURISDICTION .............................................. 1

STATEMENT OF THE ISSUES FOR REVIEW ........................... 1

INTRODUCTION ....................................................................... 4

STATEMENT OF THE CASE ...................................................... 5

    I.    Senate File 2340.............................................................. 7

    II.    Plaintiffs Sue to Enjoin Defendants' Enforcement of SF2340............................................................................ 10

    III.    District Court Grants Facial Preliminary Injunction. ..................................................................... 13

SUMMARY OF THE ARGUMENT ........................................... 15

ARGUMENT ............................................................................ 18

    I.    STANDARD OF REVIEW ............................................. 19

    II.    THE DISTRICT COURT BASED ITS DECISION ON AN IMPROPER INTERPRETATION OF SF2340.......................................................................... 20

        A.    Iowa's Statutory Canons Must Affect The Interpretation of SF2340. ........................................ 21

        B.    SF2340 Creates A State Analogue To The Federal Crime Of Illegal Reentry. ............................... 23

    III.    PLAINTIFFS' CLAIMS ARE NONJUSTICIABLE................................................................ 35

Appellate Case: 24-2265    Page: 3    Date Filed: 07/25/2024 Entry ID: 5417267

A. The Supremacy Clause Is A Rule Of Decision And Does Not Give Any Plaintiff A Cause Of Action To Challenge SF2340 ........................ 35

B. All MMJ Plaintiffs Lack Standing ............................. 41

C. All Plaintiffs Lack Standing To Pursue An Injunction That Runs Against Only Section 4. ....................................................... 47

IV. FEDERAL IMMIGRATION LAW DOES NOT PREEMPT SF2340 ................................................. 48

A. SF2340 Does Not Regulate in Any Field Occupied by Federal Law ............................. 50

B. SF2340 Aligns with the Federal Immigration Scheme. ..................................... 60

V. THE OTHER FACTORS WEIGH AGAINST A PRELIMINARY INJUNCTION ........................... 68

A. Plaintiffs Lack Irreparable Harm ............................. 69

B. An Injunction Would Irreparably Harm Iowa and the Public Interest. ..................... 70

CONCLUSION ................................................................. 71

CERTIFICATE OF COMPLIANCE ...................................... 72

CERTIFICATE OF SERVICE ............................................. 73

Appellate Case: 24-2265    Page: 4    Date Filed: 07/25/2024 Entry ID: 5417267

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*281 Care Committee v. Arneson,*
    638 F.3d 621 (8th Cir. 2011)........................................................43, 48
*Agilent Techs. v. Waters Techs. Corp.,*
    811 F.3d 1326 (Fed. Cir. 2016) ............................................................39
*Alexander v. S.C. State Conf. of the NAACP,*
    144 S. Ct. 1221 (2024)..........................................................................67
*Arizona v. United States,*
    567 U.S. 387 (2012)... 4, 19, 49, 51, 52, 53, 54, 56, 57, 58, 59, 60, 62, 66
*Arkansas Times LP v. Waldrip as Tr. of Univ. of Ark. Bd. of Trs.,*
    37 F.4th 1386 (8th Cir. 2022) ..............................................................71
*Armstrong v. Exceptional Child Ctr., Inc.,*
    575 U.S. 320 (2015)....................................................................2, 36, 37
*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).......................................................................44, 45
*Broadrick v. Oklahoma,*
    413 U.S. 601 (1973)..............................................................................21
*California v. ARC Am. Corp.,*
    490 U.S. 93 (1989)................................................................................58
*California v. Texas,*
    593 U.S. 659 (2021)..............................................................................42
*California v. Zook,*
    336 U.S. 725 (1949)..............................................................................61
*Camps Newfound/Owatonna, Inc. v. Town of Harrison,*
    520 U.S. 564 (1997)..............................................................................50
*Carreras v. Iowa Dep't of Transp.,*
    977 N.W.2d 438 (Iowa 2022)..........................................................33, 34
*Casbah, Inc. v. Thone,*
    651 F.2d 551 (8th Cir. 1981)................................................................21
*Chamber of Comm. v. Whiting,*
    563 U.S. 582 (2011)..............................................................................55
*Chy Lung v. Freeman,*
    92 U.S. 275 (1876)..........................................................................51, 59
*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013)..............................................................................43

iv

*Cordova-Soto v. Holder,*
  659 F.3d 1029 (10th Cir. 2011) ........................................................ 53

*Davis v. Passman,*
  442 U.S. 228 (1979) ............................................................... 39, 41

*DeCanas v. Bica,*
  424 U.S. 351 (1976) ........................................................ 51, 52, 55

*DeVillier v. Texas,*
  601 U.S. 285 (2024) ................................................................. 36

*Digit. Recognition Network, Inc. v. Hutchinson,*
  803 F.3d 952 (8th Cir. 2015) ......................................................... 48

*Dillard v. O'Kelley,*
  961 F.3d 1048 (8th Cir. 2020) ....................................................... 39

*Doe v. State,*
  943 N.W.2d 608 (Iowa 2020) ..................................................... 1, 25

*Evans v. Evans,*
  186 S.W.2d 277 (Tex. Civ. App. 1945) ............................................... 33

*Ex parte Young,*
  209 U.S. 123 (1908) ........................................................ 2, 37, 41

*FDA v. All. for Hippocratic,*
  *Med.,* 602 U.S. 367 (2024) .............................................. 2, 46, 47, 48

*First Nat'l Bank of Glidden v. Matt Bauer Farms Corp.,*
  408 N.W.2d 51 (Iowa 1987) .......................................................... 34

*Florida v. United States,*
  660 F. Supp. 3d 1239 (N.D. Fla. 2023) .............................................. 60

*Furlow v. Belmar,*
  52 F.4th 393 (8th Cir. 2022) .............................................. 22, 29, 68

*Georgia Latino All. For Hum. Rts. v. Governor of Ga.,*
  691 F.3d 1250 (11th Cir. 2012) ...................................................... 67

*Gilbert v. Minnesota,*
  254 U.S. 325 (1920) ................................................................. 61

*Gregory v. Ashcroft,*
  501 U.S. 452 (1991) ................................................................. 49

*Gunn v. Minton,*
  568 U.S. 251 (2013) ................................................................. 35

Appellate Case: 24-2265    Page: 6    Date Filed: 07/25/2024 Entry ID: 5417267

*Hanna v. State Liquor Control Comm'n,*
  179 N.W.2d 374 (Iowa 1970).................................................34
*Hines v. Davidowitz,*
  312 U.S. 52 (1941)...........................................................59
In re Debs,
  158 U.S. 564 (1895)..........................................................37
*In re Ozark Rest. Equip. Co.,*
  816 F.2d 1222 (8th Cir. 1987).............................................41
*Jahnke v. Deere & Co.,*
  912 N.W.2d 136 (Iowa 2018).............................................31
*Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC,*
  953 F.3d 1041 (8th Cir. 2020)............................................20
*Kansas v. Garcia,*
  589 U.S. 191 (2020).........................2, 17, 50, 51, 52, 53, 57, 61, 62, 63
*Keller v. City of Fremont,*
  719 F.3d 931 (8th Cir. 2013)....................................19, 32, 67
*Koon v. United States,*
  518 U.S. 81 (1996)..........................................................21
*Kucera v. Baldazo,*
  745 N.W.2d 481 (Iowa 2008)........................................33, 64
*Labrador v. Poe,*
  144 S. Ct. 921 (2024).......................................................19
*Mayor, Alderman & Commonalty of City of N.Y. v. Miln,*
  36 U.S. (11 Pet.) 102 (1837)..........................................55, 71
*Merrill Lynch, Pierce, Fenner & Smith v. Ware,*
  414 U.S. 117 (1973)........................................................68
*Missouri Protection & Advoc. Servs., Inc. v. Carnahan,*
  499 F.3d 803 (8th Cir. 2007).............................................44
*Missouri v. Biden,*
  52 F.4th 362 (8th Cir. 2022).............................................42
*Moody v. NetChoice, LLC,*
  144 S. Ct. 2383 (2024)...........................................2, 19, 68
*Moyle v. United States,*
  144 S. Ct. 2015 (2024).....................................................37
*Org. for Black Struggle v. Ashcroft,*

Appellate Case: 24-2265     Page: 7     Date Filed: 07/25/2024 Entry ID: 5417267

978 F.3d 603 (8th Cir. 2020)......................................................3, 71

*O'Sullivan v. Boerckel,*
526 U.S. 838 (1999)....................................................................67

*Parker v. Brown,*
317 U.S. 341 (1943)..............................................................49, 60

*Planned Parenthood Minn., N.D., S.D. v. Rounds,*
530 F.3d 724 (8th Cir. 2008).............................. 1, 19, 68, 69

*Powell v. Khodari-Intergreen Co.,*
334 N.W.2d 127 (Iowa 1983)....................................................31

*Powell v. Noble,*
798 F.3d 690 (8th Cir. 2015)....................................................70

*Religious Sisters of Mercy v. Becerra,*
55 F.4th 583 (8th Cir. 2022) ..............................................44, 46

*Rice v. Santa Fe Elevator Corp.,*
331 U.S. 218 (1947)....................................................................49

*Robb v. Connolly,*
111 U.S. 624 (1884)....................................................................67

*Simmons v. Sup. Ct.,*
214 P.2d 844 (Cal. Ct. App. 1950) .........................................33

*Sleep No. Corp. v. Young,*
33 F.4th 1012 (8th Cir. 2022) ..................................................20

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016)....................................................................41

*Star Equip., Ltd. v. Iowa Dep't of Transp.,*
843 N.W.2d 446 (Iowa 2014)..............................................1, 29

*State v. Abrahamson,*
696 N.W.2d 589 (Iowa 2005)............................... 1, 23, 29, 66

*State v. Blyth,*
226 N.W.2d 250 (Iowa 1975)....................................................69

*State v. Carter,*
733 N.W.2d 333 (Iowa 2007)....................................................29

*State v. Davis,*
922 N.W.2d 326 (Iowa 2019)....................................................24

*State v. Doe,*
903 N.W.2d 347 (Iowa 2017)..............................................24, 25

Appellate Case: 24-2265    Page: 8    Date Filed: 07/25/2024 Entry ID: 5417267

*State v. Hoyman,*
    863 N.W.2d 1 (Iowa 2015).................................................29
*State v. Kriechbaum,*
    258 N.W.110 (Iowa 1934)...............................................33
*State v. Lamoreux,*
    875 N.W.2d 172 (Iowa 2016)............................................24
*State v. Nall,*
    894 N.W.2d 514 (Iowa 2017)............................................24
*State v. Rivera,*
    997 N.W.2d 890 (Iowa App. 2023) ..................................6, 7
*Steel Co. v. Citizens for a Better,*
    *Env.*, 523 U.S. 83 (1998) ...............................................39
*Steffel v. Thompson,*
    415 U.S. 452 (1974).......................................................43
*Texas v. Biden,*
    20 F.4th 928 (5th Cir. 2021) ..........................................60
*Texas v. DHS,*
    2023 WL 8285223 (W.D. Tex. Nov. 29, 2023)....................5, 6
*U.S. Dep't of Veterans Affs. v. Boresi,*
    396 S.W.3d 356 (Mo. 2013) ............................................70
*United States v. Salerno,*
    481 U. S. 739 (1987)................................................19, 65
*United States v. Texas,*
    97 F.4th 268 (5th Cir. 2024) .......2, 14, 41, 53, 56, 57, 60, 62, 65, 66, 67
*United States v. Texas,*
    557 F. Supp. 3d 810 (W.D. Tex. 2021)...............................40
*United States v. Texas,*
    --- F. Supp. 3d ----, 2024 WL 861526 (W.D. Tex. 2024) .................28, 34
*Utah Coal. of LaRaza v. Herbert,*
    26 F. Supp. 3d 1125 (D. Utah 2014) ...........................52, 53
*Va. Uranium, Inc. v. Warren,*
    587 U.S. 761 (2019).......................................................50
*Wash. State Grange v. Wash. State Republican Party,*
    552 U.S. 442 (2008)..............................................18, 19, 68

