In The

# United States Court of Appeals for the Eighth Circuit

IOWA MIGRANT MOVEMENT FOR JUSTICE, *ET AL.*,
*Plaintiffs-Appellees*,

v.

BRENNA BIRD, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF IOWA,
*Defendant-Appellant*,

KIMBERLY GRAHAM AND ZACH HERRMANN,
*Defendants*.

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

THE STATE OF IOWA, *ET AL.*,
*Defendants-Appellants*.

On Appeal from the United States District
Court for the Southern District of Iowa
Case Nos. 4:24-cv-161, 24-cv-162
(The Hon. Stephen H. Locher)

**BRIEF OF AMICUS CURIAE**
**AMERICAN IMMIGRATION LAWYERS ASSOCIATION**
**IN SUPPORT OF APPELLEES AND FOR AFFIRMANCE**

Alexandra Lampert, Esq.*
Brooklyn Defender Services
177 Livingston Street
Brooklyn, NY 11201
347-977-7701
alampert@bds.org

Karen C. Tumlin*
California Bar No. 234961
karen.tumlin@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 2 7280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276

Jonathan T. Weinberg*
Wayne State University Law School
471 West Palmer Street
Detroit, MI 48202
Tel: (313) 577-3933
weinberg@wayne.edu

*Attorneys for Amicus Curiae*

*Not admitted to the Eighth Circuit Bar

# TABLE OF CONTENTS

Table of Authorities ……………………………………………………………ii

ARGUMENT ................................................................................................. 1

I.     Introduction and Summary of the Argument..................................... 1

II.    Statement of Interest ....................................................................... 5

III.   S.F. 2340's plain text conflicts with federal immigration law because it criminalizes many individuals with lawful status in the United States. .................... 5

   A.   S.F. 2340 criminalizes people who have legally entered the U.S. on valid visas or via the Visa Waiver Program. ..................................................... 6

   B.   Iowa's law criminalizes asylees who were previously removed, excluded, or denied admission, despite their protection under federal law and international treaties. ........................................................................................ 8

   C.   Iowa's law criminalizes survivors of domestic violence and other victims of crime.......................................................................................... 10

   D.   Iowa's law criminalizes those who may be lawfully present after their removal orders are reversed. ....................................................... 13

IV.    Even Under Iowa's Re-Writing of S.F. 2340, the Law Still Criminalizes People Lawfully in the United States. ...................................... 16

   A.   Iowa's interpretation of S.F. 2340 would cover individuals with Temporary Protected Status and Deferred Enforced Departure—two types of temporary status given to immigrants from countries in crisis. ................... 17

   B .   People with withholding or CAT protection have extant removal orders, so on any reading their "prevailing condition" is deported. ...................... 18

   C.   Children with Special Immigrant Juvenile classification have no "federal immigration determination" granting them legal status, and so under Iowa's reading would be subject to its law. .................................................. 20

   D.   Iowa's law criminalizes those immigrants with deferred action or parole. . 23

   E.   Iowa's law criminalizes people whom the federal government allows to remain in the United States while their applications for lawful status are pending ……………………………………………………………………. 26

CONCLUSION ................................................................. 28

# TABLE OF AUTHORITIES

**Cases**

*Dada v. Mukasey*, 554 U.S. 1 (2008) .................................................................. 14
*Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006) .................................................. 9
*Johnson v. Guzman Chavez*, 594 U.S. 523 (2021) ................................................ 18, 19
*Matter of Bulnes-Nolasco*, 25 I&N Dec. 57 (BIA 2009) ............................................ 14
*Matter of X-G-W-*, 22 I&N Dec. 71 (BIA 1998) .................................................... 14
*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................ 13
*Patel v. Ashcroft*, 378 F.3d 610 (7th Cir. 2004) (per curiam) ................................... 14
*Perez-Santana v. Holder*, 731 F.3d 50 (1st Cir. 2013) ............................................ 14
*Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471 (1999) .............................. 23
*Velasquez-Castillo v. Garland*, 91 F.4th 358 (5th Cir. 2024) .................................... 9

**Statutes**

2024 Iowa Acts Senate File 2340 ............................................................... *passim*
8 U.S.C. § 1101(a)(15)(T) ............................................................................ 11
8 U.S.C. § 1101(a)(15)(U) ........................................................................... 10
8 U.S.C. § 1101(a)(27)(J) ............................................................................ 20
8 U.S.C. § 1158 ........................................................................................ 5
8 U.S.C. § 1153(b)(4) ................................................................................. 21
8 U.S.C. § 1158(a)(2)(B) ............................................................................. 18
8 U.S.C. § 1158(b)(2) ................................................................................. 18
8 U.S.C. § 1182 ..................................................................................... 5, 6
8 U.S.C. § 1182(a)(9)(A) ........................................................................ 6, 7, 21
8 U.S.C. § 1182(a)(9)(C) ......................................................................... 12, 21
8 U.S.C. § 1182(d)(13) ............................................................................... 11
8 U.S.C. § 1182(d)(14) ............................................................................... 10
8 U.S.C. § 1182(d)(3)(A)(ii) ......................................................................... 11
8 U.S.C. § 1182(d)(5) ............................................................................. 5, 25
8 U.S.C. § 1225(b)(1)(A)(ii) ......................................................................... 26
8 U.S.C. § 1229a(b)(5)(A) ............................................................................ 14
8 U.S.C. § 1229a(c)(6)-(7) ........................................................................... 14
8 U.S.C. § 1229a(c)(7)(C)(iv) ........................................................................ 12
8 U.S.C. § 1229b(b)(2) ............................................................................... 12
8 U.S.C. § 1229c ...................................................................................... 16
8 U.S.C. § 1231(b)(3) ............................................................................ 19, 26
8 U.S.C. § 1231(b)(5) ................................................................................. 18
8 U.S.C. § 1241(b)(3) ................................................................................. 18
8 U.S.C. § 1252 ........................................................................................ 13

Appellate Case: 24-2265   Page: 4   Date Filed: 08/28/2024 Entry ID: 5429342

8 U.S.C. § 1254a(a)(4) .................................................................. 27

8 U.S.C. § 1254a(a)-(c) ................................................................. 17

8 U.S.C. § 1255(h) ........................................................................ 21

8 U.S.C. § 1326(a)(2) ...................................................................... 3

Iowa Code § 902.9 ........................................................................... 1

