Nos. 24-2263, 24-2265

IN THE
UNITED STATES COURT OF APPEALS FOR THE
EIGHTH CIRCUIT

IOWA MIGRANT MOVEMENT FOR JUSTICE; JANE DOE; and ELIZABETH ROE,

*Plaintiffs-Appellees,*

v.

BRENNA BIRD, in her official capacity as Attorney General of Iowa;
KIMBERLY GRAHAM, in her official capacity as Polk County Attorney; and
ZACH HERRMANN, in his official capacity as Clayton County Attorney,

*Defendants-Appellants.*

—————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

STATE OF IOWA; KIM REYNOLDS, in her official capacity as Governor of Iowa;
BRENNA BIRD, in her official capacity as Attorney General of Iowa;
IOWA DEPARTMENT OF PUBLIC SAFETY; and STEPHAN K. BAYENS, in his official
capacity as Commissioner of the Iowa Department of Public Safety,

*Defendants-Appellants,*

—————

On Appeal from the United States District Court for the Southern District of Iowa
Nos. 4:24-cv-00162, 4:24-cv-00161 (The Honorable Stephen H. Locher)
—————

**CONSOLIDATED BRIEF OF ASISTA IMMIGRATION ASSISTANCE,
ASIAN PACIFIC INSTITUTE ON GENDER-BASED VIOLENCE,
ESPERANZA UNITED, AND TAHIRIH JUSTICE CENTER
AS AMICI CURIÆ IN SUPPORT OF PLAINTIFFS-APPELLEES
FOR AFFIRMANCE**

———————

MADELINE COBURN
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, Rhode Island 02903-1345
(401) 454-1000

CHRISTOPHER M. MASON
*Counsel of Record
NIXON PEABODY LLP
Tower 46
55 West 46th Street
New York, New York 10036
(212) 940-3000

ROSS MACPHERSON
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109-2835
(617) 345-1000

SEARA E. SULLIVAN
NIXON PEABODY LLP
One Embarcadero Center, 32nd Floor
San Francisco, California 94111
(415) 984-8200

August 26, 2024

*Counsel for Amici Curiæ*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................... i

TABLE OF AUTHORITIES ................................................ iii

STATEMENT PURSUANT TO
FEDERAL RULE OF APPELLATE
PROCEDURE 29(a)(4)(E) .......................................... ix

STATEMENT OF INTEREST
OF AMICI CURIÆ ...................................................... ix

CORPORATE DISCLOSURE
STATEMENT ............................................................. x

ARGUMENT .................................................................. 1

I.   FEDERAL SUPREMACY IN
     MATTERS OF IMMIGRATION
     GENERALLY. ............................................................. 4

II.  THE SPECIAL SOLICITUDE
     OF FEDERAL IMMIGRATION
     LAW AND POLICY TOWARDS
     NONCITIZEN SURVIVORS OF
     CRIME OR VIOLENCE. ............................................. 5

     A.   Examples of Federal
          Immigration Law
          Protecting Survivors
          with which SF 2340
          Would Conflict. ................................................ 6

          1.   SF 2340 would conflict
               with federal immigration
               law encouraging
               cooperation with law
               enforcement. ............................................. 6

        2.     SF 2340 would conflict with federal immigration law on waiver of involvement with prior criminal activity.................................................. 16

    B.     Examples of Federal Immigration Policy which SF 2340 Would Undermine................................................. 20

III.   TWO MORE REAL-WORLD EXAMPLES OF THE APPLICATION OF FEDERAL IMMIGRATION LAW AND POLICY THAT SF 2340 WOULD PRECLUDE.................................................. 22

    A.     A Pending U-Visa: Roxanne's Situation ............................................. 22

    B.     A T-Visa and Lawful Permanent Residency: Jenny's Situation ................................................. 23

IV.   THE DISTRICT COURT'S DECISION CANNOT BE AVOIDED BY TRYING TO REINTERPRET SF 2340. ............................................. 24

CONCLUSION ..................................................................... 27

Appellate Case: 24-2265    Page: 4    Date Filed: 09/03/2024    Entry ID: 5431043

TABLE OF AUTHORITIES

**Cases**                                                    **Pages**

*Arizona v. United States*,
    567 U.S. 387 (2012)............................................................ 4, 5, 6, 20

*Chy Lung v. Freeman*,
    92 U.S. 275 (1875)............................................................. 4

*Cipollone v. Liggett Grp., Inc.*,
    505 U.S. 504 (1992)............................................................ 26

*Elkins v. Moreno*,
    435 U.S. 647 (1978)............................................................ 20

*Fiallo v. Bell*,
    430 U.S. 787 (1977)............................................................ 4

*Galvan v. Press*,
    347 U.S. 522 (1954)............................................................ 4

*In re A-L-*
    (U.S. Citizenship & Imm.
    Servs. Admin. Appeals Office
    Jan. 12, 2017) (unpub.) ....................................................... 13

*In re Hranka*,
    16 I & N Dec. 491
    (BIA 1978) ....................................................................... 18, 19, 20

*J.M.O. v. United States*,
    13 F.4th 1061 (8th Cir. 2021) .............................................. 7, 20 n.12

*Jimenez-Rodriguez v.*
    *Garland*,
    996 F.3d 190
    (4th Cir. 2021).................................................................. 7

*Morris v. Nielsen*,
374 F. Supp. 3d 239
(E.D.N.Y. 2019).................................................................. 9

*Patel v. Garland*,
596 U.S. 328 (2022)........................................................... 5

*Powell v. Kodari-Intergreen Co.*,
334 N.W. 127 (Iowa 1983) ................................................ 22 n.13

*Truax v. Raich*,
239 U.S. 33 (1915)............................................................. 4

*United States v. Hamdi*,
432 F.3d 115 (2d Cir. 2005) .............................................. 19

*United States v. Iowa*,
Nos. 4:24-cv-00162-SHL-SBJ
and 4:24-cv-00161-SHL-SBJ,
2024 U.S. Dist. LEXIS 109474
(S.D. Iowa June 17, 2024) ................................................. 4

*United States v. Mejia-Barba*,
327 F.3d 678 (8th Cir. 2003) ............................................. 2

*United States v. Oklahoma*,
No. CIV-24-511-J,
2024 U.S. Dist. LEXIS 128145
(W.D. Okla. June 28, 2024) ............................................... 3

*United States v. Texas*,
97 F.4th 268 (5th Cir. 2024) ............................................. 3 n.3, 5, 21

*United States v. Texas*,
Nos. 1:23-CV-1537-DAE
and 1:24-CV-8-DAE,
2024 U.S. Dist. LEXIS 36721
(W.D. Tex. Feb. 29, 2024).................................................. 3

