IN THE
United States Court of Appeals for the Eighth Circuit

———————

IOWA MIGRANT MOVEMENT FOR JUSTICE, *ET AL.*,
*Plaintiffs-Appellees*,

v.

BRENNA BIRD, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF IOWA,
*Defendant-Appellant*,

KIMBERLY GRAHAM AND ZACH HERRMANN,
*Defendants.*

———————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

THE STATE OF IOWA, *ET AL.*,
*Defendants-Appellants.*

———————

On Appeal from the United States District Court
for the Southern District of Iowa
Case Nos. 4:24-cv-00161-SHL, 4:24-cv-00162-SHL
(The Honorable Stephen H. Locher)

———————

## CONSOLIDATED REPLY BRIEF OF DEFENDANTS-APPELLANTS

———————

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
*Solicitor General*

PATRICK C. VALENCIA
*Deputy Solicitor General*

September 9, 2024

BREANNE A. STOLTZE
*Assistant Solicitor General*
Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-8770
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ......................................................... iii

INTRODUCTION ........................................................................ 1

ARGUMENT ............................................................................... 2

    I.     PLAINTIFFS DISREGARD IOWA'S CODIFIED RULES OF CONSTRUCTION AND FORCE AN UNREASONABLE INTERPRETATION OF SF2340 ................................................................ 2

    II.    PLAINTIFFS' CLAIMS ARE NONJUSTICIABLE ............................................................. 13

           A.    The United States Lacks Cause of Action Because Its Suit Is Not Grounded In Traditional Equity Practice. ................................ 13

           B.    MMJ Plaintiffs Lack Standing. ................................ 17

           C.    Plaintiffs lack standing to pursue an injunction against Defendants' enforcement of only Section 4. ................................ 22

    III.    FEDERAL IMMIGRATION LAW DOES NOT PREEMPT SF2340 ................................................ 25

           A.    The logic behind field preemption of alien registration does not extend to illegal reentry laws ................................ 25

           B.    SF2340 is consistent with the federal immigration scheme ................................ 30

    IV.    THE INJUNCTION IRREPARABLY HARMS IOWA. ................................................................ 34

i

CONCLUSION ........................................................................ 34

CERTIFICATE OF COMPLIANCE ....................................... 36

CERTIFICATE OF SERVICE ............................................... 37

Appellate Case: 24-2265    Page: 3    Date Filed: 09/10/2024 Entry ID: 5434070

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*281 Care Comm. v. Arneson,*
  638 F.3d 621 (8th Cir. 2011)..........................................................22, 24

*Abbott v. Perez,*
  585 U.S. 579 (2018)......................................................................7

*Alexander v. South Carolina State Conf. of the NAACP,*
  144 S. Ct. 1221 (2024)..................................................................7

*Am. Sch. of Magnetic Healing v. McAnnulty,*
  187 U.S. 94 (1902)......................................................................14

*Arizona v. United States,*
  567 U.S. 387 (2012)............................... 12, 25, 26, 31, 32, 33

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)....................................................................21

*Attorney-General v. Corp. of Poole,*
  (1838) 41 Eng. Rep. 7 (High. Ct. Ch.)..................................14

*California v. Texas,*
  593 U.S. 659 (2021)....................................................................19

*California v. Zook,*
  336 U.S. 725 (1949)....................................................................31

*Chamber of Comm. v. Whiting,*
  563 U.S. 582 (2011)..............................................................31, 32

*Craig Foster Ford, Inc. v. Iowa Dep't of Transp.,*
  562 N.W.2d 618 (Iowa 1997)....................................................5

*Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.,*
  880 N.W.2d 212 (Iowa 2016)....................................................3

*Digit. Recognition Network, Inc. v. Hutchinson,*
  803 F.3d 952 (8th Cir. 2015)..................................................24

*Food & Drug Admin. v. All. for Hippocratic,*
  Med., 602 U.S. 367 (2024)......................................................21

*Fox v. Washington,*
  236 U.S. 273 (1915)....................................................................12

*GLBT Youth in Iowa Schs. Task Force v. Reynolds,*
  2024 WL 3736785 (8th Cir. Aug. 9, 2024) ...................... 2, 6, 12, 13, 19

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,*
  527 U.S. 308 (1999)....................................................................13

Appellate Case: 24-2265   Page: 4   Date Filed: 09/10/2024   Entry ID: 5434070

# TABLE OF AUTHORITIES—Continued

**Page(s)**

*Hawse v. Page,*
7 F.4th 685 (8th Cir. 2021) ................................................. 20

*Henson v. Santander Consumer USA Inc.,*
582 U.S. 79 (2017) ............................................................. 9

*Hines v. Davidowitz,*
312 U.S. 52 (1941) ....................................................... 28, 29

*Holiday Inns Franchising, Inc. v. Branstad,*
537 N.W.2d 724 (Iowa 1995) .............................................. 5

*Hughes v. Trs. of Morden Coll.,*
(1748) 27 Eng. Rep. 973 (High Ct. Ch.) ............................ 15

*In re Interest of X.L.,*
2018 WL 2084837 (Iowa Ct. App. May 2, 2018) ................. 7

*In re Krantz,*
97 B.R. 514 (Bankr. N.D. Iowa 1989) ................................. 3

*In re Young,*
780 N.W.2d 726 (Iowa 2010) .............................................. 5

*Jacobson v. Fla. Sec'y of State,*
974 F.3d 1236 (11th Cir. 2020) ......................................... 24

*Johnson v. Manhattan Ry. Co.,*
289 U.S. 479 (1933) ......................................................... 17

*Kansas v. Garcia,*
589 U.S. 191 (2020) ....................................... 25, 26, 27, 31

*Kohrt v. Yetter,*
344 N.W.2d 245 (Iowa 1984) .............................................. 7

*Moody v. NetChoice, LLC,*
144 S. Ct. 2383 (2024) ..................................................... 12

*Ortiz v. Foxx,*
596 F. Supp. 3d 1100 (N.D. Ill. 2022) ............................... 24

*Pietig v. Iowa Dep't of Transp.,*
385 N.W.2d 251 (Iowa 1986) .............................................. 3

*Robb v. Connolly,*
111 U.S. 624 (1884) ........................................................... 7