Appellate Case: 24-2265    Page: 9    Date Filed: 07/25/2024    Entry ID: 5417267

*Watkins Inc. v. Lewis*,
  346 F.3d 841 (8th Cir. 2003)................................................20
*Weissenberger v. Iowa Dist. Ct. for Warren Cty.*,
  740 N.W.2d 431 (Iowa 2007)................................................65
*Whole Woman's Health v. Jackson*,
  141 S. Ct.  (2021)..............................................................48
*Whole Woman's Health v. Jackson*,
  595 U.S. 30 (2021) .............................................. 2, 36, 38, 40
*Wyeth v. Levine*, 555 U.S. 555 (2009)...............................55, 58
*Younger v. Harris*,
  401 U.S. 37 (1971) ............................................................43
*Zanders v. Swanson*,
  573 F.3d 591 (8th Cir. 2009) ............................................43

## Constitutional Provisions

U.S. Const. art. VI, cl. 2 ...................................................2, 49

## Statutes

8 U.S.C. § 1101 ...................................................................27
8 U.S.C. § 1182 .........................................................8, 26, 27
8 U.S.C. § 1225 .....................................................................8
8 U.S.C. § 1229a .................................................................26
8 U.S.C. § 1229c ...................................................................8
8 U.S.C. § 1231 ............................................................26, 54
8 U.S.C. § 1326 ......................... 8, 9, 25, 28, 54, 59, 62, 63
8 U.S.C. § 1373 ...................................................................54
18 U.S.C. § 3559 ...................................................................8
18 U.S.C. § 3571 ...................................................................8
28 U.S.C. § 517 ...................................................................70
28 U.S.C. § 1292 ...................................................................1
28 U.S.C. § 1331 ...................................................................1
Iowa Code § 4.1...................................................................25
Iowa Code § 4.4........................................ 1, 3, 23, 29, 42, 71
Iowa Code § 4.12............................................................2, 3, 68

Appellate Case: 24-2265    Page: 10    Date Filed: 07/25/2024 Entry ID: 5417267

Iowa Code § 718C.2 ............................................ 8, 9, 25, 27, 53, 54, 59, 63
Iowa Code § 718C.4 ............................................... 8, 9, 30, 31, 64
Iowa Code § 718C.6 .................................................. 32, 42, 54, 64
Iowa Code § 903.1 ......................................................................... 8
U.S. Const. art. VI, cl. 2 .......................................................... 2, 49

## Regulations

8 C.F.R. § 245.23 ....................................................................27

## Other Authorities

1 Am. Jur. 2d *Abatement, Survival, and Revival*, § 3 (1994) ................33
Chuck Grassley, As Biden Administration Rolls Back
    Immigration Enforcement, Ernst, Grassley, Colleagues
    Reintroduce 'Sarah's Law' Ahead of the Fifth
    Anniversary of Sarah Root's Death (Jan. 28, 2021)..........................6, 7
Circumstance, Oxford English Dictionary (December 2023) ................25
Circumstance, Webster's Second New Int'l Dictionary (1934)..............26
Conner Hendricks, Human trafficking is on the rise,
    KCRG, Jul. 28, 2023 ...........................................................7
John Gramlich, Migrant encounters at the U.S.-Mexico
    border hit a record high at the end of 2023,
    Pew Research Center (Feb. 15, 2024)......................................5
Joni Ernst, Ernst Calls on Senate to Pass Sarah's
    Law (Mar. 7, 2024)..............................................................7
Marti Sivi, Iowa View: State is at a crossroads for
    sex-trafficking, Des Moines Register, Jan. 6, 2014..............................7
Richard H. Fallon, Jr., et al., Hart & Wechsler's The
    Federal Courts and the Federal System (7th ed. 2015)....................67
Stay, Black's Law Dictionary (11th ed. 2019)........................................33
The White House, Statement from President Joe Biden on the
    Bipartisan Senate Border Security Negotiations (Jan. 26, 2024) ........5
Legislative Servs. Agency, Fiscal Servs. Div.,
    Fiscal Note: SF2340 (May 8, 2024)....................................32
Todd Bensman, Overrun: How Joe Biden Unleashed The Greatest
    Border Crisis In U.S. History (2023).....................................6

# STATEMENT OF JURISDICTION

The district court had jurisdiction. 28 U.S.C. § 1331. It issued its opinion and order granting Plaintiffs' preliminary injunction motions on June 17, 2024, App.Vol.I.223-247, MMJ.R.Doc.51; App.Vol.II.443-467, DOJ.R.Doc.29, which Defendants timely appealed on June 19, MMJ.R.Doc.52, DOJ.R.Doc.31.[1] This Court has jurisdiction to review interlocutory orders granting preliminary injunctions. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 730 (8th Cir. 2008); 28 U.S.C. § 1292(a)(1).

# STATEMENT OF THE ISSUES FOR REVIEW

1. Whether the district court abused its discretion in applying SF2340 to legal immigrants when SF2340 reflects the federal illegal reentry crime and Iowa law mandates a presumption of constitutionality.

**Cases**:  *State v. Abrahamson*, 696 N.W.2d 589 (Iowa 2005)

*Doe v. State*, 943 N.W.2d 608 (Iowa 2020)

*Star Equip., Ltd. v. Iowa Dep't of Transp.*, 843 N.W.2d 446 (Iowa 2014)

---

[1] "MMJ.R.Doc." references the docket from Case No. 4:24-cv-00161-SHL. "DOJ.R.Doc." references the docket from Case No. 4:24-cv-00162-SHL.

1

**Statutes**:  Iowa Code § 4.4

Iowa Code § 4.12

Iowa Code § 718C

2. Whether the district court abused its discretion in deciding Plaintiffs' claims were justiciable despite Plaintiffs lacking standing and a cause of action.

**Cases**:    *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015)

*Ex parte Young*, 209 U.S. 123 (1908)

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024)

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021)

**Constitutional Provision**:    U.S. Const. art. VI, cl. 2

3. Whether the district court abused its discretion in finding Plaintiffs likely to succeed in their preemption challenge when SF2340 does not operate in a preempted field and creates a State law analogue consistent with federal criminal immigration statutes.

**Cases**:    *Arizona v. United States*, 567 U.S. 387 (2012)

*Kansas v. Garcia*, 589 U.S. 191 (2020)

*Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024)

*United States v. Texas*, 97 F.4th 268 (5th Cir. 2024)

**Constitutional Provision**:   U.S. Const. art. VI, cl. 2

**Statutes**:  Iowa Code § 4.4

                Iowa Code § 4.12

                Iowa Code § 718C

4. Whether the equitable factors weigh against preliminarily enjoining enforcement of the challenged state statute.

**Cases**:     *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603(8th Cir. 2020)

Appellate Case: 24-2265     Page: 14     Date Filed: 07/25/2024 Entry ID: 5417267

## INTRODUCTION

"Imagine a provision—perhaps inserted right after Art. I, § 8, cl.4, the Naturalization Clause—which included among the enumerated powers of Congress: 'To establish Limitations upon Immigration that will be exclusive and that will be enforced only to the extent the President deems appropriate.' The delegates to the Grand Convention would have rushed to the exits." *Arizona v. United States*, 567 U.S. 387, 436 (2012) (Scalia, J., concurring in part and dissenting in part). That power is not part of the Constitution. The district court erred in finding it precluded lawful State action here.

SF2340 codifies an analogue to the federal crime of illegal reentry, complementing federal law. It does not create new standards governing alien admissibility or removability nor does it regulate alien registration. Every act punished is already a federal crime, so SF2340 maintains current foreign relations. And it does not authorize Iowa officials to remove illegal aliens from the country—or even from Iowa. Yet Defendants' enforcement of the law remains enjoined.

The Supreme Court has expressly said States retain immigration-related police powers. States may not regulate admissibility, removal

4

standards, or alien registration. So long as the state crime criminalizes conduct already criminalized federally, the Supreme Court has not found constitutional flaws.

The district court expanded implied preemption even though Plaintiffs lacked both a cause of action and standing. The court also reversed the facial challenge standard, granting Plaintiffs a preliminary injunction based on one "plausible" unconstitutional interpretation, rather than requiring Plaintiffs to establish that the law could not be constitutionally enforced.

This Court should vacate the injunction.

## STATEMENT OF THE CASE

Our Nation is in the throes of an unprecedented illegal immigration "crisis." The White House, *Statement from President Joe Biden on the Bipartisan Senate Border Security Negotiations* (Jan. 26, 2024). Illegal border crossings hit record highs over the past four years, with up to 250,000 people apprehended at the border each month. John Gramlich, *Migrant encounters at the U.S.-Mexico border hit a record high at the end of 2023*, Pew Research Center (Feb. 15, 2024). An enormous uptick "from a comparatively paltry 458,000 in 2020." *Texas v. DHS*, 2023 WL

8285223, at *3 (W.D. Tex. Nov. 29, 2023). The federal government is "derelict in enforcing" its "statutory duties." *Id.* at *14.

Organized criminal organizations noticed. Human trafficking "has become an incredibly lucrative enterprise for the Mexican drug cartels," and "the infrastructure built by the cartels for human cargo can also be used to ship illegal substances, namely fentanyl." *Id.* at *3. Human trafficking may even surpass drug trafficking's profitability. *See* Todd Bensman, *Overrun: How Joe Biden Unleashed The Greatest Border Crisis In U.S. History* 29-32, 193 (2023).

This illegal immigration crisis has led to Iowans' lives being "cut short by" illegal aliens "who disregard[] the rule of law." Chuck Grassley, *As Biden Administration Rolls Back Immigration Enforcement, Ernst, Grassley, Colleagues Reintroduce 'Sarah's Law' Ahead of the Fifth Anniversary of Sarah Root's Death* (Jan. 28, 2021) *available at* perma.cc/Y26S-D7K5. Iowan Sarah Root was killed by an illegal alien on her college graduation night. *Id.* Just two years later, "Mollie Tibbetts went for an evening run . . . in her hometown of Brooklyn, Iowa, and seemingly vanished." *State v. Rivera*, 997 N.W.2d 890, *1 (Iowa App. 2023) (table). An illegal alien killed her before dumping her body in a

cornfield. *Id.* at *3. Iowa's U.S. senators begged the federal government to do its job and "start enforcing the law" to protect Iowans. Grassley, *supra*; Joni Ernst, *Ernst Calls on Senate to Pass Sarah's Law* (Mar. 7, 2024), *available at* perma.cc/FV2P-6JHG.

Iowa lies at the crossroads for human trafficking, with Interstates 35 and 80 intersecting creating "an easy way to arrive and disappear fast in four directions." Marti Sivi, *Iowa View: State is at a crossroads for sex-trafficking*, Des Moines Register, Jan. 6, 2014; Trafficking Education, *Wings of Refuge*, perma.cc/ZMD3-HKPW (accessed July 22, 2024). And human trafficking is on the rise. Conner Hendricks, *Human trafficking is on the rise*, KCRG, Jul. 28, 2023. The ongoing immigration crisis only fuels that fire.

## I.    Senate File 2340.

Seeking a solution, Iowa's Legislature enacted an Iowa analogue to the federal crime of illegal entry. *See* SF2340 (codified at Iowa Code ch. 718C). That law became effective on July 1, 2024.

Long before Iowa enacted SF2340, Congress made it a federal crime for an alien to reenter the country if he has been "denied admission," involuntarily "removed," or has departed the country "while an order of

7

exclusion, deportation or removal is outstanding." 8 U.S.C. § 1326(a). That crime imposes a penalty of up to two years' imprisonment, a fine up to $250,000, or both. *Id.*; 18 U.S.C. §§ 3559(a)(5), 3571(b)(3). Congress mandated those aliens be "order[ed] removed from the United States without further hearing or review." 8 U.S.C. §§ 1225(b)(1)(A)(i), 1182(a)(7). Failure to comply is a felony. *Id.* §§ 1253(a)(1), 1229a(c)(5); *see* 18 U.S.C. § 3559(a)(5).