Iowa Code ch. 718C.2 ...................................................................... 3

## Other Authorities

7 USCIS Policy Manual part M, chap. 3 .......................................... 8

Amendment S-5048 to S.F. 2340, 90th G.A., 2d Sess. (Iowa 2024), *available at* https://www.legis.iowa.gov/legislation/BillBook?ga=90&ba=S-5048 .............. 12

American Immigration Council, The Use of Parole Under Immigration Law (Apr. 8, 2024), https://www.americanimmigrationcouncil.org/research/use-parole-under-immigration-law ................................................................... 25

Congressional Research Service, Temporary Protected Status and Deferred Enforced Departure, https://sgp.fas.org/crs/homesec/RS20844.pdf (updated May 28, 2024) ...................................................................................... 18

David Bier, 126 Parole Orders over 7 Decades: A Historical Review of Immigration Parole Orders (July 17, 2023), https://www.cato.org/blog/126-parole-orders-over-7-decades-historical-review-immigration-parole-orders ..... 25

Dep't of State, *Citizens of Canada and Bermuda*, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/citizens-of-canada-and-bermuda.html (last visited Aug. 26, 2024) ....................................... 6

Dep't of State, *Visa Waiver Program*, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visa-waiver-program.html (last visited Aug. 26, 2024) ......... 6

DHS Policy Statement 065-06, "Worksite Enforcement: The Strategy to Protect the American Labor Market, the Conditions of the American Worksite, and the Dignity of the Individual" (Oct. 12, 2021) .......................................... 24

Form I-765, Instructions for Application for Employment Authorization, at 12, https://www.uscis.gov/sites/default/files/document/forms/i-765instr.pdf .......... 20

ICE Enforcement & Removal Operation Statistics, available at https://www.ice.gov/spotlight/statistics (last updated July 26, 2024) ................. 16

Migration Policy Institute, *Frequently Requested Statistics on Immigrants and Immigration in the United States* (Mar. 13, 2024), https://www.migrationpolicy.org/article/frequently-requested-statistics-immigrants-and-immigration-united-states-2024 ........................................ 9

U.S. Immigration and Customs Enforcement, FAQs: Facilitating Return for Lawfully Removed Aliens, https://www.ice.gov/remove/facilitating-return (last visited May 1, 2024) ........................................................................ 14

Appellate Case: 24-2265     Page: 5     Date Filed: 08/28/2024 Entry ID: 5429342

USCIS, Check Case Processing Times .................................................. 7

USCIS, *Policy Alert: Special Immigrant Juvenile Classification and Deferred Action*, March 7, 2022, *available at* https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf.................................. 22

USCIS Policy Manual ....................................................... 8, 10, 11, 21

USCIS Policy Manual, Volume 3, Part B - Victims of Trafficking, *available at* https://www.uscis.gov/policy-manual/volume-3-part-b-chapter-1 ..................... 11

USCIS Policy Manual, Volume 3, Part D – Violence Against Women Act, *available at* https://www.uscis.gov/policy-manual/volume-3-part-d-chapter-1 . 11

USCIS Policy Manual, Volume 6, Part J- Special Immigrant Juveniles, *available a*t https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2 ..................... 21

USCIS Policy Manual, Volume 6, Part J- Special Immigrant Juveniles, *available at* https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2 ("Grounds of inadmissibility do not apply to the adjudication of the SIJ petition.") .............. 21

USCIS Policy Manual, Volume 7, Part F- Special Immigrant Based Adjustment, *available at* https://www.uscis.gov/policy-manual/volume-7-part-f-chapter-7.. 21

USCIS, Deferred Enforced Departure, https://www.uscis.gov/humanitarian/deferred-enforced-departure (last updated July 26, 2024).................................................................. 17

USCIS, DHS Support of the Enforcement of Labor and Employment Laws, https://www.uscis.gov/working-in-the-united-states/information-for-employers-and-employees/dhs-support-of-the-enforcement-of-labor-and-employment-laws (last visited August 18, 2024) .......................................................... 23

USCIS, *Green Card Based on Special Immigrant Juvenile Classification*, *available at* https://www.uscis.gov/green-card/green-card-eligibility/green-card-based-on-special-immigrant-juvenile-classification .......................................... 22

USCIS, Keeping Families Together, https://www.uscis.gov/keepingfamiliestogether (last visited August 28, 2024). 25

USCIS, Number of Service-Wide Forms Fiscal Year to Date ................................ 7

USCIS, Number of Service-Wide Forms Fiscal Year to Date ................................ 7

USCIS, Regulatory Impact Analysis, Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements (Jan. 2024) ..................................... 7

**Regulations**

8 C.F.R. § 1003.2................................................................... 14

8 C.F.R. § 1003.23(b)(4)(ii) ....................................................... 14

8 C.F.R. § 1208.16 ................................................................ 19

8 C.F.R. § 1241.1................................................................. 16

Appellate Case: 24-2265    Page: 6    Date Filed: 08/28/2024 Entry ID: 5429342

8 C.F.R. § 1241.8 ............................................................................ 9
8 C.F.R. § 204.11 .......................................................................... 20
8 C.F.R. § 208.16 .......................................................................... 26
8 C.F.R. § 208.16(c)(2) .................................................................. 19
8 C.F.R. § 208.18 .......................................................................... 18
8 C.F.R. § 212.16 .......................................................................... 11
8 C.F.R. § 212.18 .......................................................................... 11
8 C.F.R. § 214.11(d)(9)(i) .............................................................. 11
8 C.F.R. § 214.14(c)(5)(i) .............................................................. 11
8 C.F.R. § 245.24 .......................................................................... 10
8 C.F.R. § 274a.12 ........................................................................ 20

Appellate Case: 24-2265   Page: 7   Date Filed: 08/28/2024 Entry ID: 5429342

**ARGUMENT**

## I.     Introduction and Summary of the Argument[1]

Iowa's law makes it a criminal offense for a noncitizen to enter the state of Iowa, or to be found there, if that person has ever been removed from the United States. 2024 Iowa Acts Senate File 2340 (to be codified as new Iowa Code ch. 718C (2024)) (hereinafter "S.F. 2340"), § 2. The same criminal liability is triggered if the noncitizen is found in Iowa after ever having been denied admission to or excluded from the United States. *Id.*

If a person is convicted of this offense, the trial judge must issue an order requiring the person, after any term of imprisonment, to leave this country. The person must "return to the foreign nation from which [he] entered or attempted to enter." *Id.* § 4.4. Once the order has issued, the statute specifies that failure to comply with that order is a Class C felony, punishable by up to ten years in prison. *Id.* § 5; Iowa Code § 902.9.