Appellate Case: 24-2265     Page: 6     Date Filed: 09/03/2024 Entry ID: 5431043

## Constitutions, Statutes and Rules

U.S. Const. Art. VI ........................................................................... 26

8 U.S.C.A. § 1101 *et seq.*
   (West 2024) ............................................................................ 1

8 U.S.C.A. § 1101 (West 2024) .............................................. 1, 7, 14

8 U.S.C.A. § 1182 (West 2024) .............................................. 11, 12, 17
                                                                                    18 n.11

8 U.S.C.A. § 1184 (West 2024) .............................................. 7

8 U.S.C.A. § 1229b (West 2024) ............................................ 11 n.7
                                                                                    17 n.10

8 U.S.C.A. § 1255 (West 2024) .............................................. 7, 20 n.12

8 U.S.C.A. § 1326 (West 2024) .............................................. 2

Pub. L. 103-322,
   108 Stat. 1796
   (Sept. 13, 1994) .................................................................... 6

Pub. L. 106-386,
   114 Stat. 1464
   (Oct. 28, 2000) ..................................................................... 7, 8

8 C.F.R. § 214.14 (2024) ......................................................... 9, 14 n.9

8 C.F.R. § 274a (2024) ............................................................ 7

Appellate Case: 24-2265     Page: 7     Date Filed: 09/03/2024 Entry ID: 5431043

Petition To Classify Alien as
    Immediate Relative of a
    United States Citizen or
    as a Preference Immigrant;
    Self-Petitioning for Certain
    Battered or Abused Spouses
    or Children,
    61 Fed. Reg. 13061
    (Mar. 26, 1996) ...................................................................... 16

New Classification for
    Victims of Severe Forms
    of Trafficking in Persons;
    Eligibility for "T"
    Nonimmigrant Status,
    67 Fed. Reg. 4784
    (Jan. 31, 2002)........................................................................ 8

New Classification for Victims
    of Criminal Activity;
    Eligibility for "U"
    Nonimmigrant Status,
    72 Fed. Reg. 53014
    (Sept. 17, 2007)............................................................ 7, 8, 9, 17

Classification for Victims of
    Severe Forms of Trafficking
    in Persons; Eligibility for "T"
    Nonimmigrant Status,
    89 Fed. Reg. 34864 (Apr 30, 2024) .................................................. 8

2024 La. Sess. Law Serv.
    Act 670 (S.B. 388)
    (West 2024)............................................................................ 3

H.B. 5400, 2024 Leg., Reg. Sess.
    (W. Va. 2024) ......................................................................... 3

Iowa Code Ann. § 902.9
    (West 2024)............................................................................ 2

Appellate Case: 24-2265    Page: 8    Date Filed: 09/03/2024 Entry ID: 5431043

S.B. 1231, 56th Leg., Reg. Sess.
(Ariz. 2024) ........................................................................................ 3

S.F. 2340, 90th General
Assembly (Iowa 2024) ....................................................... *passim*

**Secondary Sources**

Caroline Bettinger-López, *et al.*
*The Effects of Anti-Immigrant Laws*
*in the U.S. on Victims of Domestic*
*Violence, Sexual Assault, and*
*Human Trafficking: A Gender-Based*
*Human Rights Analysis*,
23 Harv. Latinx L. Rev. 17 (2020) ..................................... 15

Michael Aytes, Acting Deputy Dir.
of U.S. Citizenship & Imm. Servs.,
Mem. on Adjudicating Forms I-212 f
or Aliens Inadmissible Under Section
212(a)(9)(C) or Subject to Reinstatement
Under Section 241(a)(5) of the
Immigration and Nationality Act
in light of *Gonzalez v. DHS*,
508 F.3d. 1227 (9th Cir. 2007),
2009 WL 9419307 (May 19, 2009) .................................... 11 n.7

Memorandum from Alejandro Mayorkas,
Sec. Homeland Security, to
Tae D. Johnson, Acting Dir.
U.S. Imm. & Customs Enf't, *et al.*,
Guidelines for the Enforcement of
Civil Immigration Law (Sept. 30, 2021) ........................... 9

U.S. Citizenship & Imm. Servs.
Number of Form I-918 Petitions for
U Nonimmigrant Status By Fiscal
Year, Quarter, and Case Status
Fiscal Years 2009-2024 ...................................................... 10 n.5

Appellate Case: 24-2265    Page: 9    Date Filed: 09/03/2024 Entry ID: 5431043

U.S. Citizenship & Imm. Servs.
Table 1:  Number of I-914 and I-914A
Receipts, Approvals, and Denials ...................................................... 10 n.6

9 U.S. Citizenship and Imm.
Servs. Policy Manual § O (2024) ...................................................... 12 n.8

Tahirih Justice Ctr., *et al.*,
*Immigrant Survivors Fear*
*Reporting Violence* (May 2019) ........................................................ 15

U.S. House Of Representatives
Roll Call Votes 106th Congress -
2nd Session (2000) ............................................................................ 9

U.S. Imm. & Customs Enf't,
Directive 11005.3, Using a
Victim-Centered Approach with
Noncitizen Crime Victims 1
(Aug. 10, 2021) ................................................................................ 16

U.S. Senate: U.S. Senate Roll
Call Votes 106th Congress -
2nd Session (2000) ............................................................................ 8

Amendment S-5048 to S.F. 2340,
90th G.A., 2d Sess. (Iowa 2024) ...................................................... 25 n.15

Appellate Case: 24-2265     Page: 10     Date Filed: 09/03/2024 Entry ID: 5431043

## STATEMENT PURSUANT TO FEDERAL RULE
## OF APPELLATE PROCEDURE 29(A)(4)(E)

No party or party's counsel, nor any other person other than amici curiæ or their counsel, authored this brief in whole or in part. No person or entity, other than amici curiæ, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Rule 26.1A, none of the amici curiæ are publicly owned or traded corporations, and no publicly-held corporations individually own 10% or more of the stock of any of the amici curiæ.

Dated:  August 26, 2024

_____*/s/ Christopher M. Mason*_____
Counsel for Amici Curiæ

STATEMENT OF INTEREST OF *AMICI CURIÆ* PURSUANT TO
FEDERAL RULE OF APPELLATE PROCEDURE 29(a)(4)(D)

ASISTA Immigration Assistance is a Section 501(c)(3) tax-exempt, not-for-profit corporation that is a national leader in seeking safety and justice for immigrant survivors of gender-based violence. Its founders helped write the immigration provisions of the Violence Against Women Act, Pub. L. No. 103-322, 108 Stat. 1796 (Sept. 13, 1994), and the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464 (Oct. 28, 2000). It trains and assists attorneys and advocates, works to support policies aimed at safety and justice, and coordinates litigation against unfair deportation of survivors. *See* ASISTA, https://asistahelp.org/ (last visited Aug. 25, 2024).