*Sanitary Dist. of Chicago v. United States,*
266 U.S. 405 (1925) .................................................... 14, 16

*State v. Doe,*
903 N.W.2d 347 (Iowa 2017) .............................................. 4

iv

**Page(s)**

*State v. Gross,*
    935 N.W.2d 695 (Iowa 2019) ............................................... 4

*State v. Hoyman,*
    863 N.W.2d 1 (Iowa 2015) .................................................... 5

*Teel v. McCord,*
    394 N.W.2d 405 (Iowa 1986) ................................................ 3

*Terrett v. Taylor,*
    13 U.S. (9 Cranch) 43 (1815) .............................................. 14

*Truax v. Raich,*
    239 U.S. 33 (1915) .............................................................. 14

*United States v. Am. Bell Tel. Co.,*
    128 U.S. 315 (1888) ............................................................ 14

*United States v. Minnesota,*
    270 U.S. 181 (1926) ............................................................ 16

*United States v. Missouri,*
    2024 WL 3932470 (8th Cir. Aug. 26, 2024) ................... 15, 16

*United States v. Salerno,*
    481 U.S. 739 (1987) ............................................................ 12

*United States v. San Jacinto Tin Co.,*
    125 U.S. 273 (1888) ............................................................ 14

*United States v. Texas,*
    97 F.4th 268 (5th Cir. 2024) ......................................... 31, 33

*United States v. Texas,*
    143 U.S. 621 (1892) ............................................................ 14

*United States v. Texas,*
    2024 WL 861526 (W.D. Tex. Feb. 29, 2024) ......................... 8

*United States v. Veasley,*
    98 F.4th 906 (8th Cir. 2024) .............................................. 12

*United States v. Washington,*
    596 U.S. 832 (2022) ............................................................ 16

*United Steelworkers of Am. v. United States,*
    361 U.S. 39 (1959) .............................................................. 15

*Whole Woman's Health v. Jackson,*
    595 U.S. 30 (2021) ........................................................ 13, 15

*Wyandotte Transp. Co. v. United States,*
    389 U.S. 191 (1967) ............................................................ 14

Appellate Case: 24-2265    Page: 6    Date Filed: 09/10/2024 Entry ID: 5434070

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Zanders v. Swanson,*
   573 F.3d 591 (8th Cir. 2009) ................................................. 18, 19, 20

**Statutes**

8 U.S.C. § 1101 .............................................................................. 31
8 U.S.C. § 1324 .............................................................................. 31
8 U.S.C. § 1325 .............................................................................. 30
8 U.S.C. § 1326 ............................................................... 8, 30, 33
8 U.S.C. § 1357 ............................................................ 31, 32, 33
8 U.S.C. § 1373 .............................................................................. 32
8 U.S.C. § 1644 .............................................................................. 32
18 U.S.C. § 758 .............................................................................. 31
22 U.S.C. § 7105 ............................................................................ 31
Iowa Code § 4.4 ..................................................... 4, 5, 6, 7, 11, 19
Iowa Code § 331.656 ...................................................................... 23
Iowa Code § 718C.2 ....................................................................... 33
Iowa Code § 718.2 ............................................................................ 8
Iowa Code § 718.4 ...................................................................... 9, 10

**Other Authorities**

*The Writ-of-Erasure Fallacy,*
   104 Va. L. Rev. 933 (2018) ..................................................... 24

Appellate Case: 24-2265    Page: 7    Date Filed: 09/10/2024 Entry ID: 5434070

## INTRODUCTION

Iowa passed a law making federal criminal reentry a state crime. That complementary enactment does not violate the Supremacy Clause. Indeed, Iowa's Legislature enacted laws informing courts how to interpret Iowa's laws. Yet both response briefs fail to address Iowa Code Chapter 4—the instructions for interpreting Iowa law. Courts may not assume unconstitutional interpretations of Iowa law when there is a constitutional interpretation that allows every part of a law to have effect. But that is just what Plaintiffs ask of this Court. This Court knows the proper path is to instead faithfully apply Iowa's laws consistent with federal law.

Worse, the response briefs admit the Supreme Court has never extended immigration field preemption beyond laws governing alien registration then, at the same time, assert that field preemption applies to laws governing entry and removal as well as reentry. Plaintiffs do not explain why "entry and removal" is the same as "alien registration"—nor could they. Instead, Plaintiffs ask this Court to extend field preemption where the Supreme Court has declined to do so. This Court need not go so far.

1

Because SF2340 makes a violation of federal criminal law a violation of Iowa law, there is no federal conflict. Applying Iowa's interpretative directives, this case is an easy one: federal law does not preempt SF2340.

This Court need not even reach the merits, though, because the United States lacks a cause of action. And because SF2340 does not apply to those with lawful status, no MMJ Plaintiff has standing; indeed, MMJ Plaintiffs' standing theory still turns on their contorted statutory interpretation.

This Court should vacate the injunction.

## ARGUMENT

## I. PLAINTIFFS DISREGARD IOWA'S CODIFIED RULES OF CONSTRUCTION AND FORCE AN UNREASONABLE INTERPRETATION OF SF2340.

Iowa Code chapter 4 provides detailed instructions for interpreting Iowa laws, and the Legislature enacts all laws against that codified interpretive backdrop. *See* Iowa Code ch. 4; *GLBT Youth in Iowa Schs. Task Force v. Reynolds*, 2024 WL 3736785, at *5 (8th Cir. Aug. 9, 2024) (error when district court failed to reference "Iowa's admonition to interpret its laws reasonably and in a manner feasible of execution"). The

2

State's interpretation thus reads, rather than "rewrites," SF2340. *See* DOJ.Br.11, 13, 24; MMJ.Br.3, 11. It interprets the law using the express instructions the Legislature has enacted. Any interpretation proceeds from Iowa Code, and any interpretation that does not—as with Plaintiffs' here—misreads the statute.