Mirroring that language, SF2340 makes it a crime to enter, attempt to enter, or be found in Iowa after having been "excluded, deported, or removed," or having departed the United States "while an order of exclusion, deportation, or removal is outstanding." Iowa Code § 718C.2(1). That offense is punishable by up to two years in prison, a fine of between $855.00 and $8,540.00, or both. *Id.* §§ 718C.2(2), 903.1(2). After conviction, a judge must issue an order to return, specifying how the illegal alien will be transported to a port of entry and which official will monitor compliance. *Id.* § 718C.4. Failure to comply is a felony. *Id.* § 718C.5.

Under both laws, illegal aliens may agree to voluntary departure, Iowa Code § 718C.4(1)–(3); 8 U.S.C. § 1229c, and may face harsher

8

penalties under certain aggravating circumstances. Iowa Code § 718C.2(2); 8 U.S.C. § 1326(b).

Iowa's law is not triggered without one of the listed adverse federal immigration determinations. Courts may not abate an SF2340 prosecution when "a federal determination regarding the immigration status of the person is pending or will be initiated," but SF2340 does not prohibit—and thus allows—abatement based on a *final* determination of an alien's lawful federal immigration status. *Id.* § 718C.6. As a result, SF2340 *does not*:

- create new standards governing alien admissibility or removability;
- regulate alien registration;
- ask Iowa officials to remove illegal aliens from the country—or even from Iowa;
- apply to legal permanent residents;
- prevent aliens from pursing federal immigration relief;
- allow prosecution when the federal government has made a final determination of legal immigration status;
- create any new foreign relations implications; or
- criminalize any conduct that is not already criminalized under federal law.

Plaintiffs facially challenge SF2340. Their objections focus on three sections: Section 2, which defines the crime of illegal reentry (Iowa Code § 718C.2); Section 4, which authorizes the orders to return (Iowa Code § 718C.4); and Section 6, which mandates abatement when the federal

9

government has made a final immigration determination (Iowa Code § 718C6).

## II. Plaintiffs Sue to Enjoin Defendants' Enforcement of SF2340.

Plaintiffs—two pseudonymous Iowa residents and a membership organization ("MMJ"), and the federal government—sued in two cases seeking injunctive relief against Defendants' enforcement of SF2340. App.Vol.I.5-26, MMJ.R.Doc.1; App.Vol.I.27-31, MMJ.R.Doc.9; App.Vol.II.248-268, DOJ.R.Doc.1; App.Vol.II.269-270, DOJ.R.Doc.7. Plaintiffs alleged Supremacy Clause and Dormant Commerce Clause violations. *Id.* And they allege federal law entirely preempts SF2340. *Id.*

The first pseudonymous individual MMJ Plaintiff, Jane Doe, is a lawful permanent resident in Garnavillo, Iowa. App.Vol.I.9, MMJ.R.Doc.1 ¶ 18. Doe was ordered removed in about 2005 then deported to Mexico. *Id.* Doe's U.S.-citizen husband filed a family petition while she was in Mexico. *Id.* The federal government approved Doe's application for an inadmissibility waiver and lawful permanent residence, and she returned to the United States in 2022 with federal permission. *Id.*

10

Elizabeth Roe, the second pseudonymous individual MMJ Plaintiff, is a lawful permanent resident who lives in Des Moines with her U.S.-citizen husband. App.Vol.I.9-10, MMJ.R.Doc.1 ¶ 19. Roe came to the United States in 2016 but was ordered removed and deported to Colombia in February 2017. *Id*. Roe married her husband in 2018 and he filed a relative visa petition that year. *Id*. The federal government approved the visa petition and inadmissibility waiver, and Roe returned to Iowa in 2023. *Id*.

Both Doe and Roe allege fear of prosecution. App.Vol.I.22, MMJ.R.Doc.1 ¶ 75; App.Vol.I.23, MMJ.R.Doc.1 ¶ 78.

Plaintiff Iowa Migrant Movement for Justice is a membership organization based in Des Moines that provides immigration legal services and advocacy. App.Vol.I.7-8, MMJ.R.Doc.1 ¶¶ 10-12. MMJ helps immigrants and refugees access available federal immigration benefits, maintain their lawful immigration statuses, and avoid removal. *Id*. MMJ has about 350 dues-paying members and another 2,000 clients or community members whose membership dues are waived. *Id*.

MMJ alleges its members include aliens subject to prosecution and removal under SF2340. *Id*. Those members include Doe and Roe as well

as two non-party pseudonymous members, "Anna" and "David." App.Vol.I.8, MMJ.R.Doc.1 ¶¶ 13-15. Anna is an 18-year-old student who was ordered removed as a child, reentered, and received asylum. *Id.* David's mother brought him to the United States in 2000 when he was ten. App.Vol.I.18-19, MMJ.R.Doc.1 ¶ 60. David graduated high school in 2007, was deported in 2015, and returned to the United States soon after. *Id.* David's family relies on him financially, and he lives with his longtime U.S.-citizen partner. *Id.* The Complaint does not state that they live in Iowa, nor provide David's current immigration status. MMJ alleges both Anna and David would be subject to arrest, prosecution, imprisonment, and removal under SF2340. App.Vol.I.8, MMJ.R.Doc.1 ¶¶13-14.

The United States alleges SF2340 should be enjoined because it would "intrude on the federal government's exclusive authority to regulate the entry and removal of noncitizens, frustrate the United States' immigration operations, and interfere with U.S. foreign relations." App.Vol.II.249, DOJ.R.Doc.1 ¶ 1.

Appellate Case: 24-2265    Page: 23    Date Filed: 07/25/2024 Entry ID: 5417267

### III. District Court Grants Facial Preliminary Injunction.

After a combined hearing, the district court enjoined Defendants'
enforcement of SF2340. App.Vol.I.223-247, MMJ.R.Doc.51;
App.Vol.II.443-467, DOJ.R.Doc.29.[2]

Defendants argued that each Plaintiff lacked a proper cause of
action to challenge SF2340 because Plaintiffs relied on the Supremacy
Clause—a rule of decision not a cause of action. The district court
concluded the United States had a cause of action based on the Supreme
Court's silence—and presumed acquiescence—on the issue in *Arizona v.
United States*. App.Vol.II.460-461, DOJ.R.Doc.29, at 18-19. The district
court did not address whether MMJ also lacked a cause of action.

The district court determined all Plaintiffs had standing to
challenge all of SF2340—despite SF2340's inapplicability to legal
permanent residents like Doe, Roe, and Anna—because Plaintiffs'
interpretation of SF2340 was "plausible enough" to give them standing.
App.Vol.II.453-460, DOJ.R.Doc.29, at 11-18. And even though MMJ's
Complaint never alleges David's presence in Iowa, nor his unlawful

---

[2] Because the district court issued a single ruling docketed in both cases,
unless otherwise noted citations to the court's order will use
DOJ.R.Doc.29.

Appellate Case: 24-2265   Page: 24   Date Filed: 07/25/2024 Entry ID: 5417267

presence, the court assumed both because David graduated from high school in Iowa, is an Iowa MMJ member, asserts fear of arrest under SF2340, and never claims to live anywhere else. App.Vol.II.459, DOJ.R.Doc.29, at 17.

The district court based MMJ's organizational standing on the standing of these four members. App.Vol.II.458-460, DOJ.R.Doc.29, at 16-18.

The court decided Plaintiffs were likely to succeed in proving SF2340 was both field and conflict preempted. App.Vol.II.461-465, DOJ.R.Doc.29, at 19-23. The court based its analysis in large part on the Fifth Circuit's interlocutory ruling on a Texas statute criminalizing both entry and reentry. App.Vol.II.461, DOJ.R.Doc.29, at 19 (citing *United States v. Texas*, 97 F.4th 268 (5th Cir. 2004)). Even though *Arizona* did not field preempt any area of immigration beyond alien registration, nor did it find federal law preempted state analogues to federal criminal offenses, the district court and the Fifth Circuit extended *Arizona* to find field preemption. App.Vol.II.461-465, DOJ.R.Doc.29, at 19-23.

Because it determined Plaintiffs were likely to succeed on the merits, the district court found Plaintiffs faced irreparable harm and

14

therefore that the balance of equities favored an injunction. App.Vol.II.466-467, DOJ.R.Doc.29, at 24-25. The court preliminarily enjoined Defendants' enforcement of SF2340.

This consolidated appeal followed.

## SUMMARY OF THE ARGUMENT

**I.** The district court abused its discretion by applying incorrect legal standards when interpreting SF2340. The court misapplied the facial injunction standard, requiring only that Plaintiffs establish a plausible unconstitutional reading to find a likelihood of success.

The court ignored Iowa's statutory rules of construction. Those rules, which include presumptions of constitutional compliance, preclude the district court's interpretation of SF2340. SF2340's text and legislative background establish that it creates a state analogue to the federal crime of illegal reentry, while keeping federal immigration roles, determinations, and defenses intact.

**II.A.** Plaintiffs lack a cause of action. The district court extended *Arizona* to conclude the United States has an equitable cause of action. But the parties in *Arizona* waived the cause-of-action issue by failing to raise it, so it was never before that Court.

15

Here, the United States has not identified any statutory authority or traditional equity principle permitting its claims. The Supremacy Clause creates a rule of decision, while the Commerce Clause is a congressional source of power; neither confers federal rights. *Ex parte Young* does not give MMJ a cause of action because SF2340 cannot be enforced against an organization, nor can it be enforced against individual MMJ Plaintiffs because they are lawful permanent residents.

**II.B.** MMJ Plaintiffs lack standing. The district court found standing based on an erroneous interpretation of SF2340. MMJ cannot establish organizational standing through its members because it has not identified a member chargeable under SF2340. Changes to advocacy and spending also do not grant MMJ standing. Neither the MMJ Plaintiffs nor the federal government have standing to challenge Section 4 because a narrow injunction as to just that section would run only against Defendants, not against the judges who enforce Section 4.

**III.** The district court abused its discretion in determining Plaintiffs were likely to succeed in their implied preemption claims. The district court overread Supreme Court immigration precedent, stretching *Arizona* beyond its terms. Along the way, it ignored the Supreme Court's

16

subsequent ruling in *Kansas v. Garcia*, 589 U.S. 191 (2020), which undercuts the court's conclusion. The Supreme Court has never held that all State regulations touching immigration are preempted. Instead, if a State is not regulating in an occupied field, it may make violation of federal criminal law a State crime. And SF2340 does not operate in the field of alien registration—the only occupied immigration field the Supreme Court has identified.

SF2340 does not conflict with federal law, so is not obstacle preempted. It does not criminalize legal status and it mandates abatement with final federal immigration determinations. It also does not authorize State officials to remove aliens from the country, nor even from Iowa. Instead, it is a proper exercise of Iowa's police power.

**IV.** The preliminary-injunction factors weigh against an injunction. Plaintiffs' lack of likelihood of success on the merits is fatal. And they can show no irreparable harm because SF2340 is not enforceable against legal aliens. To the extent irreparable harm exists, it is borne by the State, which faces injury each day it is enjoined from enforcing its duly enacted statutes. The balance of equities thus weighs against an injunction.

Appellate Case: 24-2265    Page: 28    Date Filed: 07/25/2024 Entry ID: 5417267

This Court should vacate the preliminary injunction.

## ARGUMENT

Pre-enforcement challenges to statutes are "disfavored." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). So Plaintiffs must satisfy the more rigorous threshold requirement that they are "likely to prevail on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 730 (8th Cir. 2008). Only after that threshold showing may a court "then proceed to weigh the" other factors. *Id.* at 732.