Iowa's law covers an exceedingly broad class of people. By its plain text, S.F. 2340 makes it a crime for a person to enter into, or remain in, the state of Iowa, if at any point in the past the federal government has removed that person from the United

---

[1]     All parties have consented to the filing of this *amicus* brief. No party's counsel authored this brief in whole or in part, nor contributed money intended to fund preparing or submitting this brief. No person other than *amicus* or its counsel contributed money intended to fund preparing or submitting this brief.

1

States or denied them admission. But, of course, immigration status is not fixed permanently in time. An individual who did not have lawful immigration status a year ago may have it today. The law does not include any provision that might exclude such a person from the statute's coverage on the basis of their current immigration status. Nothing in the law precludes its application to lawful permanent residents (LPRs or "green card" holders), or other people with a right to remain in the United States under federal immigration law at the time of state prosecution. Nothing in the law precludes its application to persons who lack valid immigration status, but who nonetheless have a federally guaranteed right to remain in this country. Nothing in the law precludes its application to persons who have bona fide applications and petitions for immigration status pending with the federal government.

In defense of the law, the State Appellants attempt to escape the statute's unconstitutionality by arguing that—contrary to its text—the law's criminal prohibition should be read to apply only to an ill-defined group of persons found in Iowa in a "prevailing condition" of "denied admission . . . or . . . excluded, deported, or removed." The term "prevailing condition" appears nowhere in the law, and it is not clear exactly who should be deemed to have such a "prevailing condition." At certain points, Appellants suggest that the people with that condition are those who have been removed or denied admission and have not subsequently received a

Appellate Case: 24-2265    Page: 9    Date Filed: 08/28/2024 Entry ID: 5429342

transforming "final determination of legal immigration status." *See* Defendants-Appellants' Consolidated Opening Br. 9, 25 [hereafter, Appellants' Br.]. There are three problems with this argument: (1) the plain text does not support Appellant's reading; (2) Appellant's interpretation does not have meaning in federal law; and (3) Appellant's interpretation fails to address the constitutional issues.

First, Iowa's reading cannot be squared with the statute's text. The statutory text straightforwardly covers any person who "enters, attempts to enter, or is at any time found in [Iowa], under any of the following circumstances: (a) The person has been denied admission to or has been excluded, deported, or removed from the United States. . . . " Iowa Code ch. 718C.2(1). The "circumstance[]" triggering criminal liability under Iowa law is a historical event: the person "has been denied admission to or has been excluded, deported, or removed from the United States." *Id*. That is to say, if a person "has been denied admission to or has been excluded, deported, or removed from the United States," he is covered and subject to potential prosecution. *Id*. The statutory text offers no hook on which to hang any other consideration. In that respect, Iowa's statute differs from federal law, which expressly exempts from liability persons who are present with the "consent[]" of the U.S. government. 8 U.S.C. § 1326(a)(2).

Perhaps by virtue of this absence of textual support, Appellants seem unable to articulate their own position consistently. They urge that S.F. 2340 merely "makes

3

it a state crime to enter Iowa after committing a federal immigration crime." Appellants' Br. 52. But this suggests that a person who crosses the U.S. border surreptitiously, a federal immigration crime, and later enters Iowa is violating Iowa law even if the person gained lawful permanent resident status in the interim— exactly the reading Appellants otherwise disclaim.

Second, Iowa's "prevailing condition" reading is incoherent as a matter of federal immigration law. The idea of a "prevailing condition of . . . deport[ation]" has no meaning under federal law: Removal in federal immigration law is an event, not a condition. Iowa seems to assume that that the immigration-law status of noncitizens in the United States is binary—each person either has legal "condition" and is properly here or has an illegal "condition" and should be immediately removed. But as the remainder of this brief will show, that assumption is incorrect.

Third, and perhaps most importantly, Iowa's reading is insufficient to save the statute's constitutionality. *Even if* S.F. 2340 is read as Iowa claims, it is still in irreconcilable conflict with federal law.

In Part III of this brief, we will set out a few of the ways in which S.F. 2340, if read in accordance with its plain meaning, conflicts with federal immigration law and policy. In Part IV, we will show that even if S.F. 2340 is read in accordance with Iowa's untenable interpretation, it is still fundamentally in conflict with federal law on multiple fronts.

Appellate Case: 24-2265   Page: 11   Date Filed: 08/28/2024 Entry ID: 5429342

## II.     Statement of Interest

The American Immigration Lawyers Association (AILA), founded in 1946, is a national, non-partisan, non-profit association with more than 16,000 members throughout the United States and abroad, including lawyers and law school professors who practice and teach in the field of immigration and nationality law. AILA seeks to promote justice, advocate for fair and reasonable immigration law and policy, and advance the quality of immigration and nationality law and practice. AILA's members practice regularly before the Department of Homeland Security, immigration courts and the Board of Immigration Appeals, as well as before the U.S. Courts of Appeals and the U.S. Supreme Court.

## III.    S.F. 2340's plain text conflicts with federal immigration law because it criminalizes many individuals with lawful status in the United States.

There are a variety of routes through which a noncitizen can legally enter and be present in the United States. The one most commonly taken is entry on a valid visa—either an "immigrant" visa, leading to permanent residence and a green card, or a temporary "nonimmigrant" visa. Alternatively, residents of 41 countries can enter the United States without a visa pursuant to the Visa Waiver Program (VWP). In addition, a person might enter seeking asylum, *see* 8 U.S.C. § 1158, or with immigration parole under 8 U.S.C. § 1182(d)(5) (authorizing the Department of Homeland Security (DHS) to "parole [a person] into the United States . . . for urgent humanitarian reasons"). Noncitizens in each of these statuses could be subject to the

Iowa criminal law if they had previously been removed, excluded, or denied admission and later returned or were found in the state.