The Asian Pacific Institute on Gender Based Violence is a Section 501(c)(3) tax-exempt, not-for-profit corporation that serves as a resource center on domestic violence, sexual violence, trafficking, and other forms of gender-based violence in Asian, Asian-American, and Pacific Islander communities in the United States. *See* Asian Pacific Institute on Gender Based Violence, https://www.api-gbv.org/ (last visited Aug. 25, 2024).

Esperanza United, originally begun as a shelter for Latinas suffering from domestic violence, is a Section 501(c)(3) tax-exempt, not-for-profit organization. Its mission is to address gender-based violence in the Latino and Latina

communities. *See* Esperanza United, https://esperanzaunited.org/en/ (last visited Aug. 25, 2024).

The Tahirih Justice Center is a Section 501(c)(3) tax-exempt, not-for-profit national organization that serves immigrant survivors of gender-based violence, providing free legal support and social services. Tahirih translates expertise gained from serving its clients into training, education, and advocacy to ensure that systems, laws, and policies protect immigrant survivors from violence and exploitation. *See* Tahirih Justice Center, https://www.tahirih.org/ (last visited Aug. 25, 2024).

As this indicates, all four amici have expertise in issues involved in SF 2340 because of their experience in the intersection between gender-based violence and immigrant communities. All merits parties have consented to this filing.

ARGUMENT

On March 19, 2024, Iowa lawmakers passed a bill purporting to make illegal under state law the entry, attempted entry, or existence in Iowa of any "alien" who had previously been denied entry into, or been deported from, the United States— all without regard to any federal rights of such person to enter or stay. On April 10, 2024, the Governor of Iowa signed it into law. *See* S.F. 2340, 90th Gen. Assembly (Iowa 2024) ("SF 2340"), § 2.1.

The new law defined "alien" by reference to the federal Immigration and Nationality Act of 1952, Pub. L. No. 82-414, 66 Stat. 163 (the "INA") (codified as amended at 8 U.S.C.A. § 1101 *et seq.* (West 2024)), as "any person not a citizen or national of the United States." *See* SF 2340 § 1.1 (referring to 8 U.S.C. § 1101(a)(3)).[1] Upon the discovery in Iowa of any such noncitizen who had previously been denied entry or deported, SF 2340 would require a state court to do one of two things. If the noncitizen had not previously been charged with or convicted of certain crimes, and agreed to accept the court's order, the court could "discharge" the noncitizen and "require the person to return to the foreign nation from which the person entered or attempted to enter . . . ." *Id.* § 4.3. Otherwise, the new law would require the court to enter judgment against the noncitizen

---

[1] Amici use "noncitizen" as a synonym for "alien" as defined by the INA.

together with—again—an "order requiring the person to return to the foreign nation from which the person entered or attempted to enter." *Id.* § 4.4. Failure to comply with either sort of removal order would be a "class C felony," *id.* § 5.2, punishable by incarceration (if not an "habitual offender") for up to ten years, with a fine of up to $13,660, Iowa Code Ann. § 902.9 (West 2024). The Iowa legislature did not provide for any other outcome and expressly forbade "abat[ing] the prosecution of an offense under this chapter on the basis that a federal determination regarding the immigration status of the person is pending or will be initiated." SF 2340 § 6.

SF 2340 was not prompted by any situation unique to Iowa. In the Consolidated Opening Brief of Defendants-Appellants ("App. Br."), Iowa politicians instead refer to "[o]ur *Nation*" being in an "immigration 'crisis.'" App. Br. at 5 (emphasis added). Nor, despite arguments about Texas, *id.* at 5-6, have those Appellants offered any proof that the federal government fails to respect Iowa when enforcing immigration law. *See*, *e.g.*, *United States v. Mejia-Barba*, 327 F.3d 678, 679-81 (8th Cir. 2003) (honoring Iowa felony conviction to support heightened federal sentence for unlawful return to the United States following deportation under 8 U.S.C. § 1326(a) and (b)(2)).[2]

_____

[2] In their four-paragraph statement of the case, App. Br. at 5-7, Appellants use the word "trafficking" eight times, apparently trying—without any evidence—

- 2 -

By the time Iowa's governor signed SF 2340 into law, a federal judge in Texas had already enjoined a similar Texas bill, known as SB 4, as unconstitutional. *See United States v. Texas*, Nos. 1:23-CV-1537-DAE and 1:24-CV-8-DAE, 2024 U.S. Dist. LEXIS 36721 (W.D. Tex. Feb. 29, 2024).[3] Attempts by other States at similar legislation have also had little success. *See*, *e.g.*, S.B. 1231, 56th Leg., Reg. Sess. (Ariz. 2024) (vetoed March 4, 2024); 2024 La. Sess. Law Serv. Act 670, § 4 (S.B. 388) (West 2024) (not effective until a future Supreme Court decision or Constitutional amendment); H.B. 5400, 2024 Leg., Reg. Sess. (W. Va. 2024) (referred to committee). When a copycat bill did become law in Oklahoma, a federal District Court there (like the court in Texas) promptly enjoined it as unconstitutional. *See United States v. Oklahoma*, No. CIV-24-511-J, 2024 U.S. Dist. LEXIS 128145 (W.D. Okla. June 28, 2024).

Shortly after enactment of SF 2340 in Iowa, two different lawsuits, one by the United States and one by the Iowa Migrant Movement for Justice (and two of its members) challenged its constitutionality. Both sets of Plaintiffs (now

_____

to imply that SF 2340 was intended as a "solution" for human trafficking. *See also id.* at 70. But survivors of trafficking are among the people who would be most harmed by SF 2340. *See infra* at 8, 10-15, 23-24.

[3] That injunction remains in effect pending appeal. *See United States v. Texas*, 97 F.4th 268 (5th Cir. 2024).

Appellees here) moved for preliminary injunctions to bar its enforcement. The District Court granted those requests, holding that SF 2340 "is preempted by federal law under principles of both field and conflict preemption." *United States v. Iowa*, Nos. 4:24-cv-00162-SHL-SBJ and 4:24-cv-00161-SHL-SBJ, 2024 U.S. Dist. LEXIS 109474, at *46 (S.D. Iowa June 17, 2024).