But Plaintiffs ignore Chapter 4; and so both briefs decline to engage with it. Plaintiffs instead repeat the district court's error in treating statutes as judicial canons of construction that can be set aside. They are not. They are part of the statutory scheme that courts apply to any interpretation of Iowa law. *See Teel v. McCord*, 394 N.W.2d 405, 406 (Iowa 1986) ("Our review of this unusual case is controlled by the principles set forth in Iowa Code."); *Pietig v. Iowa Dep't of Transp.*, 385 N.W.2d 251, 252 (Iowa 1986) ("Guidelines on statutory construction are set forth in [Chapter 4]."); *see also In re Krantz*, 97 B.R. 514, 524 (Bankr. N.D. Iowa 1989) ("Chapter 4 of the Iowa Code, Construction of Statutes, informs the Court's interpretation of the legislative intent for statutes, whenever enacted."). Statutory constructions thus cannot "run counter . . . to the mandates of Iowa Code chapter 4." *Des Moines Flying Serv., Inc. v.*

3

*Aerial Servs. Inc.*, 880 N.W.2d 212, 222 (Iowa 2016) (citing Iowa Code §§ 4.4, 4.7). Yet Plaintiffs' interpretation does precisely that.

*1. Application to lawful re-entrants*—Plaintiffs and the district court impermissibly and expansively interpret SF2340 to violate federal law. They argue "the Iowa Legislature intentionally chose *not* to include key text from the federal statute which would have protected those who return lawfully." MMJ.Br.12, 17; *see also* App.Vol.I.236, R.Doc.51, at 14 (discussing "the Iowa Legislature's conspicuous decision not to include the defenses that exist under federal law"); DOJ.Br.25 (referencing the "conspicuous absence of any language paralleling the federal scheme"). In other words, Plaintiffs contend that Iowa's Legislature believed both that it could criminalize lawful aliens and wanted to do so.

But Iowa's rules of statutory construction require that any interpretation "examine the consequences of a particular interpretation and see whether that interpretation makes practical sense." *State v. Gross*, 935 N.W.2d 695, 703 (Iowa 2019) (citing Iowa Code § 4.4(3); *State v. Doe*, 903 N.W.2d 347, 353 (Iowa 2017)). Plaintiffs' interpretation makes "practical sense" only if this Court assumes discriminatory intent. But that assumption violates Iowa Code.

4

Chapter 4 commands that "[i]n enacting a statute, it is presumed that [a] just and reasonable result is intended" along with "[a] result feasible of execution." Iowa Code § 4.4(3), (4). Further, "[i]t is presumed that . . . [c]ompliance with the Constitutions of the state and of the United States is intended." *Id.* § 4.4(1); *see also State v. Hoyman*, 863 N.W.2d 1, 14 (Iowa 2015) ("In construing a statute, we presume the legislature intended it to comply with both the United States and Iowa Constitutions." (citing Iowa Code § 4.4(1))); *In re Young*, 780 N.W.2d 726, 729 (Iowa 2010) (noting "our mandate to construe statutes in a fashion to avoid a constitutional infirmity were possible").

Those instructions mandate that any reading that creates an unjust, unreasonable, or infeasible result, or that does not comply with the State or federal constitutions, cannot have been the Legislature's intent. And where one interpretation "would lead to an unreasonable, impracticable and absurd result, [courts] are compelled to search for an alternate meaning consistent with the legislature's purpose." *Craig Foster Ford, Inc. v. Iowa Dep't of Transp.*, 562 N.W.2d 618, 624 (Iowa 1997) (citing *Holiday Inns Franchising, Inc. v. Branstad*, 537 N.W.2d 724, 728 (Iowa 1995)).

5

This Court recently recognized chapter 4's importance in reversing a facial injunction of another Iowa law. *See GLBT Youth*, 2024 WL 3736785, at *5. Indeed, this Court remanded to the district court to incorporate "Iowa's admonition to interpret its laws reasonably and in a manner feasible of execution, Iowa Code § 4.4(3)–(4)." *Id.*

As here, that district court "insisted" the law at issue "could only be interpreted in an 'absurd' manner." *Id.* Consistent with chapter 4, this Court instructed that "[o]ther interpretive methods should be discussed and exhausted before concluding the only textual interpretation is an absurd one because the resulting interpretation inevitably bears on whether the law's applications are constitutional." *Id.* Iowa's interpretive argument here therefore is not simply "quibbling with the district court's interpretation of the statutory text." DOJ.Br.24. Iowa law requires courts to go through these proper-statutory-interpretation steps, which shape the following analysis.

Yet Plaintiffs point to no evidence that the Legislature intended to deviate from its codified interpretive rules, nor do they identify any evidence that the Legislature acted in bad faith. Plaintiffs instead assume such intent without support.

Appellate Case: 24-2265    Page: 13    Date Filed: 09/10/2024 Entry ID: 5434070

Under Iowa Code section 4.4(3), courts "will not attribute such an illogical intent to the legislature." *In re Interest of X.L.*, 2018 WL 2084837, at \*3 (Iowa Ct. App. May 2, 2018). Courts must "presume that . . . a reasonable result is intended." *Kohrt v. Yetter*, 344 N.W.2d 245, 246 (Iowa 1984) (citing Iowa Code§ 4.4(3)).

Further, the Supreme Court has long held that legislative enactments are entitled to a presumption of good faith. *See Robb v. Connolly*, 111 U.S. 624, 637 (1884). The presumption of "legislative good faith" directs courts "to draw the inference that cuts in the legislature's favor when confronted with evidence that could plausibly support multiple conclusions." *Alexander v. South Carolina State Conf. of the NAACP*, 144 S. Ct. 1221, 1235–36 (2024) (citing *Abbott v. Perez*, 585 U.S. 579, 610–12 (2018)). The State has thus applied both that presumption and chapter 4 to the law's text to conclude that Section 2 does not apply to lawful residents. And the State has repeated throughout this litigation that it will not enforce the law against lawful residents.

Plaintiffs and the district court instead insist that Section 2 applies to legal residents for two reasons:

7

*First*, SF2340 omits the federal law listing express defenses where the alien has received federal government permission to reenter or can show permission was unnecessary. *See* 8 U.S.C. § 1326(a)(2); Iowa Code § 718.2. But Iowa cannot make eligibility determinations. Had Iowa included the language in 8 U.S.C. § 1326(a)(2), state judges would be required to make determinations that have been found to conflict with federal immigration law. *See United States v. Texas*, 2024 WL 861526, at *23 (W.D. Tex. Feb. 29, 2024). This Court should reject Plaintiffs' efforts to force Iowa into a Catch-22.