The decision to litigate a case as a facial challenge "comes at a cost." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024). "[A] plaintiff cannot succeed on a facial challenge unless he 'establish[es] that no set of circumstances exists under which the [law] would be valid.'" *Id.* (quoting *United States v. Salerno*, 481 U. S. 739, 745 (1987); *Grange*, 552 U.S. at 449). A facial challenge is inappropriate when there may be legitimate applications of a law. *See Labrador v. Poe*, 144 S. Ct. 921, 927 (2024) (Gorsuch, J., concurring) ("Lower courts would be wise to take heed.").

18

Courts do not assume unconstitutional enforcement. Instead, when there are two plausible readings of a statute, one being constitutional, courts exercise caution and allow the law to play out. *See Keller v. City of Fremont*, 719 F.3d 931, 945 (8th Cir. 2013). That gives "state courts . . . an opportunity to construe" the law and demonstrate its constitutional application and enforcement. *Arizona*, 567 U.S. at 416.

Plaintiffs are not likely to succeed on the merits. They have neither established a cause of action and standing, nor have they shown that federal law preempts SF2340 in all applications. The district court assumed unconstitutional enforcement, failing to determine whether Defendants' interpretation of SF2340 was plausible. The court thus abused its discretion. Applying the proper standard in this pre-enforcement, facial challenge, this Court should reverse the district court and vacate the injunction.

## I. STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy," never awarded as of right, and the movant bears the burden to establish it is warranted. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003); *see*

*Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044 (8th Cir. 2020).

This Court reviews a district court's decision to grant a preliminary injunction for abuse of discretion, reviewing legal conclusions de novo and factual findings for clear error. *See Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022). A district court "by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

## II. THE DISTRICT COURT BASED ITS DECISION ON AN IMPROPER INTERPRETATION OF SF2340.

"[A] federal court must determine what a statute means before judging its facial constitutionality." *Casbah, Inc. v. Thone*, 651 F.2d 551, 558 (8th Cir. 1981) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 618 n.16 (1973)).

SF2340 merely codifies a State analogue to the federal crime of illegal reentry. SF2340 does not create new standards governing alien admissibility or removability nor does it regulate alien registration. And it does not ask Iowa officials to remove illegal aliens from the country— or even from Iowa. To find otherwise, the district court ignored SF2340's plain text, set aside the statutory background against which Iowa enacts

20

its laws, and disregarded the context in which the Legislature enacted SF2340. When read properly, SF2340 complements federal law. The district court's flawed statutory interpretation infected the rest of its analysis.

At a minimum, the district court erred by enjoining enforcement of SF2340 based on Plaintiffs' "plausible enough" interpretation. App.Vol.II.455, DOJ.R.Doc.29, at 13. That reverses the pre-enforcement, facial challenge standard. Plaintiffs must establish there is no "circumstance" in which a statute can be constitutionally applied. *Furlow v. Belmar*, 52 F.4th 393, 400 (8th Cir. 2022). The court should have asked whether Defendants' statutory interpretation is plausible enough; if so, an injunction is improper. The district court erred in granting Plaintiffs a facial injunction due to their "plausible" unconstitutional interpretation.

## A. Iowa's Statutory Canons Must Affect The Interpretation of SF2340.

Courts reviewing Iowa statutes must follow certain codified canons of construction. *See* Iowa Code ch. 4. Iowa's Legislature adopted Chapter 4 of Iowa's Code to guide courts construing Iowa's statutes. "In enacting a statute, it is presumed that [c]ompliance with the Constitutions of the

21

state and of the United States is intended." *Id.* § 4.4(1). "[I]t is presumed that . . . [a] just and reasonable result is intended." *Id.* § 4.4(3). The "[p]ublic interest is favored over any private interest." *Id.* § 4.4(5). And Iowa's laws are presumed severable. *Id.* § 4.12.

The district court mistook those statutory rules of decision for judicially created canons of construction that could be disregarded. App.Vol.II.455, DOJ.R.Doc.29, at 13; App.Vol.II.457, DOJ.R.Doc.29, at 15. Consider the court's conclusion that Iowa's Legislature "intend[ed] for people with permanent legal status to be prosecuted under § 718C.2(1) in the first place." App.Vol.II.457-458, DOJ.R.Doc.29, at 15-16. That conclusion impermissibly presumes both an unconstitutional and unreasonable result. *Cf.* Iowa Code §§ 4.4(1), (3).

Similarly, the court concluded that the Iowa Legislature "wanted to take Iowa's law in a different direction than federal law by removing defenses" that could have made Iowa's statute constitutional. App.Vol.II.457, DOJ.R.Doc.29, at 15. That assumption, too, contradicts Iowa's black letter interpretive rules. Iowa Code §§ 4.4(1), (3).

The district court said those "canons" did not apply because they would require the court to "rewrite" SF2340. App.Vol.II.457,

22

DOJ.R.Doc.29, at 15. But Defendants' interpretation was, at least, a fair reading of the statute for the reasons explained below. *State v. Abrahamson*, 696 N.W.2d 589, 593 (Iowa 2005) ("If the law is reasonably open to two constructions . . . the court must adopt the interpretation that upholds the law's constitutionality.") (citation omitted). The State simply asked the district court to read the statute along with other parts of the Iowa Code. Then, after determining Defendants' narrow interpretation was plausible, the court should have denied the injunction.

## B. SF2340 Creates A State Analogue To The Federal Crime Of Illegal Reentry.

Iowa's Legislature borrowed language from the federal criminal reentry statute to draft its analogue. But because Iowa did not create a carbon copy, the district court rejected the State's interpretation. App.Vol.II.454-458, DOJ.R.Doc.29, at 12-16. The court rejected the changes Iowa's Legislature enacted to avoid state courts making preempted factual determinations of federal immigration law. But SF2340 mirrors federal law while avoiding state judges impermissibly making immigration-status determinations.

The "primary goal" in statutory interpretation "is to give effect to the legislature's intent as expressed in the statute's words." *State v.*

23

*Davis*, 922 N.W.2d 326, 330 (Iowa 2019) (citing *State v. Lamoreux*, 875 N.W.2d 172, 177 (Iowa 2016)). So courts "first consider the plain meaning of the relevant language, read in context of the entire statute." *State v. Doe*, 903 N.W.2d 347, 351 (Iowa 2017) (citing *State v. Nall*, 894 N.W.2d 514, 518 (Iowa 2017)). "Using traditional interpretive tools, we seek to determine the ordinary and fair meaning of the statutory language at issue." *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) (citations omitted). "In determining the ordinary and fair meaning of the statutory language at issue, we take into consideration the language's relationship to other provisions of the same statute and other provisions of related statutes." *Id.* (citing Iowa Code §4.1(38); *Doe*, 903 N.W.2d at 351).

1. *Section 2: Iowa Illegal Reentry*

Aliens commit an illegal reentry if they "enter[], attempt[] to enter, or [are] at any time found" in Iowa:

> under any of the following circumstances:
> a. The person has been denied admission to or has been excluded, deported, or removed from the United States.
> b. The person has departed from the United States while an order of exclusion, deportation or removal is outstanding.

Iowa Code § 718C.2; *see* 8 U.S.C. § 1326(a)(1) (similar).

24

1. "Under the circumstance" excludes those who enter with or who did not need federal permission. That phrase means "'condition or state of affairs' surrounding and affecting an agent; esp. the external conditions prevailing at the time." Circumstance, *Oxford English Dictionary* (December 2023), doi.org/10.1093/OED/3243407940; *see* Circumstance, *Webster's Second New Int'l Dictionary* (1934) ("One of the conditions under which an event takes place or with respect to which a fact is determined; a condition, fact, or event."). The relevant inquiry then is what immigration "condition[] prevail[s] at the time" the alien is found.

The phrase "enters . . . under any of the following circumstances" thus specifies that, if at the time the alien is arrested, the prevailing condition is "denied admission," "excluded," "removed," or "departed," the alien committed an illegal reentry. That natural reading means Iowa illegal reentry violations are premised on earlier federal immigration determinations like "excluded" or "deported."

A natural reading thus does not ignore an alien's status. An alien who was deported years ago but has since received federal permission to reenter with a visa would not say she entered the country as a "deported"

Appellate Case: 24-2265     Page: 36     Date Filed: 07/25/2024 Entry ID: 5417267

person; she would say she entered as a "visa holder." Her present lawful federal status matters.

2. Under federal law, aliens who have received federal consent to reenter the country have not reentered illegally, nor are they "excluded" or "deported." Removal requires an alien's departure from the country and *bars reentry*. *See* 8 U.S.C. §§ 1229a(c)(5), (e)(2), 1231, 1182(a)(9). Federal consent removes the reentry bar and allows readmission. *See, e.g.*, *id.* §§ 1182(a)(9)(A)(iii), (C)(ii) (waiver of inadmissibility based on removal); § 1182(a)(9)(C)(iii) (Violence Against Women Act waiver); 8 C.F.R. § 245.23 (waiver for human trafficking victims). In other words, consent nullifies the reentry bar and changes the alien's prevailing condition.

"Admission" means the "lawful entry of an alien into the United States." 8 U.S.C. § 1101(a)(13)(A). That means "consent[] to the alien's admission," *id.* § 1182(a)(9), is consent to reapply for "lawful entry." So consent gives a previously deported alien the ability to seek permission to reenter lawfully—and because they then would not be subject to federal laws prohibiting *illegal* reentry, they are not subject to SF2340.

26

So where prior exclusion, deportation, or removal has been waived, there is no prevailing reentry bar—and thus nothing to trigger SF2340. A once-deported, now-legal permanent resident did not reenter under any prohibited prevailing condition. *See* Iowa Code § 718C.2. She reentered under an inadmissibility waiver with federal permission. Intervening events matter.

3. Not only is that the plain meaning, but any interpretation allowing Iowa to prosecute persons lawfully in the United States would regulate admission and removal standards—the sole province of the federal government. Yet that is how the district court read SF2340. *See* App.Vol.II.463-465, DOJ.R.Doc.29, at 21-23.

The district court reasoned that the federal illegal reentry law, unlike Iowa's, includes a section providing a defense where the alien has received federal government permission to reenter or can show permission was not necessary. 8 U.S.C. § 1326(a)(2). The district court viewed that omission as fatal. App.Vol.II.456, DOJ.R.Doc.29, at 14. But it failed to recognize that SF2340's text allows for these same defenses while allowing state courts to rely entirely on federal immigration determinations. Indeed, Texas's criminal entry law contained the federal

27

defense language, and the district court there found it "conflicts with federal immigration law" because "state judges may not make admissibility determinations." *United States v. Texas*, --- F. Supp. 3d ----, 2024 WL 861526, at *23 (W.D. Tex. 2024). States should not be left in this Catch-22—where enacting a defense means the law is preempted and not enacting a defense means the law is preempted.

Even if the district court's reading were "plausible enough" (App.Vol.II.455, DOJ.R.Doc.29, at 13), it is neither correct nor the only plausible interpretation. Given a choice, Iowa law tasks courts with applying the construction that complies with the constitution. *See State v. Carter*, 733 N.W.2d 333, 335 (Iowa 2007) ("[W]e adopt the construction that does not violate the constitution"); *Abrahamson*, 696 N.W.2d at 592–593 ("[T]he court must adopt the interpretation that upholds the law's constitutionality." (citations omitted)); *see also Star Equip., Ltd. v. Iowa Dep't of Transp.*, 843 N.W.2d 446, 457 (Iowa 2014) ("[W]e must remember that our statutes are cloaked with a presumption of constitutionality.").

Worse, the district court's approach turns the heightened standard governing facial challenges on its head. It is not enough for Plaintiffs to identify a plausible unconstitutional application; they must establish

28

that there is no plausible constitutional interpretation. *See Furlow*, 52 F.4th at 400.

Iowa law further encourages courts facing ambiguity to consider "[t]he consequences of a particular construction." Iowa Code § 4.6(5). Courts also must "read statutory language so it makes sense." *State v. Hoyman*, 863 N.W.2d 1, 14 (Iowa 2015) (citing Iowa Code § 4.4(3)).