### A. S.F. 2340 criminalizes people who have legally entered the U.S. on valid visas or via the Visa Waiver Program.

The Visa Waiver Program is an agreement between the United States and several countries for reciprocal waiver of visa requirements. Under the program, nationals of 41 countries can enter the United States for up to 90 days without a visa. *See* Dep't of State, *Visa Waiver Program*, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visa-waiver-program.html (last visited Aug. 26, 2024). Citizens of Canada and Bermuda can enter without a visa for longer periods. *See* Dep't of State, *Citizens of Canada and Bermuda*, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/citizens-of-canada-and-bermuda.html (last visited Aug. 26, 2024). For a person to obtain a visa or enter via the VWP, the person must not be "inadmissible," as that term is defined in 8 U.S.C. § 1182. If a person is removed from the United States, that will render them temporarily inadmissible for a five- or ten-year period. *Id.* § 1182(a)(9)(A)(i)-(ii).[2] That inadmissibility, though, is only temporary and expires after a period of years. In addition, DHS may waive even that temporary

---

[2]     A person who has been removed multiple times is inadmissible for twenty years, while a person who has been removed after conviction for an aggravated felony is inadmissible indefinitely. 8 U.S.C. § 1182(a)(9)(A)(i).

6

inadmissibility at any time. *Id.* § 1182(a)(9)(A)(iii).

In other words, a noncitizen who has once been removed from the United States—and therefore falls within the plain language of S.F. 2340—has multiple avenues to return to the United States legally. Thousands of people every year get waivers of their § 1182(a)(9)(A)(iii) inadmissibility.[3] Other people simply wait out their five- or ten-year periods of ineligibility. Anyone in either category may return to the United States with a valid visa or via the Visa Waiver Program. If so, that person will have valid status and be legally in the United States. Indeed, the person may be a lawful permanent resident, like the individual plaintiffs in this case, Ms. Doe and Ms. Roe.

People who were once removed from the United States, but who waited out their period of ineligibility and then returned via the Visa Waiver Program, will not have had any contact with a U.S. immigration official except at their port of entry, where their encounter may be brief and ministerial. Notwithstanding that absence of

---

[3]     About 8,200 waiver applications—known as "I-212 waivers"—are filed every year. *See* USCIS, Regulatory Impact Analysis, Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements (Jan. 2024), https://downloads.regulations.gov/ USCIS-2021-0010-8179/content.pdf, at 120. In FY2023, USCIS granted 72% of the applications for which it reached a decision in a category of waivers that includes the I-212. *See* USCIS, Number of Service-Wide Forms Fiscal Year to Date, https://www.uscis.gov/sites/default/files/document/forms/quarterly_all_forms_fy20 23_q4.pdf.

7

formal process, they will have legal status. But under the plain text of S.F. 2340, they will be subject to arrest. S.F. 2340 empowers the state of Iowa to arrest them, imprison them, and order them to leave the United States. S.F. 2340 gives Iowa prosecutors and judges the power to criminalize and expel from this country persons who, in the view of the U.S. government, are suitable to return here and become part of our community.

### B. Iowa's law criminalizes asylees who were previously removed, excluded, or denied admission, despite their protection under federal law and international treaties.

Similarly, the class of people subject to S.F. 2340's prohibition will include many people who have been granted asylum in the United States. U.S. law provides that a person present in, or seeking entry into, the United States who is "unable or unwilling to return to [his home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," may apply for and be granted asylum in the United States. *See* 8 U.S.C. §§ 1101(a)(42), 1158.

The fact that an asylum applicant was once removed from, excluded from, or denied admission to, the United States is not relevant to, and plays no role in, the asylum process. *See* USCIS Policy Manual, Volume 7, part M, chap. 3, https://www.uscis.gov/policy-manual/volume-7-part-m-chapter-3 ("[A]n asylee is not subject to admissibility grounds at the time of the asylum grant."). So if a

8

noncitizen arrives at a U.S. port of entry and applies for asylum, the fact that he may have previously been removed from the United States is immaterial.[4] In FY 2022, this country granted asylum to more than 35,000 people. *See* Migration Policy Institute, *Frequently Requested Statistics on Immigrants and Immigration in the United States* (Mar. 13, 2024), https://www.migrationpolicy.org/article/frequently-requested-statistics-immigrants-and-immigration-united-states-2024. Some number of those 35,000 people were previously removed from the United States. Under S.F. 2340, the members of that group who live in Iowa (or who enter it) are now subject to arrest, detention, and prosecution. Iowa's law, in other words, would contradict the federal government's decision—in accordance with its international-law obligations—to protect individuals against return to countries where they face persecution.

---

[4] If a person reenters the United States illegally after having been removed, DHS may choose to reinstate the prior removal order, in which case the person is only eligible for withholding of removal and protection under the Convention Against Torture, but not asylum. *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 n.4 (2006). But reinstatement is discretionary on DHS's part, and in any event is not appropriate when a person, once removed, simply approaches a port of entry seeking asylum. Indeed, even some people who are arrested in the interior of the U.S. after having been removed and having made a subsequent illegal reentry may be exempt from reinstatement, allowing them to apply for asylum. See *Velasquez-Castillo v. Garland*, 91 F.4th 358 (5th Cir. 2024) (unaccompanied minors); 8 C.F.R. § 1241.8(d) (applicants for benefits under the Haitian Refugee Fairness Act or the Nicaraguan Adjustment and Central American Relief Act).

Appellate Case: 24-2265    Page: 16    Date Filed: 08/28/2024 Entry ID: 5429342

**C.    Iowa's law criminalizes survivors of domestic violence and other victims of crime.**

Iowa's law also criminalizes victims of crime, including domestic violence survivors. Individuals who have been the victims of qualifying criminal activity in the United States and who have been helpful to law enforcement may apply for U nonimmigrant status, and their family members may apply for related statuses. *See* 8 U.S.C. § 1101(a)(15)(U). Congress created the U nonimmigrant status to strengthen law enforcement's ability to investigate and prosecute serious crimes, by encouraging victims of criminal activity to cooperate with law enforcement without fear due to their own lack of immigration status. *See* USCIS Policy Manual, Volume 3, Part C- Victims of Crimes, *available at* https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-1. After four years, a person who receives U nonimmigrant status may apply for lawful permanent residence. *Id.*

A prior removal order or denial of admission is not a bar to receiving U nonimmigrant status. The federal immigration agency—U.S. Citizenship and Immigration Services ("USCIS"—has broad discretion to waive nearly all grounds of inadmissibility for U applicants, including those that apply to individuals who are unlawfully present in the United States or who reentered after immigration violations. *See* 8 U.S.C. § 1182(d)(14); 8 C.F.R. § 212.17(b)(1) (discretion to waive

10

inadmissibility grounds if "it is in the public or national interest").[5] Under the regulations, a prior removal order issued by DHS is automatically cancelled upon approval of the U nonimmigrant petition. *See* 8 C.F.R. § 214.14(c)(5)(i).