## I. FEDERAL SUPREMACY IN MATTERS OF IMMIGRATION LAW GENERALLY.

This Court should uphold the District Court's injunctions. It has been almost 150 years since the United States Supreme Court held that "[t]he passage of laws which concern the admission of citizens and subjects of foreign nations to our shores belongs to Congress, and not to the States." *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1875). The drafters of the Constitution would never have "done so foolish a thing as to leave in the power of the States" such matters. *Id.*

Cases since *Chy Lung* have only confirmed that the federal government, not the States, has been assigned the role of dealing comprehensively with immigration matters by the express language of article I, section 8, clause 4 of the Constitution and by the power of the executive branch "to control and conduct relations with foreign nations." *Arizona v. United States*, 567 U.S. 387, 394-95 (2012); *see also*, *e.g.*, *Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *Galvan v. Press*, 347 U.S. 522, 531 (1954); *Truax v. Raich*, 239 U.S. 33, 42 (1915). This is why the Supreme Court had no trouble in 2012 striking down legislation enacted in Arizona to criminalize

- 4 -

certain immigration issues under state law. *See* 567 U.S. at 400 (declaring unconstitutional provisions of statute that "add[ed] a state-law penalty for conduct proscribed by federal law.").[4]

Nor has the scope of federal law requiring such preemption shrunk since 2012. *See, e.g.*, *Patel v. Garland*, 596 U.S. 328, 331 (2022). As the Fifth Circuit just put it, "the power to control immigration—the entry, admission, and removal of noncitizens" remains "*exclusively* a federal power." *United States v. Texas*, 97 F.4th 268, 278-79 (5th Cir. 2024) (emphasis in original). The District Court was therefore right in general to follow the Constitution and reject Iowa's attempt to reject federal supremacy in the field of immigration. But it also would have been right in particular to enjoin SF 2340 because, as explained below, of the negative effects that law would have on federal protections for noncitizen survivors of crime or violence.

## II. THE SPECIAL SOLICITUDE OF FEDERAL IMMIGRATION LAW AND POLICY TOWARDS NONCITIZEN SURVIVORS OF CRIME OR VIOLENCE

As the Supreme Court has explained, "the ordinary principles of pre-emption include the well-settled proposition that a state law is pre-empted where it 'stands

---

[4] Appellants unsuccessfully attempt to avoid the majority opinion in *Arizona v. United States* by citing instead to one individual Justice's concurrence in part and dissent in part. *See* App. Br. at 4, 50, 53, 64.

- 5 -

as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Arizona*, 567 U.S. at 406 (citation omitted). Iowa's SF 2340 would be just such an "obstacle" to the numerous provisions enacted by Congress to assist and protect noncitizen survivors—victims and witnesses—of crime or violence here.

    A.    *Examples of Federal Immigration Law Protecting Survivors with which SF 2340 Would Conflict.*

SF 2340 would conflict in at least two ways with federal protections for noncitizen survivors of crime or violence. First, SF 2340 would conflict with federal law designed to assist such survivors and encourage them to engage with law enforcement. Second, SF 2340 would conflict with federal law granting discretion to waive such persons' prior involvement in criminal activity.

    1.    *SF 2340 would conflict with federal immigration law encouraging cooperation with law enforcement.*

Some thirty years ago, Congress enacted the Violence Against Women Act ("VAWA"), which created a self-petition process for noncitizen survivors of domestic violence or abuse to obtain immigration relief without requiring the cooperation of their abusive spouses or parents. *See* Pub. L. No. 103-322, 108 Stat. 1796 (Sept. 13, 1994). In 2000, Congress reauthorized VAWA (and these provisions) through the Victims of Trafficking and Violence Protection Act of 2000 (the "VTVPA") and the Battered Immigrant Women Protection Act of 2000

Appellate Case: 24-2265   Page: 20   Date Filed: 09/03/2024 Entry ID: 5431043

(the "BIWPA") it included.  *See* Pub. L. No. 106-386, 114 Stat. 1464 (Oct. 28,

2000).  A principal purpose of this new legislation was to create a new class of visa

and a path to citizenship as an incentive to noncitizens—including those having

entered, or having stayed in, the United States without authorization—to work with

police and prosecutors and thereby "strengthen the ability of law enforcement

agencies to investigate and prosecute" certain crimes "while offering protection to

alien crime victims."  New Classification for Victims of Criminal Activity;

Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53014, 53014 (Sept. 17,

2007) [hereinafter "Eligibility for 'U' Status"].

> According to this Court, the new "U-visa" created by this law:

> is a nonimmigrant classification granted to victims of qualifying
> crimes who cooperate with law enforcement in the investigation or
> prosecution of those crimes.  *See* 8 U.S.C. § 1101(a)(15)(U). . . .  If
> the petition [for a U-visa] is approved, a petitioner present in the
> United States receives lawful nonimmigrant status and employment
> authorization for up to four years.  *See* 8 U.S.C. §§ 1184(p)(3)(B),
> (p)(6); 8 C.F.R. § 274a.12(a)(19).  Additionally, 8 U.S.C. § 1255(m)
> gives the Secretary of DHS authority . . . to adjust his status to lawful
> permanent resident.

*J.M.O. v. United States*, 3 F.4th 1061, 1062 (8th Cir. 2021); *accord*, *e.g.*, *Jimenez-

Rodriguez v. Garland*, 996 F.3d 190 (4th Cir. 2021).  As the statement of

legislative purpose for the new visa had emphasized, it would help "facilitate the

reporting of crimes to law enforcement officials" and "give[] law enforcement

officials a means to regularize the status of cooperating individuals during

- 7 -

investigations or prosecutions" while providing protections to noncitizens "who have been severely victimized by criminal activity" in a way that "comports with the humanitarian interests of the United States." BIWPA § 1513(a)(2)(B); *accord*, *e.g.*, Eligibility for "U" Status, 72 Fed. Reg. at 53014.

Congress also created in the VTVPA a new "T-visa." This visa is intended to help protect noncitizen survivors of human trafficking who comply with any "reasonable request" from law enforcement "for assistance in the investigation or prosecution of acts of trafficking persons." New Classification for Victims of Severe Forms of Trafficking in Persons; Eligibility for "T" Nonimmigrant Status, 67 Fed. Reg. 4784, 4785 (Jan. 31, 2002); *see also* Classification for Victims of Severe Forms of Trafficking in Persons; Eligibility for "T" Nonimmigrant Status, 89 Fed. Reg. 34864 (Apr 30, 2024). As with the U-visa, Congress was seeking to provide "temporary immigration benefits to victims" to further the "humanitarian interests" of the United States and to strengthen the government's ability to prosecute crime—but particularly human trafficking. *Id*. at 4784.

All 95 Senators present to vote on the VTVPA and its BIWPA provisions, including both Senators from Iowa, voted in favor of it. U.S. Senate: U.S. Senate Roll Call Votes 106th Congress - 2nd Session (2000), https://www.senate.gov/legislative/LIS/roll_call_votes/vote1062/vote_106_2_00269.htm (last visited Aug. 25, 2024). So did 371 of the 372 House members present

to vote, including all five Representatives from Iowa. *See* U.S. House Of

Representatives Roll Call Votes 106th Congress - 2nd Session (2000),

https://clerk.house.gov/Votes/2000518?BillNum=H.R.3244 (last visited Aug. 25,

2024).