*Second*, the district court erroneously found that the statute's "repeated and insistent use of the past tense . . . indicates that a person will be criminally liable for what happened in the past, not based on current legal status." App.Vol.I.235, R.Doc.51, at 13; *see also* MMJ.Br.20. The insistence not only runs counter to chapter 4, it runs counter to the rules of grammar. "[D]enied," "excluded," "deported," and "removed" as used in Section 2 are not past-tense verbs. They are instead part of participial phrases modifying the circumstances in which a person enters, attempts to enter, or exists at the time of the alleged offense. *See* P. Peters, *The Cambridge Guide to English Usage* 422 (2004). And while the

8

words form past participles, "[p]ast participles . . . are routinely used as adjectives to describe the present state of a thing." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 87 (2017); *see also id.* ("[T]he term 'past participle' is a 'misnomer, since' it 'can occur in what is technically a present tense.'") (quoting *Peters* at 409 (ellipsis omitted)).

The subject actions that Section 2's verbs convey are present tense—"enters," "attempts," "is." And those present tense verbs are read together with the circumstances listed. Thus, an alien must enter, attempt to enter, or be found under an excluded, removed, or deported status. The State thus is not "interpreting the past to mean the present tense." MMJ.Br.20. It is instead giving Section 2 a proper grammatical reading.

*2. Removal*—Plaintiffs continue to insist that SF2340 gives Iowa officials the ability to remove persons from the United States. DOJ.Br.26–27; MMJ.Br.34–35. But Plaintiffs have never identified where the statute authorizes an official to transport an alien beyond Iowa's port of entry. Plaintiffs point only to Section 4, regarding "Order[s] to return." DOJ.Br.26–27; MMJ.Br.34–35 (both referencing Iowa Code

§ 718.4). Plaintiffs assert that authority to issue a judicial order amounts to the authority to remove. But that reading ignores Section 4's text.

SF2430 set forth the required contents of an "Order to return." Iowa Code § 718.4(5). The subsection requires the order to include "[t]he manner of transportation of the person to a port of entry" and "[t]he law enforcement officer or state agency responsible for monitoring compliance with this order." Iowa Code § 718.4(5)(a)–(b). Then the law clarifies the required monitoring: the officer "report[s] the issuance of the order to the department of public safety." Iowa Code § 718.4(7). The order does not include requiring transportation "to the foreign nation from which the person entered or attempted to enter." Nor must the officer report "compliance with the order." Plaintiffs cannot reasonably extend SF2340's text to require international transportation when that is not in the statute.

And Plaintiffs never address the legislative evidence that the State did not intend to remove aliens beyond its port of entry. *See* Iowa.Br.31. Iowa's fiscal report accompanying SF2340 contemplated only "the cost to transport an individual to a port of entry." *See* Legislative Servs. Agency, Fiscal Servs. Div., Fiscal Note: SF2340, at 2 (May 8, 2024), *available at*

perma.cc/ZFT2-XNFP. If Plaintiffs' reading of Section 4 were correct, the fiscal note would have considered the cost to transport aliens abroad—especially given that such an expense would be considerable. But the State did not analyze the cost of such transportation. That is because the law does not allow it.

*3. Abatement*—Section 6 assumes abatement is the default, with nonabatement for pending or not-yet initiated determinations serving as the exception. If nonabatement were instead the default as Plaintiffs insist, Section 6 would be surplusage. *See* Iowa Code § 4.4(2) ("The entire statute is intended to be effective."). Iowa law also requires that courts interpret the statute to comply with the U.S. Constitution. Iowa Code § 4.4(1). Compliance requires that prosecution must abate with a final legal status determination.

But it follows that non-final determinations are subject to a discretionary stay rather than mandatory abatement. Otherwise, an alien could avoid prosecution by appealing to not-yet initiated relief that never materializes.

*4. Facial Injunction*—Even if Plaintiffs—or any future plaintiff—believe that they are being unconstitutionally prosecuted their remedy

11

should be an as-applied remedy. A facial challenge is "hard to win." *GLBT Youth*, 2024 WL 3736785, at \*4 (quoting *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024). To win, there must be "no set of circumstances" under which the law is valid. *See United States v. Veasley*, 98 F.4th 906, 909 (8th Cir. 2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). If any application is constitutional, "then facially speaking, the statute is too." *Id.* But where, as here, the law may be constitutionally enforced, a facial challenge fails. *See Arizona v. United States*, 567 U.S. 387, 415 (2012) ("At this stage, without the benefit of a definitive interpretation from the state courts, it would be inappropriate to assume [the law] will be construed in a way that creates a conflict with federal law.") (citing *Fox v. Washington*, 236 U.S. 273, 277 (1915)).

\* \* \*

The evidence of intent of unlawful application would be far stronger if SF2340 went into effect and Iowa ignored the Constitution in its enforcement. Knowing that will not happen, Plaintiffs seek a facial pre-enforcement injunction. In granting, the district court here committed the same error as in *GLBT Youth*: it assumed an unconstitutional interpretation of Iowa's law, without first considering Iowa Code

12

instructing courts to interpret Iowa laws "reasonably and in a manner feasible of execution," to give effect to every provision, and to presume compliance with the state and federal constitutions. 2024 WL 3736785, at *5. The same result should follow: this Court should vacate the injunction.

## II.   PLAINTIFFS' CLAIMS ARE NONJUSTICIABLE.

### A.   The United States Lacks Cause of Action Because Its Suit Is Not Grounded in Traditional Equity Practice.

Any claim in equity must be "grounded in traditional equity practice." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). The United States says it "present[s] a classic equitable grievance—that the defendant is causing it direct harm." DOJ.Br.28. Equitable jurisdiction is not so broad, not even for the United States. The district court erroneously assumed otherwise.

Courts have determined plaintiffs have an equitable cause of action when their claim sounds in public-nuisance abatement, enforcement of property or contract rights, or anti-suit injunctions, because the relief sought in such cases "was traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–319 (1999). This suit falls outside those categories.

13

1. The United States still cites no precedent *holding* that it has a general equitable right to come to federal court to enjoin any action it believes causes it harm. It does not dispute that the existence of a cause of action can be waived, and thus that *Arizona*'s acquiescence is not a holding that the United States has a cause of action in similar cases. It instead relies on cases grounded in traditional equity practice.