SF2340's reasonable and practical interpretation would not include deporting legal residents of the United States. That does not make sense. Yet the district court forced that reading and assumed that because Iowa did not "'mirror' federal legal reentry law in every respect when it enacted Senate File 2340," the Legislature "wanted to take Iowa's law in a different direction." App.Vol.II.457, DOJ.R.Doc.29, at 15. The district court's reading ignores the presumption of good faith, ignores a plausible constitutional reading, and ignores the heightened facial challenge standard.

### 2. *Section 4: Order to Return*

An Order to Return issued under SF2340 specifies that an illegal alien will be transported to a port of entry and a state official will monitor compliance. Iowa Code § 718C.4. The order does not require the illegal

29

alien to be taken beyond the port of entry. Once the person arrives at the port of entry, subsequent action falls to federal immigration officers.

SF2340 does not authorize Iowa officials to remove a convicted illegal alien from Iowa—let alone the United States. It does not give officials authority to enforce the Order to Return and requires only that the designated official report the order's issuance to the Department of Public Safety. Iowa Code §§ 718C.4(5)–(7). The law also allows charges to be dismissed if the person agrees to leave the State voluntarily. Iowa Code § 718C.4.

The district court found Section 4 "is for all intents and purposes an order of removal." App.Vol.II.464, DOJ.R.Doc.29, at 22. But the court did not identify any statutory language allowing an official to remove an alien from Iowa. That is because there is no such language.

"It is a generally recognized principle that a statute of one state has no extraterritorial effect beyond its borders." *Powell v. Khodari-Intergreen Co.*, 334 N.W.2d 127, 131 (Iowa 1983) (citations omitted). Iowa law does not apply extraterritorially without a "clear and affirmative expression or indication" of such reach. *Jahnke v. Deere & Co.*, 912 N.W.2d 136, 150 (Iowa 2018). Further, "where the statute would be

declared invalid if given an interpretation resulting in its extraterritorial operation," courts must presume the law lacks such operation. *Id.* at 142 (citations omitted).

Iowa cannot accomplish removal. Iowa has only one port of entry— Des Moines International Airport. App.Vol.II.445, DOJ.R.Doc.29, at 3; App.Vol.II.445, DOJ.R.Doc.29, at 3 n.2. But there are no direct international flights from that airport. Indeed, the federal government could not explain how an alien would "get back to the country that they entered from." TR., p.10:15-20. Iowa's responsibility extends to transporting an illegal alien to the airport, no further.

SF2340's legislative analysis confirms this. A May 2024 fiscal report accompanying the bill examined the law's potential prison, probation, parole, and other correctional costs. *See* Legislative Servs. Agency, Fiscal Servs. Div., Fiscal Note: SF2340, at 2 (May 8, 2024), available at perma.cc/ZFT2-XNFP. It also considered "the cost to transport an individual to a port of entry." *Id.* But it did not analyze the cost to transport an alien further because the law does not authorize it.

31

The district court instead presumed an unconstitutional, extraterritorial analysis even though the law does not support such unconstitutional enforcement. *Cf. Keller*, 719 F.3d at 945.

### 3. Section 6: Abatement

Section 6 prohibits "abat[ing a]prosecution . . . on the basis that a federal determination regarding the immigration status of the person is pending or will be initiated." Iowa Code § 718C.6. It is limited to pending or not-yet initiated federal immigration determinations. It does not prohibit abatement after a final determination. *See Kucera v. Baldazo*, 745 N.W.2d 481, 487 (Iowa 2008) (relying on *expressio unius*).

Section 6 requires understanding the difference between "abatement" and "stay." "While an 'abatement' and a 'stay of proceedings' are similar, they are not identical." *Simmons v. Sup. Ct.*, 214 P.2d 844, 848 (Cal. Ct. App. 1950); *Evans v. Evans*, 186 S.W.2d 277, 279 (Tex. Civ. App. 1945) (same); *see also* 1 Am. Jur. 2d *Abatement, Survival, and Revival*, § 3 (1994) ("The term 'abatement' is distinguishable from a 'stay.'").

"Abatement" means "[t]he suspension or defeat of a pending action for a reason unrelated to the merits of the claim." *Abatement*, Black's Law

Dictionary (11th ed. 2019). "To abate a suit is to put an end to its existence." *Simmons*, 214 P.2d at 848 (citation omitted); *see also State v. Kriechbaum*, 258 N.W.110, 113 (Iowa 1934) ("To 'abate' is to render nonexistent.").

In contrast, a "stay" pauses enforcement. *See Carreras v. Iowa Dep't of Transp.*, 977 N.W.2d 438, 451 (Iowa 2022) (citing *Stay*, Black's Law Dictionary (11th ed. 2019) ("The postponement or halting of a proceeding, judgment, or the like.")). Unlike abatement, "'[a] stay order does not affect the merits of the controversy and is to maintain the status quo until a determination can be made on the merits.'" *Id.* (quoting *Hanna v. State Liquor Control Comm'n*, 179 N.W.2d 374, 376 (Iowa 1970)). While a stay, like abatement, may be given by statute, it need not be. *See First Nat'l Bank of Glidden v. Matt Bauer Farms Corp.*, 408 N.W.2d 51, 54 (Iowa 1987). It also can be given by agreement of the parties, or, as relevant here, discretionary court order. *Id.*

So Iowa law establishes that an alien's final federal determination of lawful status mandates abatement. But if an illegal alien charged under SF2340 has or will have a pending asylum case, then circumstances may warrant a discretionary stay.

33

The district court questioned "why § 718C.6 would need to be interpreted to mandate prosecutorial abatement when there has been a final federal determination of someone's lawful status if § 718C.2 doesn't permit the arrest or prosecution of such a person at all." App.Vol.II.458, DOJ.R.Doc.29, at 16. But that ignores SF2340's purpose, which is to create an analogue to federal criminal reentry—without requiring state courts to make immigration determinations. *See Texas*, 2024 WL 861526, at *23.

The abatement provision reinforces that the law does not apply to aliens with a final legal immigration status and allows automatic dismissal if charges are mistakenly filed. Section 6 also provides that pending and yet-to-be initiated immigration determinations do not trigger abatement—though the provision does not remove a court's inherent authority to issue a stay. The district court ignored those readings and instead chose an unconstitutional one.

34

## III. PLAINTIFFS' CLAIMS ARE NONJUSTICIABLE.

### A. The Supremacy Clause Is A Rule Of Decision And Does Not Give Any Plaintiff A Cause Of Action To Challenge SF2340.

Plaintiffs must have a cause of action to assert constitutional violations. Plaintiffs rely on the Supremacy Clause and equity for their ticket into court, but neither grants them passage.

"Federal courts are courts of limited jurisdiction possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation and internal quotation marks omitted). "Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts;" instead they are "invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose." *DeVillier v. Texas*, 601 U.S. 285, 291 (2024).

The Supremacy Clause "does not create a cause of action" nor confer federal rights; it is a "rule of decision." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–325 (2015). It does not "give affected parties a constitutional (and hence congressionally unalterable) right to enforce federal laws against the States." *Id.*

35

Plaintiffs did not assert an underlying cause of action authorizing their preemption claim. The district court was wrong to determine otherwise, as to the United States, by relying on precedents that did not decide this issue. And the district court did not address MMJ Plaintiffs' missing cause of action. App.Vol.I.125-126, MMJ R.Doc.36, at 14-15.

Nor does equity allow Plaintiffs' suit. Any claim in equity must be "grounded in traditional equity practice." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). Plaintiffs have an equitable cause of action when their claim sounds in public nuisance abatement, property right enforcement, or anti-suit injunction because these are grounded in traditional equity practice.

In *In re Debs*, the Supreme Court upheld an injunction the United States sought against a labor strike because the claim was grounded in traditional equity practice. 158 U.S. 564, 583 (1895). The United States had a property interest in the postal mail. *Id.* at 583–584. And it had an interest in abating the public nuisance. *Id.* at 584–586. And *Debs* may be on shaky ground. Transcript of Oral Argument at 86:7-9, *Moyle v. United States*, 144 S. Ct. 2015 (2024).

36

*Ex parte Young* allows plaintiffs to bring injunctive claims. 209 U.S. 123, 155–156 (1908). It allows actions to be brought by persons "about to" be subject to the proceedings brought by a state official that would interfere with federal rights. *Id.* In those rare cases, courts may "grant injunctive relief against state officers who are violating, or planning to violate, federal law." *Armstrong*, 575 U.S. at 326–327.

Plaintiffs' claims are not grounded in traditional equity practice. And the district court failed to point to any equitable hook.

### 1. Plaintiff United States lacks an equitable action.

The United States did not identify statutory authority or traditional equity principle permitting its claims. Instead, it relies on the Supremacy Clause and the Commerce Clause. But neither suffices.

The United States's claim is not grounded in traditional equitable practice. The United States is not subject to enforcement, so its claim is not rooted in *Ex parte Young*. It claims neither a property interest nor nuisance abatement. And it cites no precedent *holding* that it has an equitable right to come to federal court to enjoin any action it believes trods on federal sovereign interests.

37

Nor does the United States invoke statutory authority, which makes sense. When Congress wants to authorize the federal government to seek injunctive relief against States, it expressly does so. Indeed, in pending litigation in *United States v. Texas*, the United States provided the Fifth Circuit with a list of "more than 350 statutory provisions that expressly authorize the United States (or a federal agency or officer) to seek injunctive relief." R.Doc.178, R.Doc.179, *United States v. Texas*, No. 24-50149 (5th Cir.).

The district court determined the United States had an equitable cause of action without identifying the "traditional head of equitable jurisdiction" for such action. App.Vol.II.460-461, DOJ.R.Doc.29, at 18-19; *see Whole Woman's Health*, 595 U.S. at 39.

The court instead relied on *Arizona*'s acquiescence. True, the United States "initiated *Arizona* by suing Arizona officials in equity for violating the Supremacy Clause." App.Vol.II.460, DOJ.R.Doc.29, at 18. But defendants in *Arizona* did not argue the United States lacked a cause of action and it was not part of the Court's holding.

The existence of a cause of action is not jurisdictional, so can be waived. *Davis v. Passman*, 442 U.S. 228, 239 & n.18 (1979); *Agilent*

38

*Techs. v. Waters Techs. Corp.*, 811 F.3d 1326, 1330 (Fed. Cir. 2016). *Arizona* thus reached the merits without deciding this issue. Cases where even jurisdictional issues go unaddressed do not set precedent. *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 91 (1998) ("[D]rive-by jurisdictional rulings . . . have no precedential effect."). The district court should not have read silence as a holding. *See id.*; *cf. Dillard v. O'Kelley*, 961 F.3d 1048, 1056–57 (8th Cir. 2020) (en banc) (Colloton, J., concurring) ("A judge's power to bind is limited to the issue that is before him.").

The district court faulted Defendants for "not cit[ing] a single case" holding the United States lacks a cause of action to enjoin a state law based on the Supremacy Clause. App.Vol.II.461, DOJ.R.Doc.29, at 19. But the burden lies with plaintiffs. The only case cited that decided the issue is *United States v. Texas*, 557 F. Supp. 3d 810, 820 (W.D. Tex. 2021). And that court's reasoning also assumed silence provided a cause of action.

Without a cause of action, the United States cannot sue. The district court was wrong to assume otherwise.

39

## 2. *MMJ Plaintiffs lack a cause of action.*

No MMJ Plaintiff has a cause of action—statutory, equitable, or otherwise. MMJ Plaintiffs ground their equitable action on *Ex parte Young* and the anti-suit injunction. App.Vol.I.153, MMJ.R.Doc.45, at 9. But SF2340 does not violate federal law; it creates a state analogue to a federal crime.

Doe and Roe are not subject to an imminent or pending enforcement action because they are not subject to SF2340 and thus are not the "certain private parties" entitled to seek protection from federal courts. *Whole Woman's Health*, 595 U.S. at 39.