Similarly, Congress created the T nonimmigrant status to protect victims of severe human trafficking. *See* 8 U.S.C. § 1101(a)(15)(T) (defining T nonimmigrant status requirements); USCIS Policy Manual, Volume 3, Part B - Victims of Trafficking, *available at* https://www.uscis.gov/policy-manual/volume-3-part-b-chapter-1 (last updated July 18, 2024). A person with T nonimmigrant status may also later apply for lawful permanent residence. *Id.* The inadmissibility ground of unlawful presence can be waived where trafficking was at least one central reason for the unlawful presence, and inadmissibility grounds related to unlawful presence after a prior removal or immigration violations can also be waived if they were caused by or incident to the trafficking victimization, and if it is in the national interest to grant the waiver. *Id.*; *see also* 8 U.S.C. § 1182(d)(3)(A)(ii) & (d)(13); 8 C.F.R. § 212.16; 8 C.F.R. § 212.18. As with U nonimmigrant status, approval of a T nonimmigrant petition automatically cancels a prior removal order. *See* 8 C.F.R. § 214.11(d)(9)(i).

---

[5] The only inadmissibility ground that cannot be waived for U nonimmigrant status or adjustment of status to lawful permanent residence is 8 U.S.C. § 1182(a)(3)(E), applicable to participants in "Nazi persecution, genocide, or the commission of any act of torture or extrajudicial killing." 8 C.F.R. § 245.24(b)(11).

11

In addition to U or T status, many survivors of domestic violence may be eligible for special protections under the Violence Against Women Act (VAWA). *See* USCIS Policy Manual, Volume 3, Part D – Violence Against Women Act, *available at* https://www.uscis.gov/policy-manual/volume-3-part-d-chapter-1. With the passage of VAWA in 1994, Congress created a process by which victims of abuse could "self-petition" for immigration status without relying on an abusive family member to file the petition — a process that abusive spouses could use to further abuse or threaten the noncitizen spouses. *Id.*

A VAWA applicant is not barred from receiving VAWA status if she was previously removed. She can seek to waive the inadmissibility grounds that apply to unlawful presence after a removal if she can show a connection between the abuse and the removal or departure from the United States, or the reentry. *See* 8 U.S.C. § 1182(a)(9)(C)(iii) (specific waiver available to VAWA applicants). An immigration judge can also grant special-rule cancellation of removal under VAWA, and thus lawful permanent residence, to a victim of abuse if their removal would result in "extreme hardship" to the victim or their child or parent. *See* 8 U.S.C. §§ 1229a(c)(7)(C)(iv), 1229b(b)(2).

Some Iowa legislators proposed an amendment to S.F. 2340 to exempt survivors of domestic violence from prosecution. Their amendment would have permitted the abatement of prosecution if the person had been granted VAWA or the

federal government was in the process of determining the person's VAWA eligibility. *See* Amendment S-5048 to S.F. 2340, 90th G.A., 2d Sess. (Iowa 2024), *available at* https://www.legis.iowa.gov/legislation/BillBook?ga=90&ba=S-5048. The Iowa legislature rejected that amendment. *Id.*

In sum, victims of crime including domestic violence survivors, who have previously been denied admission to the United States or removed, can still be eligible for and receive lawful status—whether U, T, or VAWA—and may later become lawful permanent residents. Yet Iowa's law subjects them all to criminalization, thwarting Congress's intention to protect victims of crime and strengthen law enforcement's ability to combat crime.

**D.     Iowa's law criminalizes those who may be lawfully present after their removal orders are reversed.**

Another category of individuals who may be present in Iowa with lawful status, despite a prior removal, includes those whose removal orders have been overturned. Under federal law there are a variety of ways in which a prior removal order could be rescinded, thereby restoring someone to their prior lawful status or opening up their ability to secure lawful status. Individuals can seek federal court review of their final order of removal by filing a petition for review with the appropriate federal circuit court. 8 U.S.C. § 1252(a); (b)(2). Removal during this process is not automatically stayed. Instead, one must seek and be granted a stay of removal, or an individual can continue to litigate their petition after departure from

13

the United States. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). If a circuit court grants an individual's petition for review, they may be able to lawfully return to the United States either because it restores them to a prior lawful permanent resident status, or because the federal government agrees to facilitate their return to the United States for further immigration proceedings. *See generally* U.S. Immigration and Customs Enforcement, FAQs: Facilitating Return for Lawfully Removed Aliens, https://www.ice.gov/remove/facilitating-return (last visited May 1, 2024). Iowa's law criminalizes even these individuals solely because of the prior removal, ignoring the judgment of the U.S. Court of Appeals that lawfully permitted the individual's return.

A removal order could also be overturned through filing a motion to reopen or reconsider with the immigration courts or the Board of Immigration Appeals. *See* 8 U.S.C. § 1229a(c)(6)-(7); 8 C.F.R. § 1003.2; *Matter of Bulnes-Nolasco*, 25 I&N Dec. 57 (BIA 2009). The Supreme Court has explained that a motion to reopen a removal order is an "important safeguard" intended "to ensure a proper and lawful disposition" of immigration proceedings. *Dada v. Mukasey*, 554 U.S. 1, 18 (2008). An individual could reopen their removal order because their failure to attend an immigration court hearing was due to lack of notice of the hearing or because they were in federal custody, 8 U.S.C. § 1229a(b)(5)(A), (C); 8 C.F.R. § 1003.23(b)(4)(ii); because the underlying criminal conviction that served the basis

for the deportation order was overturned, *see, e.g.*, *Perez-Santana v. Holder*, 731 F.3d 50 (1st Cir. 2013); because immigration law has changed, *see, e.g.*, *Matter of X-G-W-*, 22 I&N Dec. 71 (BIA 1998); because conditions have worsened conditions in a noncitizen's home country and they have a new fear-based claim, *see, e.g., Patel v. Ashcroft*, 378 F.3d 610, 612 (7th Cir. 2004) (per curiam); or for other reasons.