Subsequent regulations authorized by the VTVPA and BIWPA confirmed

that "victims" under the statute's U-visa provisions include bystanders and family

members directly affected by criminal acts and violence, not just witnesses. *See* 8

C.F.R. § 214.14(a)(14) (2024); *see also* Eligibility for "U" Status, 72 Fed. Reg. at

53016 ("USCIS . . . will exercise its discretion on a case-by-case basis to treat

bystanders as victims where that bystander suffers an unusually direct injury as a

result of a qualifying crime."); *id.* at 53017 (by including "certain family members

of deceased, incapacitated, or incompetent victims, the rule encourages these

family members to fully participate in the investigation or prosecution."). The

legislation also allows a person's "status as a victim of crime or victim, witness, or

party in legal proceedings" to be considered as a mitigating factor in immigration

enforcement decisions. Memo. from Alejandro Mayorkas, Sec'y of Homeland

Sec., to Tae D. Johnson, Acting Dir. U.S. Imm. & Customs Enf't, *et al*., Guidelines

for the Enforcement of Civil Immigration Law, at 3 (Sept. 30, 2021),

https://www.ice.gov/doclib/news/guidelines-civilimmigrationlaw.pdf; *see also*,

*e.g.*, *Morris v. Nielsen*, 374 F. Supp. 3d 239, 249-54 (E.D.N.Y. 2019) ("direct and

Appellate Case: 24-2265    Page: 23    Date Filed: 09/03/2024 Entry ID: 5431043

proximate harm" requirement for a U-visa does not require that a victim witness the crime). As a result, at any moment, a substantial number of noncitizens may qualify for a U-visa.[5] A smaller, but significant, number of noncitizens may qualify for a T-visa.[6]

SF 2340 would directly conflict with the language of the VTVPA and BIWPA with respect to many such noncitizens. For example, the holder of a U-visa or T-visa may, under the terms applicable to the granting of such a visa, be a noncitizen who was removed from the United States and who then reentered without authorization. Federal law does not automatically disqualify all such persons from receipt of a visa and its benefits. To the contrary, Congress coupled the creation of the U-visa and T-visa with the creation of a new waiver of grounds

--------------------------------

[5] According to the U.S. Citizenship and Immigration Services ("USCIS"), 17,889 petitions for U-visas were approved in fiscal year 2023, and as of the second quarter of the current fiscal year, 366,819 petitions are pending. *See*, *e.g.*, U.S. Citizenship & Imm. Servs., Number of Form I-918 Petitions for U Nonimmigrant Status By Fiscal Year, Quarter, and Case Status Fiscal Years 2009-2024, https:// i918u_visastatistics_fy2024_q2.xlsx (last visited Aug. 25, 2024). The collective total of such petitions approved since fiscal year 2009 appears to be 257,608.

[6] According to the USCIS, from 2008 through November 2022, 20,400 petitions for T-visas were approved. *See*, *e.g.*, U.S. Citizenship & Imm. Servs., Table 1: Number of I-914 and I-914A Receipts, Approvals, and Denials, https://www.uscis.gov/sites/default/files/document/fact-sheets/Characteristics_of_T_Nonimmigrant_Status_TVisa_Applicants_FactSheet_FY08_FY22.pdf.

that could otherwise bar such a noncitizen from admission into or continued presence in the United States. *See* 8 U.S.C.A. § 1182(d)(13)-(14) (West 2024).

This new waiver was essential to ensure that all noncitizen survivors of crime or violence, including those with past criminal or immigration violations, would have a strong incentive to report crimes and cooperate in investigations. Subsection 212(a) of the INA, *id.* § 1182(a), lists the many factors Congress has decided will bar certain noncitizens from entry into the United States. This includes a potentially permanent bar for those who reenter the United States after a previous removal. *Id.* § 1182(a)(9)(C)(i).

Under VAWA, Congress had already determined prior to enacting the VTVPA that noncitizen survivors of a particular kind of violence—domestic violence perpetrated by United States citizens or lawful permanent residents— could seek a waiver of this bar so long as they could demonstrate that the abuse they suffered was connected to their prior removal or reentry. *See id.* § 1182(a)(9)(C)(iii); *see also id.* § 1182(a)(9)(B)(iii)(IV) and (V) (similar waiver of inadmissibility available for abused spouses, children, and parents of citizens or legal permanent residents).[7] Subsections 212(d)(13) and (14) added to the INA by

---

[7] A battered spouse or child who qualifies for this waiver may also be eligible for a VAWA-based adjustment of status to lawful permanent resident. *See* 8 U.S.C.A. § 1229b(b)(2) (West 2024); *see also*, *e.g.*, Michael Aytes, Acting Deputy Dir. of U.S. Citizenship & Imm. Servs., Mem. on Adjudicating Forms I-

- 11 -

the VTVPA substantially expanded on this idea to include many more noncitizen survivors of crime or violence who could be helpful to law enforcement. Those subsections provide that "[t]he Secretary of Homeland Security shall determine whether a ground of inadmissibility exists" under subsection 212(a) of the INA "with respect to a nonimmigrant" seeking U-visa or T-visa status. *Id.* § 1182(d)(13)-(14). But, except in extraordinary cases such as torture or genocide, *see id.* § 1182(a)(3)(E), the Secretary has full discretion to "waive the application of subsection (a). . . if the Secretary . . . considers it to be in the public or national interest to do so." *Id.* § 1182(d)(13)-(14).[8] Even noncitizens who reenter the

---

212 for Aliens Inadmissible Under Section 212(a)(9)(C) or Subject to Reinstatement Under Section 241(a)(5) of the Immigration and Nationality Act in light of *Gonzalez v. DHS*, 508 F.3d. 1227 (9th Cir. 2007), 2009 WL 9419307 (May 19, 2009), https://www.uscis.gov/sites/default/files/document/memos/AD2%20Memo-Adjudicating%20Forms%20I-212_051909.pdf.

[8] Federal law has not yet defined the limits of "public or national interest" for purposes of a U-visa waiver. For purposes of a "T-visa" waiver, "national interest" factors include "[d]etails of the applicant's victimization," the level of "cooperation with law enforcement," the "[c]ontributions to public safety" that would result from "strengthening the ability of law enforcement to investigate and prosecute criminal activity," "[c]ontributions to the community," "[f]amily unity," and the risk of harm to the survivor "if returned to home country." 9 U.S. Citizenship and Immigration Servs. Policy Manual § O.3.B (2024), https://www.uscis.gov/policy-manual/volume-9-part-o-chapter-3 (last visited Aug. 21, 2024). Because a U-visa waiver can be approved in the "public interest" *or* the "national interest," an even broader array of considerations could apply to it.