The cases allegedly supporting the United States's broad equitable jurisdiction theory undercut the United States's argument. DOJ.Br.28–32 (collecting cases). Each falls within traditional equitable jurisdiction. *See Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 193–194 (1967) (suing at law; statutory cause of action; public nuisance); *Sanitary Dist. of Chicago v. United States*, 266 U.S. 405, 423–424 (1925) (public nuisance; statutory cause of action); *Truax v. Raich*, 239 U.S. 33, 42 (1915) (*Ex parte Young* anti-suit injunction); *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902) (property and mails); *United States v. Texas*, 143 U.S. 621 (1892) (property); *United States v. Am. Bell Tel. Co.*, 128 U.S. 315, 350 (1888) (fraud); *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 275 (1888) (fraud and property); *Attorney-General v. Corp. of Poole*, (1838) 41 Eng. Rep. 7 (High. Ct. Ch.) (same); *Terrett v. Taylor*,

14

13 U.S. (9 Cranch) 43 (1815) (anti-suit injunction); *Hughes v. Trs. of Morden Coll.*, (1748) 27 Eng. Rep. 973 (High Ct. Ch.) (same).

Nor does the United States's attempt to recharacterize *In re Debs* help either. *See* DOJ.Br.31. That decision's "crux" was "that the Government may invoke judicial power to abate what is in effect a nuisance detrimental to the public interest." *United Steelworkers of Am. v. United States*, 361 U.S. 39, 61, 80 (1959) (Frankfurter, J., concurring). *Ex parte Young*'s "narrow exception"—which must be "grounded in traditional equity practice," *Whole Woman's Health*, 595 U.S. at 39—also does not help.

Neither does *United States v. Missouri*, 2024 WL 3932470 (8th Cir. Aug. 26, 2024), cited in the United States's Rule 28(j) letter, locate a cause of action here. *Missouri* explained the United States had an equitable cause of action against the State when it sued the State without suing individual state officers. *See* Mo. Brief at 27, *United States v. Missouri*, No. 23-1457 (8th Cir.); U.S. Brief at 40, *United States v. Missouri*, No. 23-1457 (8th Cir.); Mo. Reply Brief at 6, *United States v. Missouri*, No. 23-1457 (8th Cir.). This Court found that the United States suing only the State did not preclude suit, because there was a tradition of allowing

Appellate Case: 24-2265    Page: 22    Date Filed: 09/10/2024 Entry ID: 5434070

some suits against States—even without state officers. *Missouri*, 2024 WL 3932470, at *3. *Missouri* thus differs from the case here.

*Missouri* relied on cases showing the narrow scope of the United States's authority to sue States under its equitable authority. But those cases show that even when the United States can sue a State directly, it still must ground its suit in traditional equity practice. Each case *Missouri* relied on was grounded in traditional equity practice, not a so-called tradition that the United States may sue a State whenever to enforce federal law. *See id.* (citing *United States v. Washington*, 596 U.S. 832, 837 (2022) (law directly discriminated against federal government workers, interfering with federal contracts; cause-of-action issue not raised, like *Arizona*)); *United States v. Minnesota*, 270 U.S. 181, 194 (1926) (public nuisance; treaty); *Sanitary Dist. of Chi.*, 266 U.S. at 425–426 (public nuisance; statutory cause of action).

Beyond invoking its exceedingly broad theory of equitable jurisdiction, the United States does not base *this* suit in any traditional equitable principle. That failure carries consequences: Without a cause of action, the United States cannot sue.

16

2. MMJ Plaintiffs do not dispute that each plaintiff must assert a proper cause of action. Iowa.Br.41. But they continue to rely on *Ex parte Young* for their authority to sue. MMJ.Br.25–26.

*Ex parte Young* does not help. Doe, Roe, Anna, and David are not subject to imminent or pending enforcement actions because they are not subject to SF2340. Doe, Roe, and MMJ therefore are not entitled to raise an equitable action akin to an anti-suit injunction. MMJ Plaintiffs do not dispute that if Doe, Roe, Anna, and David are in fact not subject to SF2340, then MMJ Plaintiffs would lack a cause of action to sue.

## B.    MMJ Plaintiffs Lack Standing.

MMJ Plaintiffs suggest that the United States's standing makes their standing irrelevant. MMJ.Br.15 n.4. Not so. These cases are consolidated only for appeal and remain unconsolidated in the district court. Plaintiffs in one suit should not be considered plaintiffs in another, even if consolidated on appeal. *See Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496–496 (1933) ("[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another."). This Court should ensure

17

that at least one plaintiff in each case has standing. MMJ Plaintiffs do not.

1. MMJ Plaintiffs continue to rely on a flawed statutory interpretation to manufacture standing for Doe and Roe. But Doe and Roe lack a credible threat of prosecution—and thus lack actual or imminent harm—because their final, lawful federal statuses mean they are not subject to SF2340. Their subjective fears are not enough.

MMJ Plaintiffs assert that they face a credible threat of prosecution because their interpretation of SF2340 is plausible enough. MMJ.Br.15–17. But their theory requires assuming either that SF2340 violates federal law, or that law enforcement will misuse SF2340 to arrest or prosecute lawful residents. Either way, this theory violates ordinary standing and interpretation principles.

Plaintiffs must plead "facts that affirmatively and plausibly suggest that they are indeed subject to a credible threat of prosecution under the statute." *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009). MMJ Plaintiffs cannot ignore Iowa Code sections that prevent enforcement of SF2340 in a manner that would injure lawful residents like Doe and Roe.

In *California v. Texas*, plaintiffs challenged a law requiring them to obtain health coverage, but at the same time "ha[d] no means of enforcement" because Congress had zeroed out the statutory penalty. 593 U.S. 659, 669 (2021). The Supreme Court determined plaintiffs' asserted injury was speculative because "there is no action—actual or threatened—whatsoever. There is only the statute's textually unenforceable language." *Id.* at 671.