And *Ex parte Young* does not give MMJ an equitable cause of action. SF2340 does not allow Iowa to criminally charge organizations, nor does it allow state officials to violate federal law. Indeed, "[a] nonstatutory cause of action brought by plaintiffs who stand to incur only indirect injuries from enforcement of a state law is far afield from *Ex parte Young*." *Texas¸* 97 F.4th at 310 (Oldham, J., dissenting). After all, *Ex parte Young* authorizes only persons "about to" be subject to proceedings brought by a state official to pursue an injunction against that enforcement. 209 U.S. at 156–157.

MMJ Plaintiffs' lacking cause of action went unaddressed. But cause-of-action analysis is specific to each plaintiff. *Davis*, 442 U.S. at 239 n.19; *cf. In re Ozark Rest. Equip. Co.*, 816 F.2d 1222 (8th Cir. 1987) (trustee could not pursue suit when he lacked cause of action, even if the estate's creditors had one). Unlike standing, each plaintiff must assert a proper cause of action.

**B.    All MMJ Plaintiffs Lack Standing.**

Article III standing is a threshold inquiry. *See Spokeo, Inc. v. Robins¸* 578 U.S. 330, 338 (2016) (detailing standing requirements). Individual MMJ Plaintiffs, Doe and Roe, failed to plead an injury-in-fact, because they are lawful permanent residents so SF2340 does not apply to them. And MMJ lacks both organizational and direct standing.

The district court erred in finding otherwise. App.Vol.I.234-239, MMJ.R.Doc.51, at 12-17.

### 1.    *Individual MMJ Plaintiffs lack injury-in-fact.*

Doe and Roe pleaded no injury-in-fact—no "invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Missouri v. Biden*, 52 F.4th 362, 368 (8th Cir. 2022) (quotations and citation omitted). The district court said Plaintiffs' "interpretation of the statute is plausible enough to

41

give Doe and Roe standing." App.Vol.I.235, MMJ.R.Doc.51, at 13. Allowing speculative fears to justify a facial injunction is error. *See* Iowa Code §§ 4.4(1), (3).

Plaintiffs' flawed statutory interpretation cannot create standing. SF2340 does not apply to lawful permanent residents, so SF2340 does not apply to Doe and Roe. *See* App.Vol.I.9-10, MMJ.R.Doc.1 ¶¶ 18-19. They lack a credible threat of prosecution, and thus lack actual or imminent harm. *See California v. Texas*, 593 U.S. 659, 670 (2021). Because they have final, lawful federal immigration determinations, any inadvertent prosecution must abate. *See* Iowa Code § 718C.6. Doe and Roe thus lack an injury.

Subjective fears are not enough. *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009). Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). And "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *281 Care Committee v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). *Compare Steffel v. Thompson*, 415 U.S. 452, 459 (1974)

42

(petitioner could challenge statute because police warned him to stop the proscribed conduct or else he would be prosecuted), *with Younger v. Harris*, 401 U.S. 37, 42 (1971) (no controversy existed as to plaintiffs never threatened with prosecution who could allege only that they "fe[lt] inhibited" by the law).

Doe and Roe do not allege actual threats of prosecution so they lack standing.

### 2. *Plaintiff MMJ lacks organizational standing.*

A membership organization may sue on behalf of its members if, in relevant part, "(a) its members would otherwise have standing to sue in their own right; [and] (b) the interests it seeks to protect are germane to the organization's purpose." *Missouri Protection & Advoc. Servs., Inc. v. Carnahan*, 499 F.3d 803, 809 (8th Cir. 2007). It must identify at least one member who has suffered harm. *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 & n.12 (8th Cir. 2022).

MMJ asserted organizational standing through two pseudonymous members, "Anna" and "David." The district court agreed MMJ had standing based on non-plaintiff MMJ member David, but also based on Individual Plaintiffs Doe and Roe. App.Vol.I.239, MMJ.R.Doc.51, at 17.

The organization lacks standing all around.

1. MMJ does not identify a member who will suffer harm. Like Doe and Roe, SF2340 is not enforceable against Anna. Anna, applied for and received asylum. *See* App.Vol.I.17-18, MMJ.R.Doc.1 ¶ 58. The federal government authorized Doe, Roe, and Anna to return, so they cannot be charged under SF2340. MMJ cannot rest its standing on them.

David also cannot provide standing because MMJ fails to plead his injury with particularity and plausibility. MMJ instead asks this Court to speculate and assume certain unpleaded facts. *Contra Ashcroft v. Iqbal*¸ 556 U.S. 662, 678 (2009). But MMJ pleads only "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id.* (citation and internal quotation marks omitted).

Unlike the others, MMJ does not allege that David lives in Iowa or is here illegally. *See, e.g.*, App.Vol.I.8, MMJ.R.Doc.1 ¶ 14; App.Vol.I.9-10, MMJ.R.Doc.1 ¶¶ 18-19; App.Vol.I.17-18, MMJ.R.Doc.1 ¶ 58. David previously was inadmissible, but so were the others, and they now have legal status.

The district court assumed David lives in Iowa, because he graduated high school in Iowa (seventeen years ago) and is an Iowa MMJ

44

member. App.Vol.II.459, DOJ.R.Doc.29, at 17. But there is no allegation that Iowa residency is an MMJ membership requirement. And David has spent time living outside Iowa—he lived elsewhere until he was ten and resided outside the country between his 2015 deportation and return to the United States. App.Vol.I.10-11, MMJ.R.Doc.1 ¶ 22.

David's continued unlawful status is not a plausible inference when he has U.S.-citizen relatives and a U.S.-citizen partner. App.Vol.I.18-19, MMJ.R.Doc.1 ¶ 60. Nor when MMJ alleges David's family "heavily rel[ies]" on him financially—suggesting he has lawful employment authorization to work. *Id.*

David cannot support MMJ's standing, nor can MMJ's other 2,300 unidentified members. *See Religious Sisters of Mercy*, 55 F.4th at 601 & n.12 (organizational standing requires identifying members and their injuries). The district court was wrong to speculate and assume crucial, yet not pleaded, facts about David's residency and immigration status.

2. The interests MMJ seeks to protect also are not germane to its organizational purpose, further dooming organizational standing. *See FDA v. All. for Hippocratic Med.,* 602 U.S. 367, 393–396 (2024). MMJ's mission is to "provide legal services" and education to help aliens access

45

"benefits for which they are eligible," "maintain . . . lawful immigration status," and "avoid . . . removal." App.Vol.I.7, MMJ.R.Doc.1 ¶ 11; App.Vol.I.8-9, MMJ.R.Doc.1 ¶ 16; App.Vol.I.19; MMJ.R.Doc.1 ¶ 61.

SF2340 does not change standards for lawful status. And nothing hinders MMJ's ability to provide legal services consistent with its mission. *See All. For Hippocratic Med.*, 602 U.S. at 394 ("[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing.")

The district court concluded the interests at stake were germane to MMJ's organizational purpose solely because MMJ's lawful members' "right to remain in Iowa as lawful residents" is central to MMJ's work. App.Vol.I.239, MMJ.R.Doc.51, at 17. But the district court failed to address that helping immigrants maintain their lawful status is not germane, because SF2340 affects only those with *unlawful* status.

### 3.    *Plaintiff MMJ lacks direct standing.*

SF2340 does not force MMJ to divert resources; MMJ's choices to make different funding decisions do not give rise to direct standing. MMJ alleges two harms. App.Vol.I.19-22, MMJ.R.Doc.1 ¶¶ 61-74. *First*, MMJ will divert work to address SF2340, which will impact "grant funding

46

that requires specific deliverables, including the number of clients served." App.Vol.I.19, MMJ.R.Doc.1 ¶ 61. *Second*, SF2340 "will hinder" and divert time from "MMJ's advocacy work." App.Vol.I.21, MMJ.R.Doc.1 ¶ 68.

But an organization "cannot spend its way into standing simply by expending money to gather information and advocate against" a law. *All. for Hippocratic Med.*, 602 U.S. at 394. MMJ's alleged injuries are exactly the type of self-inflicted injuries or setbacks to "abstract social interests" and advocacy work that do not support direct standing. MMJ fails to assert a sufficient nexus between SF2340 and MMJ's alleged increased workload, and bases harms on speculation about third-party decisions.

Because SF2340 does not "directly affect[] and interfere[] with [MMJ's] core business activities," MMJ's diversion-of-resources theory of standing must fail. *Id.* at 395.

### C. All Plaintiffs Lack Standing To Pursue An Injunction That Runs Against Only Section 4.

"[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves." *Whole Woman's Health v. Jackson*, 141 S. Ct. 2495, 2495 (2021); *Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015). ("A district court has no

47

authority to enjoin the statute; an injunction would run only against the defendants in the case.").

Named Defendants have no role in "administer[ing] and enforc[ing]" Section 4, which authorizes judges to issue return orders. *281 Care Comm.*, 638 F.3d at 631. So an injunction against Defendants' enforcement of only Section 4 would not redress Plaintiffs' alleged Section 4 harm. Non-party judges could still issue return orders.

So if this Court decides Section 2 is not preempted, then it need not proceed to Plaintiffs' claims against Section 4, because Plaintiffs lack standing to challenge only Section 4.

## IV. FEDERAL IMMIGRATION LAW DOES NOT PREEMPT SF2340.

"Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona*, 567 U.S. at 398 (citing *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991)). "[T]he states are sovereign, save only as Congress may constitutionally subtract from their authority." *Parker v. Brown*, 317 U.S. 341, 351 (1943). The "Laws of the United States" take priority over conflicting state law. U.S. Const., art. VI, cl. 2.

Preemption is powerful and must be narrowly construed. *See Arizona*, 567 U.S. at 398–401. Courts scrutinize implied preemption claims because "an unexpressed purpose to nullify a State's control over its officers and agents is not lightly to be attributed to Congress." *Parker*, 317 U.S. at 351. Implied preemption "start[s] with the assumption that the historic police powers of the States were not to be superseded." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

Federal enforcement priorities do not preempt state law. *See Kansas*, 589 U.S. at 212. "Invoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019).

The injunction here drastically expands immigration preemption, enjoining Defendants' enforcement of SF2340 based on field and conflict preemption. App.Vol.II.461-463, DOJ.R.Doc.29, at 19-23. The district court stretches *Arizona* too far. Along the way, it ignored *Kansas v. Garcia*, which directly undercuts its conclusion. Those errors warrant reversal.

49

### A. SF2340 Does Not Regulate in Any Field Occupied by Federal Law.

Field preemption "is itself suspect, at least as applied in the absence of a congressional command that particular field be preempted." *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 616–617 (1997) (Thomas, J., dissenting). Only "[i]n rare cases" have courts found that Congress has "'legislated so comprehensively' in a particular field that it 'left no room for supplementary legislation.'" *Kansas*, 589 U.S. at 208. "Only a demonstration that complete ouster of state power including state power to promulgate laws not in conflict with federal laws was the clear and manifest purpose of Congress" justifies field preemption. *DeCanas v. Bica*, 424 U.S. 351, 357 (1976) *superseded on other grounds as recognized by Kansas*, 589 U.S. at 195.

The district court identified no clear and manifest congressional purpose. Instead, it extended *Arizona* to novel grounds: preempting the entire field of immigration.

1. Immigration law in toto is not field preempted. *See DeCanas*, 424 U.S. at 354–356. Field preemption within immigration law is narrower, as the Supreme Court has shown by analyzing state immigration-related laws under conflict and obstacle preemption.

Appellate Case: 24-2265     Page: 61     Date Filed: 07/25/2024 Entry ID: 5417267

The federal government has broad power to regulate immigration. The federal government alone naturalizes and admits aliens and sets admissibility standards. *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1876).