Once an underlying removal order has been reopened, an individual would then be eligible to seek lawful status. In each of these circumstances, an individual could be lawfully in Iowa today, despite having previously been removed from the United States, but still face criminal prosecution and an order from Iowa to return to another country—possibly the very one in which they faced persecution.

It's worth noting that it's often difficult to determine whether or not someone has been previously removed pursuant to a final removal order, as well as the current status of a removal order—particularly for a lay person or a state police officer not familiar with the complexities of immigration law. Such an assessment often requires obtaining a complete immigration file, sometimes from multiple immigration agencies, which can take significant time.[6] One must then have the capacity to

---

[6]    *See, e.g.,* Immigrant Legal Resource Center, A Step-By-Step Guide to Completing FOIA Requests with DHS, *available at* https://www.ilrc.org/sites/default/files/resources/ a_step_by_step_guide_to_completing_foia_requests_with_dhs.pdf (explaining that immigration files can be located across several agencies–USCIS, CBP, ICE, and OBIM, as well as the Department of State (for passport records) and the Department of Justice (for immigration court records)).

15

recognize the legally relevant documents that constitute a final removal order, any documents indicating whether the removal order has been effectuated, and any documents indicating whether a motion to reopen has been filed or granted. For example, even if an immigration court issues a removal order, the order may not be final given pending appeals to the Board of Immigration Appeals or certification to the Attorney General for further review. *See* 8 C.F.R. § 1241.1. An individual may also have departed the United States pursuant to processes that to a lay person appear to be a removal, but are not, such as "voluntary departure," 8 U.S.C. § 1229c, or "voluntary return." *See* ICE Enforcement & Removal Operation Statistics, available at https://www.ice.gov/spotlight/statistics (last updated July 26, 2024) (defining voluntary).

## IV.    Even Under Iowa's Re-Writing of S.F. 2340, the Law Still Criminalizes People Lawfully in the United States.

Several categories of individuals who are authorized to live and work in the United States by federal law—and indeed, have protection from deportation under international treaties—nonetheless fall within even Iowa's revised version of the statute. Appellants seem to argue that the statute should be read to apply only to people who were excluded, deported, or denied admission *and* whose status was not later legalized by some "federal immigration determination": specifically, "a final determination of legal immigration status." Appellants' Br. 9, *see also id.* 9-10, 27, 31-34. But the law, even if read that way, would still profoundly interfere

16

with federal immigration statuses, federal immigration policy, and the administration of federal immigration law. There are a number of immigration postures that confer some federal protection to stay in the United States either without a "final determination of legal status" or pending a final determination. Nevertheless, the Iowa law criminalizes the presence of some of those noncitizens, running headlong into federal immigration law.

**A.** **Iowa's interpretation of S.F. 2340 would cover individuals with Temporary Protected Status and Deferred Enforced Departure—two types of temporary status given to immigrants from countries in crisis.**

Under Iowa's reinterpretation of S.F. 2340, the law would still criminalize some immigrants legally allowed to stay in the United States under Temporary Protected Status (TPS) or Deferred Enforced Departure (DED). Both of those are temporary, non-final determinations of status. TPS is a type of status given to immigrants from certain countries facing civil war or armed conflict, environmental disasters, or other "extraordinary and temporary conditions." 8 U.S.C. § 1254a(a)-(c). Once a country is designated for TPS by the Secretary of Homeland Security, nationals of that country residing in the United States can apply for TPS, and are protected from removal for the period of designation. *Id.*

Similarly, Deferred Enforced Departure (DED) is a temporary benefit granted to foreign nationals from certain designated countries in crisis. Crucially, an individual need not even apply for DED; it is conferred on noncitizens

17

automatically without application or adjudication. *See* USCIS, Deferred Enforced Departure, https://www.uscis.gov/humanitarian/deferred-enforced-departure (last updated July 26, 2024). An Iowa police officer would have to be an immigration expert to know whether a noncitizen in the state was protected by DED.

Even though noncitizens with TPS or DED cannot be removed from the United States, these statuses are designed to be temporary and not a "final determination of status." Thus, under Iowa's interpretation of S.F. 2340, anyone with TPS or DED who was previously excluded, deported, or removed would be subject to the law's criminal penalties. In Iowa, more than 2,000 people have either TPS or DED. *See* Congressional Research Service, Temporary Protected Status and Deferred Enforced Departure, https://sgp.fas.org/crs/homesec/RS20844.pdf (updated May 28, 2024). Thus, even under Iowa's rewrite of the statute's plain language of S.F. 2340, a subset this class of immigrants could be subject to arrest, detention, and prosecution if they had formerly been removed, excluded, or denied admission.

### B . People with withholding or CAT protection have extant removal orders, so on any reading their "prevailing condition" is deported.

An individual who is not eligible for asylum but fears persecution or torture if they were to be deported is eligible to apply for withholding of removal or relief under the Convention Against Torture (CAT). *See* 8 U.S.C. § 1241(b)(3); 8 C.F.R.

§ 208.18; *Johnson v. Guzman Chavez*, 594 U.S. 523, 535–36 (2021).[7] These applications are not barred by a prior removal order. In fact, they are the explicitly available protections for someone who has previously been removed and then illegally reenters the United States. *Guzman Chavez*, 594 U.S. at 535–36 (describing how an individual with a reinstated removal order can enter "withholding-only" immigration proceedings upon a showing of "reasonable fear" of persecution or torture).[8]

Where an individual receives a grant of withholding of removal or CAT protection, this does not undo their underlying removal order: "The removal order is not vacated or otherwise set aside. It remains in full force." *Guzman Chavez*, 594 U.S. at 536. A withholding or CAT grantee may not be deported to the country where they face persecution but can later be removed if conditions in that country change. Moreover, DHS has the option of seeking their removal to a third country. *See id.* at 537. Even under Iowa's strained reading of the statute, then, such an individual's "prevailing condition" would be that of "removed": they had previously been

---

[7] There are a variety of reasons that an individual may not be eligible for asylum, including applying for asylum more than one year after entry to the United States, having been convicted of certain disqualifying criminal offenses, or because DHS has reinstated a prior removal order. *See* 8 U.S.C. §§ 1158(a)(2)(B), 1158(b)(2), 1231(b)(5).