- 12 -

United States without authorization and subsequently become subject to reinstatement of prior removal procedures may be eligible for relief via a U-visa or T-visa with this broad discretionary waiver. *See In re A-L-* (U.S. Citizenship & Imm. Servs. Admin. Appeals Office Jan. 12, 2017) (unpub.), https://www.uscis.gov/sites/default/files/err/D14%20-%20Application%20for%20U%20Nonimmigrant%20Status/Decisions_Issued_in_2017/JAN122017_01D14101.pdf. (addressing U-visas, but interpreting the same language that applies to T-visas).

Iowa's SF 2340 conflicts with these provisions. It would require as a matter of Iowa law the removal from the United States of a person holding a U-visa or T-visa granted by the United States government following a waiver of inadmissibility, as well as those awaiting decisions on their eligibility for such a waiver or those who would qualify to seek a waiver or protection under VAWA. Indeed, SF 2340 would prevent such noncitizens from even applying for U-visa, T-visa, or VAWA protected status. Thus SF 2340 would not only conflict directly with federal law as technical matter, but create the very "chilling effect" on cooperation with law enforcement that the federal government has sought to avoid with its carefully-measured immigration policy. *See infra* at 16.

Consider for example a mother who is not a United States citizen and who crosses the Rio Grande from Mexico with her infant child and her husband into

Appellate Case: 24-2265    Page: 27    Date Filed: 09/03/2024 Entry ID: 5431043

Texas without authorization.  While crossing, she becomes separated from her family, is immediately detained, and is returned to Mexico.

Seeking to be with her baby, she reenters the United States illegally and follows her husband to Iowa.  While in Iowa, she is assaulted and witnesses the murder of her husband.  *See generally* 8 U.S.C.A. § 1101(a)(15)(U)(iii).

She goes to local police to provide information and to seek protection.  Even though she would be highly valuable to law enforcement and eligible for U-visa status, SF 2340 would require her immediate removal from the United States. Indeed, Section 6 of SF 2340 would specifically forbid any Iowa court from abating her prosecution "on the basis that a federal determination regarding the immigration status of the person is pending or will be initiated."  And Section 10 of SF 2340 would not even allow for a "deferred judgment, deferred sentence, or suspended sentence" that might permit completion of a U-visa process or support of law enforcement efforts in the meantime.[9]

_____

[9] Part of the U-visa process is for a law enforcement agency to certify that a relevant applicant has "been helpful, is . .  being helpful, or is . . . likely to be helpful in the investigation or prosecution of the criminal activity" at issue. *Supplement B, Nonimmigrant Status Certification*, U.S. Citizenship & Immigration Servs., https://www.uscis.gov/sites/default/files/document/forms/i-918supb.pdf, at Part 4.2 (last visited Aug. 25, 2024); *accord* 8 C.F.R. 214.14(c)(2)(i) (2024). Nothing forces any local law enforcement agency to provide a certification unless it believes doing so is in the local interest.  SF 2340, however, would in effect undermine not only local law enforcement, but federal agencies such as the Federal

As this demonstrates, SF 2340 would disrupt the delicate balance struck by Congress between enforcement of federal immigration law and enforcement of federal and state criminal law. Even before legislation such as SB 4 or SF 2340, many noncitizens feared that *any* interaction with law enforcement would lead to deportation. In a survey conducted by amici here, more than 76% of almost 600 lawyers and advocates for noncitizen survivors of domestic and sexual violence reported that their clients were concerned about contacting police due to fear of deportation, and 52% reported working with survivors who dropped civil or criminal cases as a result of that fear. Tahirih Justice Ctr., *et al.*, *Immigrant Survivors Fear Reporting Violence* (May 2019), https://www.tahirih.org/wp-content/uploads/2019/06/2019-Advocate-Survey-Final.pdf; *see also*, *e.g.*, Caroline Bettinger-López, *et al.*, *The Effects of Anti-Immigrant Laws in the U.S. on Victims of Domestic Violence, Sexual Assault, and Human Trafficking: A Gender-Based Human Rights Analysis*, 23 Harv. Latinx L. Rev. 17, 23-26 (2020) (collecting studies demonstrating noncitizens' apprehension over cooperating with law enforcement).

---

Bureau of Investigation, in efforts to encourage law enforcement participation through a U-visa certification.

Appellate Case: 24-2265    Page: 29    Date Filed: 09/03/2024 Entry ID: 5431043

Federal immigration agencies also acknowledge that the perceived threat of deportation has a pronounced "chilling effect" on "the willingness and ability of noncitizen crime victims to contact law enforcement, participate in investigations and prosecutions, [and] pursue justice," which undermines law enforcement's goal to combat crime generally. U.S. Imm. & Customs Enf't, *Directive 11005.3, Using a Victim-Centered Approach with Noncitizen Crime Victims* 1 (Aug. 10, 2021), https://www.ice.gov/doclib/news/releases/2021/11005.3.pdf; *accord* Petition To Classify Alien as Immediate Relative of a United States Citizen or as a Preference Immigrant; Self-Petitioning for Certain Battered or Abused Spouses or Children, 61 Fed. Reg. 13061, 13062 (Mar. 26, 1996) (undocumented noncitizens "less likely to report the abuse or leave the abusive environment because they fear deportation"). Thus SF 2340 conflicts not only with the plain language of federal law, but with that law's role in a complex federal and state law enforcement system.

      2.     *SF 2340 would conflict with federal immigration law on waiver of involvement with prior criminal activity.*

The conflict between SF 2340 and federal immigration law is not limited to direct conflicts affecting noncitizens holding U-visas or T-visas after having been previously denied entry or deported. The Iowa law would also affect noncitizens previously denied entry or deported who are in the United States and awaiting decision on their eligibility to remain. The waiver provisions applicable to the

- 16 -

granting of U-visas and T-visas confer considerable discretion on federal officials. Those officials must balance the many different policy concerns and goals reflected in federal immigration law in exercising that discretion. Efforts by Iowa officials to enforce SF 2340 would interfere directly with federal officials' ability to exercise this discretion to encourage noncitizen victims and witnesses to support law enforcement.[10]

Nor would the conflict of SF 2340 with federal law be limited only to those seeking protections through a U-visa, a T-visa, or a VAWA self-petition. Conflicts would also arise under the more general waiver of inadmissibility provisions of the INA applicable to noncitizens seeking visas generally.