Here too there is no actual or threatened enforcement against Plaintiffs; there is only Plaintiffs' flawed interpretation, which—if accepted—results in "textually unenforceable language." *Id.* MMJ Plaintiffs' theory requires assuming unconstitutional enforcement. But courts must presume compliance with the Iowa and federal constitutions, and a just, reasonable, and feasible intended result. Iowa Code §§ 4.4(1), (3), (4). That is no mere "canon of constitutional avoidance;" it is black letter Iowa law. *GLBT Youth*, 2024 WL 3736785, at *5. MMJ Plaintiffs' theory of injury is textually unenforceable.

More, MMJ Plaintiffs' lack any evidence of actual or threatened unconstitutional enforcement. *Zanders*, 573 F.3d at 594 ("It is too speculative for standing purposes to allege that this statute *could* be

manipulated or that the police *might* misuse the criminal justice system."). MMJ Plaintiffs' presently lawful immigration statuses "[are] not the target of the statute's prohibition," and conclusory allegations of the law's misuse do not give rise to standing. *Id.*

2. MMJ fails to establish standing on behalf of its members. *First*, MMJ does not identify a member who will suffer harm. The complaint alleges that Doe, Roe, and Anna are lawfully present in the United States. SF2340 is thus unenforceable against them, so MMJ cannot assert standing on their behalf.

On appeal, MMJ says David is presently unlawful. *But see Hawse v. Page*, 7 F.4th 685, 691 (8th Cir. 2021) (Plaintiffs cannot "amend their complaint, or supplement insufficient factual allegations, in a brief filed in opposition"). Rather than engage directly with Defendants' substantiated argument that "MMJ fails to plead [David's] injury with particularity and plausibility," Iowa.Br.44–45, MMJ simply asserts that David "currently resides in Iowa without lawful status," MMJ.Br.16–17; *see also* MMJ.Br.52–53.

But that is outside the record, and MMJ gives no cite showing that it pleaded David's unlawful status. Its cited allegations simply provide

20

that "[u]nder S.F.2340, he could be arrested, prosecuted, imprisoned, and removed." App.Vol.I.8, R. Doc. 1 ¶ 14; *see* App.Vol.I.18–19, R. Doc. 1 ¶ 60 (same); App.Vol.I.81, MMJ.R.Doc.9-5 ¶ 22 (same). That "label[] and conclusion[]"is not enough to plead injury with particularity and plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It bears even less weight given MMJ's incorrect interpretation of the law. Courts may make inferences from a well-pleaded complaint, but MMJ Plaintiffs ask this Court to speculate. Such speculation here would be imprudent.

*Second*, MMJ fails to show that the interests it seeks to protect are germane to its mission. MMJ summarizes its mission as "'expanding access to lawful immigration pathways' and 'preventing the unjust removal of immigrants.'" MMJ.Br.22. And the district court similarly stated MMJ's relevant interest was to protect its members' "right to remain in Iowa as lawful residents." App.Vol.I.239, MMJ.R.Doc.51, at 17. But MMJ and the court's use of "lawful" and "unjust removal" show that SF2340 has nothing to do with MMJ's mission: a law that applies only to those with unlawful status has no effect on helping immigrants maintain their lawful status. *Cf. Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024).

Appellate Case: 24-2265     Page: 28     Date Filed: 09/10/2024 Entry ID: 5434070

3. MMJ asks this Court to ignore whether it has direct standing, and instead remand for the district court to review the factual record and assess that question in the first instance. MMJ.Br.23. Defendants agree that this Court should not affirm MMJ's standing on the alternative ground of MMJ's direct standing. Should the Court determine that no individual MMJ Plaintiff has standing, and that MMJ lacks associational organizational standing on behalf of its members, it should vacate the injunction and remand to the district court to decide what remains.

## C. Plaintiffs lack standing to pursue an injunction against Defendants' enforcement of only Section 4.

No Plaintiff has standing to pursue an injunction against Defendants' enforcement of *only* Section 4. So if the Court determines Section 2 passes muster, and only Section 4 causes trouble, no plaintiff in this case can obtain that narrow injunction. A narrow injunction would run only against Defendants' enforcement of Section 4, but non-party judges enforce Section 4. Iowa.Br.47–48. Defendants have no role in "administer[ing] and enforc[ing]" Section 4. *281 Care Comm. v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011). A narrow injunction therefore cannot redress Plaintiffs' alleged Section 4 harm.

Plaintiffs argue the "prerequisite" to an order under Section 4 is prosecution under Section 2, so the Section 4 injury is "fairly traceable" to Defendants even though they have no role in enforcing Section 4. MMJ.Br.24. Plaintiffs suggest that prosecution under Section 2 requires Defendants' participation, such that "an injunction against the criminal provision in Section 2 would necessarily block enforcement" of Section 4. DOJ.Br.33. That misunderstands how SF2340—and Iowa's criminal laws—operate.

Defendants have no role in administering Section 4, and Section 4 can be triggered without any Defendant having initiated SF2340 prosecution. As MMJ Plaintiffs highlighted, Iowa's county attorneys have independent authority to enforce criminal laws. MMJ.Br.21 (citing Iowa Code § 331.656(1)). One of the 97 non-party county attorneys could initiate a prosecution, which, if successful, then requires state judges to enforce Section 4. Defendants are not necessary to that process.

The United States argues that "even if Iowa were correct that the district court could not issue an injunction against Section 4 itself, that would simply underscore the propriety of the injunction against the

Appellate Case: 24-2265    Page: 30    Date Filed: 09/10/2024 Entry ID: 5434070

whole state enactment." DOJ.Br.33. That misunderstands how injunctions operate.

Courts do not enjoin statutes, nor do injunctions operate against the world. "[F]ederal courts have no authority to erase a duly enacted law from the statute books." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) (quoting Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018)); *see Ortiz v. Foxx*, 596 F. Supp. 3d 1100, 1107 (N.D. Ill. 2022) ("Plaintiffs have failed to show that the State's Attorney is either the cause of, or the solution to, their objections to the [] statute."). Injunctions do not erase statutes—they operate against individuals to prohibit that individual's enforcement of a statute. *See Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015).

So there cannot be an injunction against the presently-named Defendants as to their enforcement of *only* Section 4 because the named Defendants have no role in "administer[ing] and enforc[ing]" Section 4, which authorizes judges to issue return orders. *281 Care Comm.*, 638 F.3d at 631. Such an injunction cannot redress Plaintiffs' alleged Section 4 harm, because non-party judges could still issue return orders.