But this exclusive authority stems from the Constitution. "[B]efore the adoption of the constitution of the United States each state had the authority to prevent [itself] from being burdened by an influx of persons." *Arizona*, 567 U.S. at 418 (Scalia, J., concurring in part and dissenting in part) (quotation omitted). The Articles of Confederation allowed free movement between States, which risked unexpected influxes from other States' lower citizenship standards. *See id.* The Naturalization Clause— authorizing Congress to set uniform standards—protected States' long-established sovereign interest in their borders. *Id.* But that naturalization authority did not remove immigration regulation from the States. *Id.* at 420.

The Supreme Court "has never held that every state enactment which in any way deals with aliens" is "pre-empted by this constitutional power, whether latent or exercised." *DeCanas*, 424 U.S. at 355. Only alien registration is field preempted. *Arizona*, 567 U.S. at 401. Indeed, the Supreme Court has never extended immigration field preemption

51

farther. *See, e.g.*, *Kansas*, 589 U.S. at 210 (rejecting overbroad immigration field preemption); *Arizona*, 567 U.S. at 401, 403–413 (federal government "has occupied the field of alien registration" but analyzing other sections using obstacle preemption).

"At no point" did *Arizona* "find that state regulation of immigration was *per se* impermissible, despite ample opportunity to do so." *Utah Coal. of LaRaza v. Herbert*, 26 F. Supp. 3d 1125, 1134 (D. Utah 2014). "Instead, the Court opted to engage in a detailed, section-by-section analysis of the challenged provisions" and ended its opinion not by writing "that Congress has exclusive power to regulate immigration" but "rather that '[t]he National Government has *significant* power to regulate immigration.'" *Id.* at 1134–35 (quoting *Arizona*, 567 U.S. at 516).

Field preemption does not occur whenever "state regulation would 'frustrate federal policies' and interfere with the comprehensive scheme established under federal law." App.Vol.II.462-463, DOJ.R.Doc.29, at 20-21 (quoting *Arizona*, 567 U.S. at 399, 402; *Texas*, 97 F.4th at 279–286). Even *Kansas*'s dissent would not have expanded field preemption beyond "policing fraud committed to demonstrate federal work authorization." 589 U.S. at 215 (Breyer, J., concurring in part and dissenting in part). No

Appellate Case: 24-2265      Page: 63      Date Filed: 07/25/2024 Entry ID: 5417267

Supreme Court precedent supports extending immigration field preemption as far as the district court.

2. SF2340 does not regulate admissibility standards, nor does it apply to lawful residents. Rather, it allows the State to prosecute an alien who enters, attempts to enter, or is found in the State after illegally reentering the country while subject to a reentry bar. *See* Iowa Code § 718C.2(1). Illegal reentry is not admission. *See Cordova-Soto v. Holder*, 659 F.3d 1029, 1034 (10th Cir. 2011) (citing 8 U.S.C. §§ 1231(a)(5), 1326(a)).

SF2340 does not authorize Iowa officials to assess admissibility. SF2340 applies only if the federal government first determined an alien's inadmissibility. Iowa Code § 718C.2(3). Iowa officials may obtain immigration status verifications from federal officials. 8 U.S.C. § 1373(c). SF2340 also abates prosecution if federal immigration authorities have made a final determination of lawful entry. *See* Iowa Code § 718C.6. SF2340 simply makes it a state crime to enter Iowa after committing a federal immigration crime.

SF2340 also does not set removal standards. Section 4 provides for a judicial order detailing how an illegal alien will be taken to an Iowa

53

port of entry, at which point the case is passed to federal immigration officers. Removal is a question for them. Nothing in SF2340 gives Iowa authority to remove a person from Iowa's port of entry, much less the country.

SF2340 is an exercise of Iowa's police power to enforce federal admissibility standards within its borders. The States' "power to exclude has long been recognized as inherent in sovereignty," *Arizona*, 567 U.S. at 417, (Scalia, J., concurring in part and dissenting in part), including by the Supreme Court, *see Mayor, Alderman & Commonalty of City of N.Y. v. Miln*, 36 U.S. (11 Pet.) 102, 130–132 (1837). And federal law does not supersede States' police powers unless preemption was Congress's clear and manifest purpose. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)

The federal government's exclusive authority to naturalize and admit does not necessarily displace the States' police power to exclude illegal aliens. *See Chamber of Comm. v. Whiting*, 563 U.S. 582, 588, 600 (2011) (federal interest in immigration does not supersede States' "broad authority under their police powers" to enact immigration-related laws). "The central concern of the INA is with the terms and conditions of admission" and "subsequent treatment of aliens lawfully in the country."

54

*DeCanas*, 424 U.S. at 359. Once an alien violates federal admissibility standards, States may prosecute the violation.

Indeed, the district court acknowledged that it was "not aware of any authority saying that the State can't criminalize drug possession and drug distribution and things of that nature even though you've got the same state and federal dichotomy that at least in theory could complicate some of those international negotiations." TR., p.14:16–20.

The federal government contended that immigration "is just different" because "the federal sovereign is the one that controls entry" and immigration is "purely a federal realm," unlike drug laws which "fall within the police power." TR., p.14:25–15:6. The district court adopted that flawed logic.

3. The district court concluded immigration law is field preempted, despite the lack of precedential support. App.Vol.II.462, DOJ.R.Doc.29, at 20. It reasoned that "'Congress enacted the Immigration and Nationality Act (INA) to establish 'a comprehensive federal statutory scheme for regulation of immigration and naturalization'" and "'[p]ermitting the State to impose its own penalties for federal offenses here would conflict with the careful framework Congress adopted.'" *Id.*

55

(quoting *Texas*, 97 F.4th at 279–280)). Thus the court said State regulation would "'frustrate federal policies,'" but it did not elaborate on these policies. App.Vol.II.462-463, DOJ.R.Doc., at 20-21 (quoting *Arizona*, 567 U.S. at 399, 402; *Texas*, 97 F.4th 279–286).

That logic suffers from multiple flaws. *First*, the Supreme Court has rejected the "brooding federal interest" theory of preemption. *See Kansas*, 589 U.S. at 202.

*Second*, if the district court is correct, *Arizona* could have been much easier. "The Court would have simply said that immigration implicates important federal interests, so the Arizona law was field preempted in its entirety." *Texas*, 97 F.4th at 322 (Oldham, J., dissenting). But *Arizona*'s "analysis was much more nuanced," analyzing one section at a time, and applying obstacle preemption. *Id.* at 325.

"[T]hat Congress occupied the field of aliens who must register to seek admission says nothing about the field of aliens whom Congress deemed inadmissible." *Id.* at 320. And *Arizona* upheld one state law touching on immigration. 567 U.S. at 411–415. Then, eight years later, the Supreme Court upheld a state criminal law even though it touched

on immigration. *See Kansas*, 589 U.S. at 213. For the district court to be right, *Arizona* and *Kansas* must be wrong.

*Third*, this theory "would radically undermine States' sovereignty . . . because immigration is hardly the only area of state regulation that implicates important federal interests." *Texas*, 97 F.4th at 322–23 (Oldham, J., dissenting). The federal government has important interests and statutory authority in many areas where state law is not preempted. *See, e.g.*, *Wyeth*, 555 U.S. at 573–581 (drug enforcement); *California v. ARC Am. Corp.*, 490 U.S. 93, 101–102 (1989) (antitrust).

*Fourth*, the district court determined "there is no reasonable way to interpret *Arizona* as forbidding state law attempts to criminalize alien registration violations but allowing state law attempts to criminalize illegal reentry." App.Vol.II.462, DOJ.R.Doc.29, at 20. That is wrong.

Although *Arizona* rejected state criminal penalties, its context matters. *See Arizona*, 567 U.S. at 400–410. The Court considered four separate state provisions and found only alien registration field preempted. *Id.* at 402–403. *Arizona* recognized that where the State is

Appellate Case: 24-2265     Page: 68     Date Filed: 07/25/2024 Entry ID: 5417267

not operating in an occupied field, "a State may make violation of federal law a crime." *Id.* at 402.

*Arizona* held two other sections obstacle preempted. And its reasons are key: they criminalized conduct that was not a federal crime, thus frustrating federal decisions to treat those violations civilly. *Id.* at 405, 407. One section criminalized "removability," a civil—rather than criminal—status. *Id.* at 407 (citations omitted). The other made it illegal for an alien to knowingly apply for, solicit, or perform work, but Congress specifically chose not to make unauthorized work a criminal offense. *Id.* at 403–405.

In contrast, Congress criminalized illegal reentry with mandatory language. 8 U.S.C. § 1326 (person in violation of illegal reentry law "shall" be punished). Unlike the obstacle-preempted provisions in *Arizona*, SF2340 neither extends federal law nor criminalizes something not already federally criminal.

*Finally,* even Supreme Court rulings based on constitutional authority more broadly have not found exclusive the federal power to regulate beyond the creation of admission, naturalization, and removal standards. *See, e.g.*, *Chy Lung*, 92 U.S. at 280. These cases provide that

Appellate Case: 24-2265      Page: 69      Date Filed: 07/25/2024 Entry ID: 5417267

the federal government, not the States, sets the standards. *Id.*; *Hines v. Davidowitz*, 312 U.S. 52, 56 (1941). And SF2340 affects no such standards.

Reentry laws like SF2340 are triggered only after a federal determination that an alien is not properly admitted to the country. *See* Iowa Code § 718C.2(1). A State can impose legal consequences reflecting those Congress has already imposed. And SF2340 "says nothing about alien registration and has no impact whatsoever on which aliens Congress chooses to admit, the terms on which Congress chooses to admit them, or any part of the INA even tangentially related to admission." *Texas*, 97 F.4th at 321 (Oldham, J., dissenting).

4. Even if the Court accepted the district court's novel extension of field preemption, the federal government still must occupy that field. *Cf. Parker*, 317 U.S. at 358. But the United States has ignored the law. Its inaction is "akin to posting a flashing 'Come In, We're Open' sign on the southern border." *Florida v. United States*, 660 F. Supp. 3d 1239, 1253 (N.D. Fla. 2023); *Texas v. Biden*, 20 F.4th 928, 982 (5th Cir. 2021), *rev'd*, 597 U.S. 785 (2022). The federal government should not be permitted to invoke field preemption based on laws it declines to enforce. *Cf. Arizona*,

59

567 U.S. at 397 (premising decision on efforts to enforce federal immigration obligations).

## B. SF2340 Aligns with the Federal Immigration Scheme.

Not only is field preemption limited to alien registration, but the obstacle preemption principles that undergird the district court's ruling are constitutionally unsound. Obstacle preemption "rests on judicial guesswork about 'broad federal policy objectives, legislative history, or generalized notions of congressional purposes that are not contained within the text of federal law.'" *Kansas*, 589 U.S. at 213–215 (Thomas, J., concurring). Federal law preempts state law only when the two contradict. The Executive Branch's non-enforcement priorities do not preempt a state law. "There is no federal preemption in vacuo, without a constitutional text, federal statute, or treaty made under the authority of the United States." *Kansas*, 589 U.S. at 202 (quotation omitted).

Even so, SF2340 is not obstacle preempted. Federal law seldom bars States from adopting federal law for state purposes. *See, e.g.*, *Gilbert v. Minnesota*, 254 U.S. 325, 330–331 (1920). "[T]here are now many instances in which a prosecution for a particular course of conduct could be brought by either federal or state prosecutors." *Kansas*, 589 U.S. at

60

212. "[I]n the vast majority of cases where federal and state laws overlap, allowing the States to prosecute is entirely consistent with federal interests." *Id.* Overlap does not mean invalidity. *California v. Zook*, 336 U.S. 725, 733 (1949).

Iowa can complement federal criminal immigration law. *Arizona* recognized that where a State is not operating in an occupied field, "a State may make violation of federal law a crime." 567 U.S. at 402. True, *Arizona* held "two new criminal provisions were preempted by federal law." App.Vol.II.461, DOJ.R.Doc.29, at 19. But the challenged criminal laws in *Arizona* were obstacle preempted for criminalizing conduct that was not a federal crime. *Texas*, 97 F.4th at 405, 407.