[8] An individual who has obtained withholding of removal or CAT relief has demonstrated that it is more likely than not they would be persecuted or tortured if removed. *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16; 8 C.F.R. § 208.16(c)(2).

19

removed and now face the prospect of future removal.

But individuals living in the United States with a grant of withholding of removal or CAT are protected from deportation to their countries of origin under federal law. Their removal would violate U.S. obligations under international treaty. They are eligible to obtain federal work authorization while living in the United States.[9] Iowa would criminalize their presence and try to force their removal, possibly to the very countries that the immigration courts have found they risk persecution or torture, in stark violation of our obligations under international treaties.

### C. Children with Special Immigrant Juvenile classification have no "federal immigration determination" granting them legal status, and so under Iowa's reading would be subject to its law.

Iowa's attempted revision of its law would also still subject vulnerable juveniles to criminalization. Children who have been granted "Special Immigrant Juvenile" (SIJ) classification have been recognized by Congress as deserving of special protections, but do not yet have a lawful federal immigration status or "federal immigration determination."

Designation as a Special Immigrant Juvenile is a type of immigration classification designed to protect vulnerable juveniles present in the United States

---

[9] *See* 8 C.F.R. § 274a.12(a)(10), (c)(18); Form I-765, Instructions for Application for Employment Authorization, at 12, https://www.uscis.gov/sites/default/files/document/forms/i-765instr.pdf.

who cannot be reunited with a parent due to abuse, neglect, or abandonment, and whose best interest is not served by return to their country of nationality. *See* 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11. In order to obtain SIJ classification, a juvenile must first seek what is known as a predicate order from a state court, which makes findings under state law regarding dependency and custody of the juvenile, as well as findings that reunification with a parent is not possible due to abuse, neglect, or abandonment, and that return to the juvenile's country of nationality or last habitual residence is not in their best interest. *See generally* USCIS Policy Manual, Volume 6, Part J- Special Immigrant Juveniles, *available a*t https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2 (last updated July 18, 2024).

Once a juvenile obtains SIJ classification, they still do not have legal immigration status. They can eventually apply to adjust status to that of a lawful permanent resident after waiting for an available visa number. *See* 8 U.S.C. § 1153(b)(4). The inadmissibility grounds that may be triggered by unlawful reentry are irrelevant to initially obtaining SIJ classification, [10] and at the time of the

---

[10] USCIS Policy Manual, Volume 6, Part J- Special Immigrant Juveniles, *available at* https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2 (last updated July 18, 2024) ("Grounds of inadmissibility do not apply to the adjudication of the SIJ petition.").

Appellate Case: 24-2265     Page: 28     Date Filed: 08/28/2024 Entry ID: 5429342

application to adjust status, are waivable.[11] *See* 8 U.S.C. § 1255(h) (inadmissibility grounds applicable to SIJ are waivable "for humanitarian purposes, family unity, or when it is otherwise in the public interest").

It may take years, though, before an SIJ grantee can adjust status.[12] In the meantime, they are generally able (via deferred action, *see* Part IV.D, *infra)* to receive federal work authorization. *See* USCIS, *Policy Alert: Special Immigrant Juvenile Classification and Deferred Action*, March 7, 2022, *available at* https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf.

A juvenile who has obtained SIJ classification may well have been removed from the United States at some point in the past and reentered unlawfully. Iowa's

---

[11] USCIS Policy Manual, Volume 7, Part F- Special Immigrant Based Adjustment, *available at* https://www.uscis.gov/policy-manual/volume-7-part-f-chapter-7 (last updated July 18, 2024) (explaining that inadmissibility under § 1182(a)(9)(A) for "Certain Aliens Previously Removed" and § 1182(a)(9)(C) for "Aliens Unlawfully Present After Previous Immigration Violations" is waivable).

[12] Although the SIJ petition must be submitted before the juvenile turns 21, eligibility for SIJ and later for adjustment of status will continue even after the juvenile has turned 21, which is particularly common given long visa backlogs and processing delays. USCIS, *Green Card Based on Special Immigrant Juvenile Classification*, *available at* https://www.uscis.gov/green-card/green-card-eligibility/green-card-based-on-special-immigrant-juvenile-classification ("There is no age limit to apply for a Green Card as an SIJ. If you were under 21 on the date you properly filed your Form I-360, we will not deny your SIJ based Form I-485 based on your current age, even if you are older than 21 when you file your Form I-485 or when we adjudicate it.").

law would criminalize these vulnerable juveniles, despite the fact they are following the processes Congress established to provide a pathway to lawful status and protect them. What's more, Iowa would order their deportation despite an Iowa state court's having already found, in making the predicate SIJ findings, that removal is not in their best interest.

### D. Iowa's law criminalizes those immigrants with deferred action or parole.

Iowa's law would criminalize the presence of other individuals whom the federal government has deemed in the national interest to remain in the United States. This class of individuals includes recipients of Deferred Action for Childhood Arrivals (DACA), people cooperating in investigations of labor abuses, and survivors of domestic violence and trafficking. Any of these individuals may have previously been deported or denied admission. Federal law and policy nonetheless authorizes them to stay.

Federal immigration law authorizes executive branch agencies to issue deferred action to individuals who lack legal immigration status. *See generally Reno v. Am.-Arab Anti-Discrim. Comm*., 525 U.S. 471, 483–84 (1999) (describing deferred action). Deferred action is generally understood as a prosecutorial discretion tool that protects people against removal for a designated period of time. *See* USCIS, DHS Support of the Enforcement of Labor and Employment Laws, https://www.uscis.gov/working-in-the-united-states/information-for-employers-

23

and-employees/dhs-support-of-the-enforcement-of-labor-and-employment-laws

(last visited August 18, 2024).