Subsection 212(d)(3) of the INA provides for a general nonimmigrant visa waiver of inadmissibility. *See* 8 U.S.C.A. § 1182(d)(3); *see also* Eligibility for "U" status, 72 Fed. Reg. at 53021 (the USCIS "has general authority to waive many grounds of inadmissibility for nonimmigrants" under subsection 212(d)(3)(B) in addition to the "waiver specific to U nonimmigrant status," under

---

[10] It would also interfere with such discretion indirectly. For example, SF 2340 would interfere with the discretion to grant relief to relatives of victims of human trafficking. *See*, *e.g.*, 8 U.S.C.A. § 1229b(b)(6) (discretion to parole noncitizens who are relatives of a noncitizen "granted continued presence" under certain provisions of the VTVPA).

Appellate Case: 24-2265    Page: 31    Date Filed: 09/03/2024 Entry ID: 5431043

subsection 212(d)(14)).  The basis for that more general waiver was laid out almost fifty years ago in *In re Hranka*, 16 I & N Dec. 491 (BIA 1978).

In the *Hranka* case, a "25-year-old native and citizen of Canada" was denied admission into "the United States because she was previously deported for having engaged in prostitution." *Id.*[11]  "The District Director of the Immigration and Naturalization Service in Detroit, Michigan" refused to grant her a waiver for admission because of the short time since her deportation and her lack of a "compelling" reasons for wanting to reenter.  *Id.* at 491-92.

The Board of Immigration Appeals reversed and granted a waiver.  It held that the proper test involved three factors.  "The first is the risk of harm to society if the applicant is admitted.  The second is the seriousness of the applicant's prior immigration law, or criminal law, violations, if any.  The third factor is the nature of the applicant's reasons for wishing to enter the United States."  *Id.* at 492.

In the two years since her deportation, the applicant had been working full time and had no further criminal violations.  Her prior criminal acts had occurred when "she began living with a certain man in Detroit" who "had a very negative

---

[11] Absent a waiver, "aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States . . .  Any alien who . . . has engaged in prostitution within 10 years of the date of application for a visa, admission, or adjustment of status . . . ."
8 U.S.C.A. § 1182(a)(2)(D)(i).

Appellate Case: 24-2265     Page: 32     Date Filed: 09/03/2024 Entry ID: 5431043

influence" on her and she had begun "using heroin . . . ." *Id.* Since deportation, she had been living again with her parents. *Id.* Finally, her "reasons for wanting to enter the United States" were that "every time she is invited out on a date and the date suggests going to Detroit . . . it is all brought back to her and is very embarrassing" and that, in addition to "three uncles living in Detroit she has numerous cousins who are all marriageable age" and she had "already missed one of her cousins' weddings." *Id.*

The Board of Immigration Appeals concluded that, while "these reasons for wanting to enter the United States cannot be fairly characterized as 'compelling'," a waiver should have been granted under INA subsection 212(d)(3)(B) allowing her to enter the United States. *Id.* at 492-93. And it is easy, given the facts and circumstances of the *Hranka* case, to see why. Yet under SF 2340, if Ms. Hranka had gone to Iowa for a wedding of one of her "numerous cousins" after obtaining the waiver from the federal government described in her seminal immigration law case, the State of Iowa could have ordered her back to Canada, an outcome directly contrary to federal law.

Other examples of direct conflicts between SF 2340 and federal immigration law are easy to imagine, both in the abstract and from existing case law. *See*, *e.g.*, *United States v. Hamdi*, 432 F.3d 115, 118-21 & n.4 (2d Cir. 2005) (Tunisian citizen allowed to seek a reduction in sentence following completion of

- 19 -

incarceration and supervised release, and deportation from the United States, because under *Hranka* such a reduction could increase the likelihood of receiving a waiver for admission to the country—all of which would be irrelevant under SF 2340).[12]  Problems such as, or worse than, those in *Hranka* continue to occur today.

B.    *Examples of Federal Immigration Policy which SF 2340 Would Undermine.*

As the discussion above indicates, SF 2340 would conflict directly with the language of specific federal law and regulations under the VTVPA, BIWPA and VAWA.  This means that SF 2340 would also undermine the immigration policies embodied in those laws and, more generally, the INA.

The INA is "a comprehensive and complete code covering all aspects of admission of aliens to this country."  *Elkins v. Moreno*, 435 U.S. 647, 664 (1978).  Its overarching policy objective is maintaining a consistent national policy on immigration.  *See*, *e.g.*, *Arizona*, 567 U.S. at 395 ("It is fundamental that foreign countries concerned about the status, safety, and security of their nationals in the

---

[12] In addition, as with certain noncitizens protected by VAWA's provisions, "8 U.S.C. § 1255(m) gives the Secretary of DHS authority" to convert the status of a holder of a U-visa to that of "lawful permanent resident."  *J.M.O.*, 13 F.4th at 1062.  SF 2340 would ignore such "lawful permanent resident" status as to any former U-visa holder who had received a waiver with respect to prior deportation or illegal reentry and then been granted permanent residency.

United States must be able to confer and communicate on this subject with one national sovereign, not the 50 separate States."); *Texas*, 97 F.4th at 286 ("If every state could regulate the unlawful entry and reentry of noncitizens, '[e]ach additional statute [would] incrementally diminish[] the [federal government]'s control over enforcement' and 'detract[] from the 'integrated scheme of regulation' created by Congress'") (citation omitted, alterations in original). By definition, allowing individual States to enact and enforce their own immigration laws conflicts directly with this policy goal.

One specific policy objective of the INA, as amended by the VTVPA and BIWPA, is also to make sure that immigration law does not undermine public safety initiatives. In particular, the federal government has chosen in the VTVPA and BIWPA to balance the issue of entry into, or continued presence in, the United States without authorization with the issue of effective law enforcement and protection of all persons in the United States against crime or violence.

That balance benefits every State. Yet not only would SF 2340 undermine that policy as to witnesses to, and victims of, crimes that occur in Iowa; it would undermine that policy as to witnesses to, and victims of, crimes that occur in sister

- 21 -

states.[13]  As this indicates, the violence done by SF 2340 to federal immigration policy involves not only an insult to that policy for the nation, but an insult to that policy as it affects states other than Iowa.

III.   TWO MORE REAL-WORLD EXAMPLES OF THE APPLICATION OF FEDERAL IMMIGRATION LAW AND POLICY THAT SF 2340 WOULD PRECLUDE.

Point II above provides some examples of situations in which SF 2340 would conflict with federal law.  As further examples, consider the following two situations in recent years from the actual case files of amici.[14]

A.   *A Pending U-Visa:  Roxanne's Situation.*

Roxanne suffered sexual abuse for years as a child in a foreign country. When she became a teenager, she had a child with a man nearly 40 years old.  He subjected her to horrific physical and emotional abuse, including beating her repeatedly and chasing her with a knife.  Roxanne reported the abuse to local authorities.  Her abuser paid them off and they did nothing to protect her. Desperate to escape, she fled to the United States.  Here, having not been informed that she could seek asylum given her situation, she was detained and returned to

---

[13] Appellants are simply wrong that SF 2340 would have "no extraterritorial effect," App. Br. at 30 (quoting *Powell v. Kodari-Intergreen Co.*, 334 N.W. 127, 131 (Iowa 1983)).