24

## III. FEDERAL IMMIGRATION LAW DOES NOT PREEMPT SF2340.

The United States's brief illustrates the critical flaws with Plaintiffs' arguments. The first sentence recognizes that "[i]n *Arizona v. United States*, the Supreme Court held that an Arizona law purporting to mirror federal criminal provisions regarding *registration* of noncitizens was preempted. DOJ.Br.13 (citing 567 U.S. 387 (2012)) (emphasis added). The United States then explains that SF2340 concerns "entry and removal." *Id.* Thus, to succeed, Plaintiffs need to establish that field preemption extends beyond alien registration—the only occupied immigration field the Supreme Court has identified. Or Plaintiffs must establish that SF2340's mirroring of federal law conflicts with federal law regarding governing entry and removal. They cannot.

### A. The logic behind field preemption of alien registration does not extend to illegal reentry laws.

The Supreme Court has declined to expand immigration-field-preemption beyond alien registration. *See generally Arizona*, 567 U.S. 387; *Kansas v. Garcia*, 589 U.S. 191 (2020). The unique history and federal concern with alien registration reinforce that limitation.

25

Only "[i]n rare cases" have courts found that Congress has "'legislated so comprehensively' in a particular field that it 'left no room for supplementary legislation.'" *Kansas*, 589 U.S. at 208. And despite Plaintiffs' lengthy historical discussions, they cannot identify any case where the Supreme Court has held that any part of immigration law beyond alien registration is field preempted. *See, e.g.*, MMJ.Br.36–37.

*Arizona* does not do so and recognizes that fact. If it had, *Arizona* could have found preemption on those grounds, rather than base much of its decision on conflict and obstacle preemption. Indeed, the Court expressly declined an invitation to expand *Arizona*'s field preemption in *Kansas*. 589 U.S. at 210.

Plaintiffs' attempts to distinguish *Arizona* and *Kansas* are unavailing. Arizona's preempted criminal law concerned warrantless arrest based on removability. *Arizona*, 567 U.S. at 407. The Supreme Court held the law preempted because "[b]y authorizing state officers to decide whether an alien should be detained for being removable, § 6 violates the principles that the removal process is entrusted to the discretion of the federal government." *Id.* at 409 (citations omitted). But

26

SF2340 neither permits removal nor criminalizes removability—a purely civil status.

To try circumventing *Kansas*'s rejection of expanded preemption, Plaintiffs argue *Kansas* concerned a "generally applicable law about 'fraud, forgeries, and identify theft.'" DOJ.Br.23; MMJ.Br.34. But that assertion ignores the case's core dispute—the interplay between Kansas's law and the Immigration Reform and Control Act's effect on work authorization. The challenge there was based on an identical argument to Plaintiffs'—"that field preemption in these cases 'follows directly' from our decision in *Arizona*"—an argument the Court expressly rejected. *Kansas*, 589 U.S. at 210, 211.

Indeed, neither *Kansas*'s majority nor dissent showed any interest in expanding immigration field preemption. *See id.* at 210 (rejecting immigration field preemption); *id.* at 215 (Breyer, J., concurring in part and dissenting in part) (addressing expansion only to "fraud committed to demonstrate federal work authorization").

Yet Plaintiffs and the district court contend the same preemption logic applies to registration and reentry because both areas are designed as a "harmonious" whole. App.Vol.I at 244; R.Doc. 51, at 22; DOJ.Br.15;

27

MMJ.Br.40. That ignores the Court's alien registration precedent and the statutory history surrounding the illegal reentry, which establish that the unique considerations of alien registration do not apply to illegal reentry.

*Hines v. Davidowitz*—in which the Court first recognized alien registration field preemption—held that alien registration required special consideration because it concerned the treatment of legally admitted aliens. 312 U.S. 52, 66–68 (1941). Unlike criminal reentry laws, which impose mandatory penalties for illegal conduct, alien registration imposes regulations on otherwise "perfectly law-abiding" aliens. *See id.* at 65–66. And "[o]pposition to laws permitting invasion of the personal liberties of law-abiding individuals, or singling out aliens as particularly dangerous and undesirable groups, is deep-seated in this country." *Id.* at 70. So "champions of freedom for the individual have always vigorously opposed burdensome registration systems." *Id.*

So when Congress passed the Alien Registration Act of 1940, "it plainly manifested a purpose to do so in such a way as to protect the personal liberties of law-abiding aliens through one uniform national registration system, and to leave them free from the possibility of

Appellate Case: 24-2265     Page: 35     Date Filed: 09/10/2024 Entry ID: 5434070

inquisitorial practices and police surveillance" that might undermine international relations and alien loyalty. *Id.* at 72, 74. Those considerations drove the conclusion that Congress intended alien registration laws to form a nationwide "harmonious whole." *Id.* at 72.

History reflects that state criminal reentry laws do not create such patchwork problems because they criminalize conduct Congress has already criminalized—rather than burdening any lawful status. When Congress enacted its illegal reentry law in 1929, it was largely uncontroversial and intended to sweep as broadly as possible. That reentry provision—much like the law's current incarnation—stated that "any alien who has been arrested and deported in pursuance of the provisions of the immigration act of 1917, or the immigration act of 1924, and who thereafter shall enter the United States in violation of law shall be deemed guilty of a felony." 70 Cong. Rec. 2092 (1929). The law passed the Senate without debate. *Id.* In the House, the illegal reentry provision received only a brief explanation and one favorable comment. *See* 70 Cong. Rec. 3542–3550, 3555–3557, 3614—3621; 70 Cong. Rec. 3546 (statement of Sen. Box).

Unlike alien registration laws, Congress expressed a desire for broad application. *See* 70 Cong. Rec. 3542–50, 3555–57, 3614—21. If aliens who "attempt to enter and reenter repeatedly . . . are carried into the courts and punished for their efforts to disregard the immigration laws," that benefits rule of law. 70 Cong. Rec. 3546 (statement of Sen. Box). Thus, criminal reentry laws lack the same personal liberty concerns and were part of an effort to expand criminal immigration laws broadly.