Here, Congress criminalized illegal reentry with mandatory language. 8 U.S.C. § 1326 (illegal reentry violation "shall" be punished). Unlike the obstacle-preempted provisions in *Arizona*, SF2340 neither goes further than federal law nor criminalizes something not also federally criminal.

SF2340 is more like the law in *Kansas*. *Kansas* upheld an identity-theft statute criminalizing an alien's use of a false identity for work authorization. 589 U.S. at 195. The Court distinguished *Arizona* and

Appellate Case: 24-2265   Page: 72   Date Filed: 07/25/2024 Entry ID: 5417267

stated, "[t]he mere fact that state laws like the Kansas provisions at issue overlap to some degree with federal criminal provisions does not even begin to make the case for conflict preemption." *Id.* at 211. "From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Id.* at 212.

Given the expanding reach of federal criminal law, "there are now many instances in which a prosecution for a particular course of conduct could be brought by either federal or State prosecutors." *Id.* "Our federal system would be turned upside down if we were to hold that federal criminal law preempts state law whenever they overlap," and there is no basis for inferring such preemption. *Id.* Rather, "in the vast majority of cases where federal and state laws overlap, allowing States to prosecute is entirely consistent with federal interests." *Id.*

SF2340 makes it a crime to violate federal criminal immigration law in Iowa. Both state and federal laws make it a crime to illegally reenter, and both provide similar criminal penalties and allow for voluntary departure. *See* 8 U.S.C. § 1326(a); Iowa Code § 718C.2(1).

But the district court reasoned that "there is no reasonable way to interpret *Arizona* as forbidding state law attempts to criminalize alien

registration violations but allowing state attempts to criminalize illegal reentry." App.Vol.II.462, DOJ.R.Doc.29, at 20. That fails to apply *Arizona* and *Kansas*. SF2340 thus is not "preempted under principles of conflict preemption." App.Vol.II.463-465, DOJ.R.Doc.29, at 21-23. The district court's reasoning also illustrates the problem with pre-enforcement, facial challenges.

> 1. *The district court based its conflict preemption conclusion on a flawed statutory reading.*

The district court held SF2340 conflicts with the federal immigration scheme. *See* App.Vol.II.462-464, DOJ.R.Doc.29, at 20-22. But under SF2340, federal officials retain discretion to offer asylum or other relief at ports of entry. And the federal government maintains exclusive authority to set removal destinations.

SF2340 does not apply to aliens legally admitted to the United States. And it does not prevent an alien from seeking asylum, or other federal relief. Orders issued under SF2340 merely specify how the alien will be transported to a port of entry. *See* Iowa Code § 718C.4. Once there, federal officers make the ultimate determination, necessarily assessing relevant defenses.

63

The court also misread Section 6. App.Vol.II.463, DOJ.R.Doc.29, at 21. Section 6 limits abatement to pending or not-yet-initiated federal immigration determinations. *See* Iowa Code § 718C.6. SF2340 does not apply to final determinations. *See Kucera*, 745 N.W.2d at 487. Abatement is required when the alien has lawful status. *See Weissenberger v. Iowa Dist. Ct. for Warren Cty.*, 740 N.W.2d 431, 436 (Iowa 2007) (States must comply with federal law).

Though Section 6 prohibits abatement for pending or not-yet-initiated federal immigration determinations, it does not prohibit discretionary stays. If a case is stayed for an asylum proceeding, the prosecution would abate with a final grant of asylum. The district court ignored this possibility. App.Vol.II.463, DOJ.R.Doc.29, at 21.

Finally, SF2340 fits current U.S.-foreign relations. Federal law already criminalizes illegal reentry. SF2340 creates no new implications for foreign relations.

> ## 2. *Any purported conflicts should be resolved by state courts in as-applied challenges.*

"[T]o affirm the district court's injunction, we would have to conclude that plaintiffs demonstrated a likelihood 'that no set of circumstances exists under which' any provision—indeed, any word—of

[SF2340] 'would be valid." *Texas*, 97 F.4th at 314 (Oldham, J., dissenting) (quoting *Salerno*¸ 481 U.S. at 745). A pre-enforcement challenge is improper where there is a plausible constitutional reading and uncertainty surrounding state court interpretation. This is true for at least four fundamental reasons.

*First,* and most basically, Iowa courts interpreting Iowa law know that "[i]f the law is reasonably open to two constructions . . . the court must adopt the interpretation that upholds the law's constitutionality." *Abrahamson*, 696 N.W.2d at 593.

*Second*, when "[t]here is basic uncertainty about what the law means and how it will be enforced," it is improper to enjoin enforcement "before the state courts had an opportunity to construe it and without some showing that enforcement of the provision in fact conflicts with federal immigration law and its objectives." *Arizona*, 567 U.S. at 416. "The fact that [a law] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.* at 425 (Scalia, J., concurring in part and dissenting in part) (quotation omitted). Any specific preemption problems that might exist "could be solved with the scalpel of as-applied relief . . . as opposed to the

65

machete of global invalidation." *Texas*, 97 F.4th at 300 (Oldham, J., dissenting). "That is the way federalism is supposed to work. As this case illustrates, however, all of that is nullifiable by one global pre-enforcement injunction issued by a single federal district judge." *Id.*

"[O]ur federal system requires us to presume that state courts will in good faith at least try to honor federal law." *Texas*, 97 F.4th at 313 (citing Richard H. Fallon, Jr., et al., *Hart & Wechsler's The Federal Courts and the Federal System*, 1363–64 (7th ed. 2015); *Robb v. Connolly*, 111 U.S. 624, 637 (1884)); *see also Alexander v. S.C. State Conf. of the NAACP*, 144 S. Ct. 1221, 1236 (2024) (presumption of good faith "reflects the Federal Judiciary's due respect for the judgment of state legislators").

The district court did not give Iowa courts opportunity to consider, let alone cure, alleged constitutional defects. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

*Third*, several federal courts of appeals—including this Court—have taken the same cautious approach as the Supreme Court in *Arizona*. *See, e.g.*, *Keller*, 719 F.3d at 945 (uncertainty as to how a law will be interpreted and applied "illustrate[s] why facial challenges are disfavored and, accordingly, why Plaintiffs' facial challenge must fail.");

66

*Georgia Latino All. For Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1267–68 (11th Cir. 2012). Facial challenges are hard to win because they "'threaten to short circuit the democratic process' by preventing duly enacted laws from being implemented in constitutional ways." *NetChoice*, 144 S. Ct. at 2397 (quoting *Grange*, 552 U.S. at 451).

*Fourth*, Plaintiffs may invent scenarios where SF2340 might be applied in tension with federal law but cannot show Plaintiffs are "likely to prevail on the merits." *Rounds*, 530 F.3d at 730. "'Claims of facial invalidity often rest on speculation' about the law's coverage and its future enforcement." *NetChoice*, 144 S. Ct. at 2397 (quoting *Grange*, 552 U.S. at 450–451). But to succeed, there must be no constitutional application. *Furlow*, 52 F.4th at 400. Hypotheticals are insufficient. After all, courts "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Grange*, 552 U.S. at 449–450.

*Finally*, if this Court decides Section 4 creates an "obstacle" to the federal preemption scheme, while Section 2 is not preempted, only enforcement of Sections 4 and 6 should be enjoined. *See* Iowa Code § 4.12; *Merrill Lynch, Pierce, Fenner & Smith v. Ware*, 414 U.S. 117, 127 (1973)

(state statutes should be preempted "only to the extent necessary to protect the achievement of the aims of the [federal law]").

Allowing Defendants to enforce the rest of SF2340 would not substantially impair the legislative purpose, because it would still allow prosecution and criminal penalties under Iowa's crime of illegal reentry. *See State v. Blyth*, 226 N.W.2d 250, 261–262 (Iowa 1975).

## V. THE OTHER FACTORS WEIGH AGAINST A PRELIMINARY INJUNCTION.

Plaintiffs' failure to show there is no possible constitutional application of SF2340 is fatal to their request for injunctive relief. *See Rounds*, 530 F.3d at 732. But the other injunction factors also weigh against relief. Plaintiffs do not show why they need an injunction to prevent harm, or why their harms outweigh Iowa's.

The district court's irreparable harm finding relied on erroneous statutory interpretation and its novel reasoning that SF2340 is "likely preempted by federal law." App.Vol.II.465-467, DOJ.R.Doc.29, at 23-25. So too its balance-of-equities analysis. *Id.* Though it said it would "not treat irreparable harm as automatic," it concluded that the United States had shown irreparable harm as a matter of law. *Id.* The district court

68

thus failed to analyze Plaintiffs' allegations of harm and failed to separately consider the other injunction factors.

## A. Plaintiffs Lack Irreparable Harm.

"To succeed in demonstrating a threat of irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015).

Plaintiff United States does not face irreparable harm. SF2340 goes no further than federal criminal law and applies only after the United States determines an alien inadmissible. Because Iowa's enforcement follows the United States's status determination, Iowa cannot harm the United States.

The United States fails to establish why it must receive a pre-enforcement, preliminary injunction to avoid immediate irreparable harm. If the United States views a State's prosecution as improper, it can intervene. 28 U.S.C. § 517. It does so all the time. *See, e.g.*, *U.S. Dep't of Veterans Affs. v. Boresi*, 396 S.W.3d 356, 358 (Mo. 2013) (intervening in state workman's compensation proceedings).

69

Nor do MMJ Plaintiffs face irreparable harm. SF2340 criminalizes only existing federal crimes, and Individual Plaintiffs have lawful status. MMJ's work helps legal aliens receive benefits and maintain lawful status. SF2340 applies only to those with unlawful status, leaving MMJ's mission unharmed.

### B. An Injunction Would Irreparably Harm Iowa and the Public Interest.

"Prohibiting the State from enforcing a statute . . . would irreparably harm the State." *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020). State statutes are "presumed constitutional and all doubts are resolved in favor of constitutionality." *Arkansas Times LP v. Waldrip as Tr. of Univ. of Ark. Bd. of Trs.*, 37 F.4th 1386, 1393 (8th Cir. 2022); *see also* Iowa Code § 4.4(1).

What's more, Iowa sits at the crossroads of the cartels' human trafficking enterprise and exploitation of the illegal immigration crisis. Enforcing SF2340 to deter human trafficking and other byproducts of illegal immigration is firmly within the public interest. More, Iowa must provide services to tens of thousands of illegal aliens, and police officers must respond to crimes they suffer or commit. Those harms are especially poignant as SF2340 involves Iowa's core sovereign right to use its police

70

power to control who may enter its territory. *See Miln*, 36 U.S. (11 Pet.) at 132. An injunction would cause great harm to Iowa and the public interest.

## CONCLUSION

For these reasons, this Court should reverse the district court and vacate the preliminary injunction.

July 24, 2024

Respectfully submitted,

/s/ Eric Wessan
ERIC WESSAN
*Solicitor General*

/s/ Patrick C. Valencia
PATRICK C. VALENCIA
*Deputy Solicitor General*

/s/ Breanne A. Stoltze
BREANNE A. STOLTZE
*Assistant Solicitor General*

Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-5191
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov
breanne.stoltze@ag.iowa.gov

*Counsel for Defendants-Appellants*

71

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Local R. 25A, I certify the following:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,960 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft Office 365.

3. This brief complies with the electronic filing requirements of Local R. 25A because the text of the electronic brief is identical to the text of the paper copies and because the electronic version of this brief has been scanned for viruses and no viruses were detected.

July 24, 2024

*/s/ Eric Wessan*
ERIC WESSAN
*Solicitor General*

*Counsel for Defendants-Appellants*

72

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on July 24, 2024. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

July 24, 2024

*/s/ Eric Wessan*
ERIC WESSAN
*Solicitor General*

*Counsel for Defendants-Appellants*

Appellate Case: 24-2265    Page: 84    Date Filed: 07/25/2024 Entry ID: 5417267