In recent years, the federal government has extended deferred action to categories of individuals including those who entered the United States as a child and have remained (DACA), noncitizens significantly impacted by Hurricane Katrina, and survivors of violence and parental maltreatment who have approved SIJ applications, as discussed above in Part IV.C. Most recently, the Department of Homeland Security provided the possibility of deferred action to workers involved in labor investigations, on the understanding that their protection from deportation would assist in the protection of all workers, including US citizens. *See* DHS Policy Statement 065-06, "Worksite Enforcement: The Strategy to Protect the American Labor Market, the Conditions of the American Worksite, and the Dignity of the Individual" (Oct. 12, 2021), *available at* https://www.dhs.gov/news/2021/10/12/dhs-releases-worksite-enforcement-strategy-protect-american-labor-market-workers.

In all these circumstances, the federal government will review and consider the individual's previous removals and other immigration history in deciding whether to grant deferred action. Where deferred action is granted, that means that – even though the person in question has no legal status -- the federal government has concluded that their presence in the United States is in the public interest. That

is so even though the person may previously have been removed from the United States. Iowa's law would countermand those determinations.

Similarly, Iowa's law would criminalize broad classes of people who have legally entered the United States on immigration parole. The Immigration and Nationality Act authorizes DHS, for humanitarian reasons or significant public benefit, to allow a noncitizen to enter and remain in the United States on immigration parole. 8 U.S.C. § 1182(d)(5). Presidents have enacted categorical parole orders, for the benefit of classes of citizens, well over 100 times since 1952. *See* David Bier, 126 Parole Orders over 7 Decades: A Historical Review of Immigration Parole Orders (July 17, 2023), https://www.cato.org/blog/126-parole-orders-over-7-decades-historical-review-immigration-parole-orders. The Biden Administration has granted immigration parole, typically for two-year periods, to more than 600,000 persons facing humanitarian crises in Cuba, Nicaragua, Venezuela, Haiti, Colombia, El Salvador, Guatemala, and Honduras, as well as Ukraine and Afghanistan. *See id*. A new parole program for noncitizen spouses of U.S. citizens and noncitizen stepchildren of U.S. citizens opened on August 19, 2024. *See* USCIS, Keeping Families Together, https://www.uscis.gov/keepingfamiliestogether (last visited August 28, 2024). This program will benefit applicants already in the United States and present without a prior lawful entry, including individuals who have been previously removed.

Persons with parole do not have formal immigration status. *See* American Immigration Council, The Use of Parole Under Immigration Law (Apr. 8, 2024), https://www.americanimmigrationcouncil.org/research/use-parole-under-immigration-law. Yet the federal government permits them to be here. They can apply for federal work authorization. That's so even though they may well have been denied admission or removed from the United States at some time in the past. Iowa's law would criminalize such people, countermanding the Federal government's parole authority.

### E. Iowa's law criminalizes people whom the federal government allows to remain in the United States while their applications for lawful status are pending.

Under immigration law, applicants for many types of status are permitted to remain in the United States while the appropriate federal agency reaches its decision. Some of these applicants are also in removal proceedings before the immigration court. The applicants are known to the federal government, which may ultimately make removal determinations. Iowa's law thwarts fair adjudication of those applications and interferes with the federal government's legal obligations.

In many circumstances, applicants awaiting final decisions are protected against removal to the same extent as status holders. Asylum law, for example, establishes a process for evaluation and final determination of an applicant's claim. *See* 8 U.S.C. § 1158. By law, the federal government cannot deport an individual

Appellate Case: 24-2265    Page: 33    Date Filed: 08/28/2024 Entry ID: 5429342

until it is clear that they will not face likely persecution or torture in their home country. *Id.*; *see also* 8 U.S.C. § 1231(b)(3) (withholding of removal applicants); 8 C.F.R. § 208.16 (Convention Against Torture applicants); 8 U.S.C. § 1225(b)(1)(A)(ii) (process to assess risk of persecution and torture within expedited removal provisions). Congress also ensured protection against premature removal for TPS applicants. 8 U.S.C. § 1254a(a)(4) (guaranteeing stay of removal for applicants showing prima facie eligibility). Iowa's law would frustrate the federal government's obligations toward these noncitizens. The same would be true, say, if Iowa were to arrest and deport a juvenile whom the federal government was considering for SIJ classification, or a trafficking victim whom the federal government was considering for a T visa.

Appellants suggest that Iowa state judges could consider issuing discretionary stays in the criminal prosecutions in these circumstances. Appellants' Br. 9, 31-33. But those potential acts of judicial discretion fail to guarantee that noncitizen applicants would have the opportunity to exercise their rights under federal law. Iowa's law empowers it to short-circuit established federal procedures by arresting, detaining, and deporting people before the federal government can complete its own outcome determinations.

## CONCLUSION

Iowa's attempt to reinterpret its statute to pass constitutional muster neither draws coherent lines delimiting who is covered, nor avoids direct conflict between state prosecution and federal immigration law. Instead, it criminalizes large groups of immigrants to whom the federal government has granted immigration status or protection from removal. For these reasons, amicus urges the Court to affirm the district court's preliminary injunction.

DATED: August 26, 2024

Alexandra Lampert, Esq.*
Brooklyn Defender Services
177 Livingston Street
Brooklyn, NY 11201
347-977-7701
alampert@bds.org

Respectfully submitted,

Karen C. Tumlin*
California Bar No. 234961
karen.tumlin@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276

*/s/ Jonathan T. Weinberg*
Jonathan T. Weinberg*
Wayne State University Law School
471 West Palmer Street
Detroit, MI 48202
Tel: (313) 577-3933
weinberg@wayne.edu

*Attorneys for Amicus Curiae*

*Not admitted to the Eighth Circuit Bar

# CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Jonathan T. Weinberg*_____
Attorney for Amicus
American Immigration Lawyers Association

# CERTIFICATE OF COMPLIANCE

1.   This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5). This document contains 6,423 words.

2.   This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using MS Word Version 11 in **Times New Roman Size 14**.

3. Pursuant to 8th Cir. R. 25, I certify that the brief has been scanned for viruses and is virus free.

DATE: August 26, 2024     *s/ Jonathan T. Weinberg*_____
Attorney for Amicus
American Immigration Lawyers Association

# CERTIFICATE OF CONSENT

Pursuant to Fed. R. App. P. 29(a)(2), I certify that counsel for Appellants and counsel for Appellees consented to the filing of this brief.

DATE: August 26, 2024     *s/ Jonathan T. Weinberg*_____
Attorney for Amicus
American Immigration Lawyers Association

1