[14] The names of the survivors have been changed for confidentiality.

Appellate Case: 24-2265     Page: 36     Date Filed: 09/03/2024 Entry ID: 5431043

her home country. Afraid for her life upon her return, she fled again and re-entered the United States.

Several years after reentering the country, she began a new relationship. Unfortunately, it did not go well. The man involved frequently assaulted and raped her, attacking her so brutally that she required hospitalization. Although terrified, Roxanne reported the crime to local police and cooperated in the case against her abuser. Because of her assistance, the police were able to arrest and charge a violent man.

During this process, with the support of law enforcement, Roxanne applied for a U-visa and was placed on the waitlist, making her eligible for work authorization. That application has been pending for seven years. Under SF 2340, despite her courage and assistance to law enforcement, and contrary to federal law and policy, Iowa would require Roxanne's return to her country of origin.

B.    *A T-Visa and Lawful Permanent Residency:  Jenny's Situation.*

Some twenty years ago, while a teenager, Jenny first entered the United States. Believing that she was going to work in a restaurant, she instead was forced into sex trafficking. After five years, she was charged with prostitution and removed to her home country. Under duress, she reentered the United States. After nine years, she escaped and assisted law enforcement with the investigation and prosecution of her traffickers, who were convicted as a result. Given her

- 23 -

circumstances, she was able to receive a T-1 visa and a waiver of her prior inadmissibility, thus allowing her to remain in the United States.

Several years later, Jenny successfully applied for adjustment of status. She is now a lawful permanent resident. Contrary to Appellants' position, she would suffer significant harm from SF 2340 because (among other things) it would not account for her lawful permanent resident status, undermining the T-visa program and the goal of incentivizing survivors like her to help law enforcement arrest and convict traffickers.

## IV. THE DISTRICT COURT'S DECISION CANNOT BE AVOIDED BY TRYING TO REINTERPRET SF 2340.

The conflicts discussed above between SF 2340 and federal immigration law and policy demonstrate that SF 2340 is unconstitutional. It is not possible to reconcile those issues by straining to reinterpret the words of the statute, either.

For example, Appellants admit that SF 2340 provides that noncitizens would:

commit an illegal reentry if they "enter[], attempt[] to enter, or [are] at any time found" in Iowa:

under any of the following circumstances:
a. The person has been denied admission to or has been excluded, deported, or removed from the United States.
b. The person has departed from the United States while an order of exclusion, deportation or removal is outstanding.

- 24 -

App. Br. at 24 (quoting SF 2340 § 2.1(a)).  Then they argue that the words

"'[u]nder the circumstance' [sic] excludes those who enter with or who did not

need federal permission," and that in a "natural reading" of SF 2340, "the phrase

'enters . . . under any of the following circumstances' thus specifies that, *if at the

time the alien is arrested*, the *prevailing condition* is 'denied admission,'

'excluded,' 'removed,' or 'departed [sic].'"  *Id.* at 25 (quoting SF 2340 § 2.1)

(emphasis added).  This is nonsense.

First, Appellants have not even quoted the statute correctly.  Second, the

statute was written in the present perfect continuous tense.  That is, it describes a

condition that started in the past and continues to exist today.  Only if federal law

*expunged* all record of, as opposed to *waived*, a prior deportation or denial of entry

could the use of this tense possibly mean that the condition of having been

deported or denied entry no longer existed.  But expungement is not what federal

law provides.  Appellants' argument is just not what the Iowa legislature said (or

meant).[15]

_____

[15] If the Iowa legislature had, for example, intended that SF 2340 not apply
to noncitizens such as Ms. Hranka, Jenny, or Roxanne who suffered violence as
women, were previously denied entry or deported, but received a federal waiver,
the legislature would not have rejected an amendment making this clear.  But it
did.  *See, e.g.,* Amendment S-5048 to S.F. 2340, 90th G.A., 2d Sess. (Iowa 2024),
https://www.legis.iowa.gov/legislation/BillBook?ga=90&ba=S-5048) (proposed
exception for noncitizen who "holds or is eligible" for a visa under VAWA).

Appellate Case: 24-2265     Page: 39     Date Filed: 09/03/2024 Entry ID: 5431043

Furthermore, even if SF 2340 did not (as Appellants argue) plainly apply to noncitizens who have received a federal waiver, it would still conflict with federal immigration law and policy that allows noncitizens—such as Roxanne above—*seeking* waivers with respect to prior exclusion, deportation, or removal to remain here (and help law enforcement) while those decisions are pending. *See*, *e.g.*, *supra* at 10 n.5, 14, 16, 22. The assertion that perhaps an Iowa court might conclude that certain "circumstances may warrant a discretionary stay" even though "abatement" is forbidden, App. Br. at 33, does not eliminate this conflict, because it still purports to make the jurisdiction of the state court superior to federal law.

Our Constitution provides that it and the laws enacted by Congress and signed by the President "shall be the supreme Law of the Land; . . . *any Thing* in . . . the . . . Laws of *any* state to the Contrary notwithstanding." U.S. Const. Art. VI (emphasis added). As a result, "state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (citation omitted). Because the words of SF 2340 do not support reinterpretation to avoid such conflicts, the District Court properly enjoined enforcement of SF 2340.

Appellate Case: 24-2265    Page: 40    Date Filed: 09/03/2024 Entry ID: 5431043

CONCLUSION

For the reasons stated above, this Court should affirm the decision below.

Dated: August 26, 2024

Respectfully submitted,

CHRISTOPHER M. MASON
*Counsel of Record*
NIXON PEABODY LLP
Tower 46
55 West 46th Street
New York, New York 10036
(212) 940-3000

Counsel for Amici Curiæ

CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,486 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO in 14-point Times New Roman typeface.

Dated: August 26, 2024

                                   _/s/ Christopher M. Mason_
                                   Counsel for Amici Curiæ

CIRCUIT RULE 28A(h) CERTIFICATION

I hereby certify that I have filed electronically, pursuant to 8th Cir. R. 28A(h), a version of the brief in printed PDF format, and that the brief has been scanned for viruses and is virus-free.

Dated:  August 26, 2024

_____ */s/ Christopher M. Mason* _____
Counsel for Amici Curiæ

CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2024, I electronically filed a copy of the foregoing brief with the Clerk of the United States Court of Appeals for the Eighth Circuit using the Court's CM/ECF system. I further certify that I served the following counsel of record for Appellants via the Court's CM/ECF system.

Dated: August 26, 2024

_____/s/ Christopher M. Mason_____
Counsel for Amici Curiæ