The district court thus wrongly extended *Arizona* to "the context of illegal reentry." App.Vol.II.462; R.Doc. 29, at 20; *see* DOJ.Br.16–17; MMJ.Br.31.

## B. SF2340 is consistent with the federal immigration scheme.

Like the district court, Plaintiffs base their conflict preemption arguments on incorrect interpretations of SF2340 and federal law.

*First*, SF2340 does not govern entry or removal. Entry and reentry are not synonymous. Federally, they are governed by different laws, subject to different penalties. *See* 8 U.S.C. §§ 1325, 1326. And improper entry is remedied with civil removal—while illegal reentry results in criminal penalties. So unlike in *Arizona*, SF2340 only criminalizes

30

conduct already criminal under federal law. Overlap does not mean invalidity. *See California v. Zook*, 336 U.S. 725, 733 (1949).

*Second*, SF2340 leaves federal immigration defenses intact, and so does not conflict federal laws providing these defenses.

*Third*, SF2340 does not conflict with federal laws governing State-federal cooperation in immigration enforcement, and instead operates within these laws. *See, e.g.*, 8 U.S.C. §§ 1101(a)(15)(T)(i)(III)(aa), 1101(a)(15)(U)(iii), 1324(c), 1357(g)(1)–(10); 18 U.S.C. § 758; 22 U.S.C. § 7105(c)(3)(C)(i). State-federal cooperation provisions do not preclude States from enacting and enforcing state-law arrest provisions. *See Kansas*, 589 U.S. at 202–213; *United States v. Texas*, 97 F.4th 268, 325 (5th Cir. 2024) (Oldham, J., dissenting). The "federal scheme thus leaves room" for enforcement of laws like SF2340. *Arizona*, 567 U.S. at 412–413 (citing *Chamber of Comm. v. Whiting*, 563 U.S. 582, 609–610 (2011)); *see also Texas*, 97 F.4th at 326 (Oldham, J., dissenting).

SF2340 authorizes state law enforcement to do what it already could. SF2340 enforcement necessarily begins with contacting federal authorities to determine a person's immigration status because Iowa

31

does not maintain an independent immigration database, nor does it make independent determinations of immigration status.

Federal law expressly permits States or local governments to make those inquiries. 8 U.S.C. §§ 1373(a), 1644. And federal law requires a federal response. *See id.* § 1373(c); *cf. Whiting*, 563 U.S. at 582.

If the inquiry reveals the person is violating federal criminal immigration law and state law, SF2340 then permits enforcement, including transportation to Iowa's port of entry. Once there, federal law permits state officials to "'communicate with the [federal government] regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States.'" *Arizona*, 567 U.S. at 411–12 (quoting 8 U.S.C. § 1357(g)(10)(A)). Furthermore "Congress has made clear that no formal agreement or special training needs to be in place" for state officers to communicate with the federal government about immigration status. *Id.* And State and local officers do not need an agreement "to cooperate . . . in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." Michael John Garcia & Kate M. Manuel, Cong. Research Serv., R41423, *Authority of State and Local Police to*

*Enforce Federal Immigration Law* 5 (2012) (quoting 8 U.S.C. § 1357(g)(10)). Though state officials may not arrest individuals based on civil removal status, that restriction does not extend to individuals violating federal criminal immigration law. *Arizona*, 567 U.S. at 410.

Ultimately, SF2340 makes it a state crime to violate federal criminal immigration law in Iowa. Congress made it illegal for an alien to reenter the country after having been "denied admission," been involuntarily "removed," or having departed the country "while an order of exclusion, deportation, or removal is outstanding." 8 U.S.C. § 1326(a). Now Iowa does too. Iowa Code § 718C.2(1).

"If the INA's state-federal cooperation provisions . . . preempted States from passing their own immigration statutes, the Supreme Court could've simply said that and been done." *Texas*, 97 F.4th at 325 (Oldham, J., dissenting). But *Arizona* was more nuanced.

*Finally*, arguments assuming SF2340 will affect foreign relations misread the law and record. SF2340 does not authorize removal. And Plaintiffs bring a facial challenge, so none of the evidence suggests that "many would-be defendants" would be ordered to return to Mexico. MMJ.Br.43. Nor is there evidence that non-Mexicans would be ordered

33

to Mexico, DOJ.Br.22, because Iowa courts have not been given a chance to interpret the phrase "foreign nation from which the person entered or attempted to enter." Those arguments illustrate the many problems with Plaintiffs' pre-enforcement facial challenge.

## IV. THE REMAINING INJUNCTION FACTORS SUPPORT IOWA.

The balance of harms and the public interest weigh against an injunction. Plaintiffs' theoretical irreparable harm continues to rest on flawed statutory interpretation and preemption reasoning. DOJ.Br.34; MMJ.Br.51. That repeats the district court's error. And the United States continues to argue that SF2340 creates new foreign relations implications. That too is wrong.

But both Plaintiffs fail to dispute that Iowa is harmed each day it is enjoined from enforcing its duly enacted law. That harm is irreparable. Understanding the law's purposes shows that the public interest favors enforcement. The balance of equities thus weighs against an injunction.

## CONCLUSION

For these reasons, this Court should vacate the preliminary injunction.

September 9, 2024

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

*/s/ Eric Wessan*
ERIC WESSAN
*Solicitor General*
PATRICK C. VALENCIA
*Deputy Solicitor General*
BREANNE A. STOLTZE
*Assistant Solicitor General*

Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-5191
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov
breanne.stoltze@ag.iowa.gov

*Counsel for Defendants-Appellants*

35

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Local R. 25A, I certify the following:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,488 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft Office 365.

3. This brief complies with the electronic filing requirements of Local R. 25A because the text of the electronic brief is identical to the text of the paper copies and because the electronic version of this brief has been scanned for viruses and no viruses were detected.

September 9, 2024

*/s/ Eric Wessan*
ERIC WESSAN
*Solicitor General*

*Counsel for Defendants-Appellants*

36

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on September 9, 2024. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

September 9, 2024

*/s/ Eric Wessan*
ERIC WESSAN
*Solicitor General*

*Counsel for Defendants-Appellants*

Appellate Case: 24-2265    Page: 44    Date Filed: 09/10/2024 Entry ID: 5434070